```
1                    United States District Court

2                  Southern District of California

3

4   UNITED STATES OF AMERICA,      )
                                   )
5                    Plaintiff,    )
                                   )
6       vs.                        ) Case No. 10-CR-4246 JM
                                   ) Status Hearing
7   BASAALY SAEED MOALIN,          ) Monday, August 8, 2011
    MOHAMED MOHAMED MOHAMUD,       )
8   ISSA DOREH,                    )
    AHMED NASIR TAALIL MOHAMUD,    )
9                                  )
                     Defendants.   )
10  _____)

11

12              Before the Honorable Jeffrey T. Miller
                   United States District Judge

13

14

15

16

17

18

19

20  Official Interpreter:    Ahmedi Farah, CCI

21  Official Court Reporter: Debra M. Henson, CSR, RPR
                             U.S. Courthouse
22                           940 Front Street, Suite 5190
                             San Diego, CA  92101
23                           (619) 238-4538

24

25              Record produced by stenographic reporter
```

1  Appearances

2  For the Government:        Laura E. Duffy
                             UNITED STATES ATTORNEY
3                            William P. Cole
                             Caroline P. Han
4                            ASSISTANT U.S. ATTORNEYS
                             880 Front Street, Suite 6293
5                            San Diego, CA  92101

6  For the Defendants:
   (Mr. Moalin)              Joshua Dratel, Esq.
7                            Alice Fontier, Esq.
                             OFFICE OF JOSHUA L. DRATEL
8                            2 Wall Street, Third Floor
                             New York, NY  10005
9
   (Mr. Doreh)               Ahmed Ghappour, Esq.
10                           LAW OFFICES OF AHMED GHAPPOUR
                             P.O. Box 20367
11                           Seattle, WA  98102

12 (Mr. A. Mohamud)          Thomas A. Durkin, Esq.
   (Mr. M. Mohamud)          DURKIN & ROBERTS
13                           2446 N. Clark Street
                             Chicago, IL  60614
14

15

16

17

18

19

20

21

22

23

24

25

1              San Diego, California - Monday, August 8, 2011

2         (Defendant A. Mohamud is being assisted by a Somali

3    interpreter.)

4              THE CLERK:  Calling matter 1 on calendar,

5    10-CR-4246, USA versus Basaaly Saeed Moalin, Mohamed Mohamed

6    Mohamud, Issa Doreh, Ahmed Nasir Mohamud, for a status

7    hearing.

8              MR. COLE:  Good morning, your Honor.  William Cole

9    and Caroline Han for the United States.

10             THE COURT:  Good morning.

11             MR. DRATEL:  Good morning, your Honor.  Joshua

12   Dratel and Alice Fontier for Mr. Moalin.

13             THE COURT:  Okay.  Good morning.

14             MR. DURKIN:  Tom Durkin on behalf of Ahmed Nasir

15   Mohamud.

16             THE COURT:  Thank you.

17             MR. GHAPPOUR:  Good morning, your Honor.  Ahmed

18   Ghappour on behalf of Issa Doreh.

19             THE COURT:  Thank you.

20             MR. DURKIN:  And, Judge, we're standing in for Ms.

21   Moreno.

22             THE COURT:  Yes, she contacted us.  There was an

23   unfortunate family personal circumstance that has required

24   her to be with family at this point.

25             MR. DURKIN:  Yeah.  And if we could -- I asked my

1  client to tell her client that if he talked to him this

2  morning -- I'm wondering if we could put that on the record

3  so we can --

4          THE COURT:  Absolutely, sure.

5          MR. DRATEL:  Your Honor, if we could get just a

6  brief moment at the jury box with -- because of the traffic

7  on Monday in terms of downstairs, we were unable to see them

8  downstairs, so if we could just get --

9          THE COURT:  Sure.  Why don't you approach your

10  clients.  And do you need a minute or two?

11          MR. DRATEL:  Yes.

12          THE COURT:  Okay.  I'm sure we can accommodate you

13  there.  Mr. Cole, Ms. Han, have you taken the opportunity to

14  state your appearance?

15          MR. COLE:  Yes, your Honor.

16      (Brief pause in the proceedings.)

17          MR. DURKIN:  Thank you, Judge.

18          THE COURT:  All right.  Counsel have had a brief

19  opportunity to confer with their respective clients.  I know

20  Ms. Moreno is not here for Mr. Mohamud, and who specifically

21  will be standing in for Ms. Moreno?

22          MR. DURKIN:  I am.

23          THE COURT:  And so Mr. Durkin is representing --

24  standing in for Ms. Moreno.  And we do have the Somali

25  interpreter present here.  The last time we were together on

1    June 16, there was an indication I believe from each of the

2    four defendants that they desired to proceed in English

3    without the services of a Somali interpreter.  Is that still

4    the --

5            MR. DURKIN:  Judge, my client asked me today, as

6    long as the headsets were here, if he could use them.  He did

7    the last time consent to go ahead without them.  We could

8    speak with him in English as well.

9            THE COURT:  So your client, Ahmed Mohamud, would

10   prefer to utilize the services of the interpreter?

11           MR. DURKIN:  I believe -- is that correct, Mr.

12   Mohamud?

13           DEFENDANT A. MOHAMUD:  (Through the interpreter)

14   Yes, that's right.

15           THE COURT:  All right.  And then we have

16   Mr. Moalin, who is not needing the services of the

17   interpreter?

18           MR. DRATEL:  Correct, your Honor.

19           THE COURT:  Thank you, Mr. Dratel.  And then we

20   have Mr. Doreh, who is, once again, not using the services of

21   an interpreter; is that correct, counsel?

22           MR. GHAPPOUR:  That is correct, your Honor.

23           THE COURT:  All right.  Thank you, Mr. Ghappour.

24   And I think Ms. Moreno's client, Mr. Mohamed Mohamud, is not

25   using the services of the interpreter but proceeding in

1   English; is that correct once again, Mr. Durkin?

2            MR. DURKIN:  I believe that's correct.

3            THE COURT:  All right.  Very good.  All right.

4   Thank you, gentlemen.  Okay.  Last time we were together

5   here -- this is obviously set for status today.  It's our

6   primary task just to assess the status of the case.

7            We were together on June 16, and new counsel had

8   entered the case; their appearances were confirmed.  We

9   discussed briefly the state of discovery.  I know a large

10  amount of discovery had been provided to defense counsel.

11  Mr. Dratel, at that particular time you indicated obviously

12  you were still going through it, that is, the discovery; you

13  indicated that there was a need to catalog what you were

14  looking at, and also I think you may have expressed some

15  question as to whether or not you had everything that you

16  needed to have.

17           MR. DRATEL:  Right.

18           THE COURT:  Please.

19           MR. DRATEL:  I think the government has additional

20  discovery for us today is what I've heard, but

21  notwithstanding that, I think that we would like to set a

22  motion schedule with sufficient time in there for us to

23  review that but to keep the ball rolling, so to speak.  I

24  think we're amenable to setting something, perhaps motions

25  due perhaps after Thanksgiving.  That would give us enough

1    time to get this, do everything else, and keep the case

2    moving along.

3            THE COURT:  Okay.  So after Thanksgiving obviously

4    would be about three months out.  We can certainly create a

5    schedule.  It may be better to wait a little bit longer

6    before we do that, perhaps one further status conference.  We

7    can always telescope, reduce a briefing schedule down on time

8    and give you the same date that you could have gotten some

9    months earlier, but it may be a little more realistic in

10   setting a date if we wait a little bit longer to see exactly

11   what's being provided, what continues to be provided, giving

12   counsel an opportunity to review and assess what you have.

13   Either way I'm happy to proceed.

14           MR. DRATEL:  We're amenable to that as well, your

15   Honor.

16           THE COURT:  All right.  Mr. Durkin, do you have

17   anything further on this particular subject, either --

18           MR. DURKIN:  I think that's amenable to me.  I'm

19   sure it's amenable to Ms. Moreno.

20           THE COURT:  Ms. Moreno, okay.

21           MR. DURKIN:  There was one specific request I've

22   made, and the government has told me that they think they're

23   going to try to find it.  There was an interview of my client

24   in December of 2009 I believe at the John Wayne Airport in

25   Orange County that they've acknowledged took place, but

1 the -- they're going to look for the 302.  Obviously that's

2 an important document for us to get.  But I would agree with

3 your idea, Judge, that we can set a date.  I also agree with

4 Mr. Dratel that post-Thanksgiving would be a realistic motion

5 date.

6     THE COURT:  Okay.  Mr. Ghappour?

7     MR. GHAPPOUR:  Full agreement, your Honor.

8     THE COURT:  Okay.  What's being provided now,

9 Mr. Cole?  Apparently there's some new discovery that's going

10 over; can you elaborate on what it might be?

11     MR. COLE:  Yes, your Honor.  There's a little bit

12 of data from a cell phone or phones that were on Mr. Moalin's

13 possession when he was arrested.

14     THE COURT:  Who now does this relate to?

15     MR. COLE:  Mr. Moalin.

16     THE COURT:  Okay.

17     MR. COLE:  There are a few miscellaneous

18 surveillance logs and FBI reports; we're talking about -- and

19 a copy of Mr. Moalin's travel documents.  Those are all less

20 than 50 pages total.  We are producing a little over 160

21 pages of bank records relating to a particular bank account

22 that's relevant to the case.  We're producing subscriber

23 information and toll records for the phone numbers that are

24 relevant, defendant phone numbers or phones they were using.

25     We're producing a -- there was a request for --

1    although the -- all of the post-arrest interviews were done

2    in English, your Honor, but we are getting those transcribed

3    over the course of time, and as those are transcribed,

4    English interviews -- they have the audio -- but as they're

5    transcribed, we're happy to give over draft transcripts, and

6    so one of those is going to one of the counsel today for his

7    or her client, so Mr. Doreh, it's Mr. Doreh's post-arrest

8    statement.

9              THE COURT:  Let me ask you a question here.  The

10   telephone interviews, are those just of conversations

11   involving Mr. Doreh or others?

12             MR. COLE:  I'm sorry, the telephone --

13             THE COURT:  Interviews.

14             MR. COLE:  Post-arrest statements?

15             THE COURT:  The telephone interviews you're having

16   transcribed, are they --

17             MR. COLE:  Oh, those aren't telephone interviews,

18   they're actually -- they were the post-arrest, in-person

19   agent interviews --

20             THE COURT:  Okay.

21             MR. COLE:  -- so each client, each defendant here

22   except for the -- I don't believe Mr. Mohamud, Mohamed

23   Mohamud, has one, but the other three defendants, their

24   post-arrest statements, they were in English.  But over the

25   course of time, we've been working on getting them

 1   transcribed, and we told counsel we'd be happy -- they have

 2   the audio of that already; they've had it for a while --

 3   we're happy to share the transcriptions when they're

 4   finished.  So we only have -- we just happen to only have

 5   Mr. Doreh's finished at this point, if that makes sense.

 6              THE COURT:  Okay.  Are they voluminous records,

 7   these --

 8              MR. COLE:  The post-arrest interviews?

 9              THE COURT:  Yeah, the post-arrest interviews.

10              MR. COLE:  No.  I don't remember the length of each

11   one.  I think Mr. Doreh -- they varied in length.  I don't

12   remember the length of the interviews.  I think

13   Mr. Mohamud's -- oh, Mr. Doreh's post-arrest -- she's

14   reminding me -- the post-arrest statement of Mr. Doreh is --

15   the English transcription of that is 19 pages long.

16              THE COURT:  Okay.

17              MR. DURKIN:  Judge, for what it's worth, my

18   client's video recording of that interview, the audio and

19   visual part of it, is about two and a half hours long.

20              MR. COLE:  And I mean this is a courtesy we're

21   happy to do; I don't think there's an obligation for us to

22   even transcribe them, but we are doing it.

23              THE COURT:  I'm just trying to get a handle on the

24   timing.  I realize what's being provided by the government to

25   the defense.  I'd just like to get a handle on when that

1    might be accomplished.  Sounds like you're right in the

2    middle of doing all of that, so for purposes of going

3    forward, that is, setting another status conference date and

4    then ultimately a motion hearing date along with your

5    briefing schedule, it would be nice to know when you

6    anticipate this material will ultimately be provided, at

7    least what you're contemplating at this point.

8              MR. COLE:  Okay.  I think that the additional

9    English language -- the interviews are in English, but the

10   additional transcriptions of the other two defendants'

11   post-arrest statements should be finished within a couple of

12   months.

13             THE COURT:  Couple of months you say?

14             MR. COLE:  Yeah.  They haven't been the highest

15   priority for the FBI because they're -- these are in-English

16   interviews, and we just would prepare them -- it really is

17   for trial preparation, to the extent we need them at all.

18             THE COURT:  I don't know if they'll be relevant for

19   motion practice or not.

20             MR. COLE:  Well, they have the interviews; they

21   have the videotaped interviews.

22             THE COURT:  Okay.  How about the bank records?

23             MR. COLE:  The bank records are turned over.  I

24   don't think we have -- I think the bank records will go over

25   today, your Honor.  They're for the bank account of

1  Mr. Moalin's brother, in his brother's name.

2          THE COURT:  Okay.

3          MR. COLE:  We think those are the last of the bank

4  records unless something unexpected comes up.

5          THE COURT:  Okay.  Subscriber information and phone

6  records?

7          MR. COLE:  Yeah, we have a batch going out today,

8  which is the primary batch.  We think there may be additional

9  toll records that will come out, and certainly we expect to

10  have those within one to two months.

11          THE COURT:  Okay.

12          MR. COLE:  Your Honor, I'd like to mention for

13  counsel's benefit and your Honor that we -- in the discovery

14  we don't want there to be any confusion.  We are reproducing

15  about 690 audio calls that we had already produced before,

16  but we were unhappy with the file extension names; it was too

17  unuseful for counsel.  One, the disk was just produced for

18  counsel in a format that was not user-friendly at all, and so

19  the FBI has gone back, and we're reproducing the same phone

20  calls they've had for a long time but with better

21  file-extension names so it would be easier to sort and to

22  know what the parties are looking at, and that's going to be

23  included.  But there are no -- to my knowledge there's no new

24  audio being turned over today; it's just a reproduction of

25  audio they've had for quite some time.

1        THE COURT:  Okay.

2        MR. COLE:  And that's essentially it.  We

3 occasionally, your Honor -- we occasionally obtain an

4 additional verbatim translation of audio we've turned over

5 for -- that they've had for many months, the Somali audio.

6 Occasionally we'll pick up an additional English-language

7 translation of a call, and as that happens, we'll be turning

8 those over to defense counsel.  I think there might be a few,

9 literally just a handful of those in this batch.

10       THE COURT:  Okay.

11       MR. DURKIN:  Judge, I'm sorry.  I didn't follow

12 that.

13       THE COURT:  Mr. Durkin?

14       MR. DURKIN:  I didn't understand that.

15       MR. COLE:  What I was saying, your Honor, is the

16 Somali audio calls we've already turned over in discovery.

17 Occasionally -- we didn't have verbatim translations of all

18 of them.  Occasionally we've obtained additional verbatim

19 translation of a call we didn't have before, and when that

20 arises, which only happens -- I think there's a few calls in

21 where that's the case -- we will be giving those over to

22 defense counsel as we obtain those.

23       MR. DURKIN:  I get it.  Thank you.

24       THE COURT:  Okay.  All right.  Mr. Cole, when do

25 you think -- well, let me ask counsel this.  What motions are

1    you contemplating ultimately being brought?  What pretrial

2    motions do we need to anticipate here?  Mr. Dratel, do you

3    wish to proceed?

4             MR. DRATEL:  Yes, your Honor.  I think motions to

5    suppress, motions attacking different parts of the indictment

6    in terms of with respect to elements or specifics, maybe

7    motions for severance as well, discovery, to the extent that

8    if there -- if we identify material, either Rule 16 or Brady

9    or a bill of particulars, that we find not provided in the

10   context of the discovery that the government has provided

11   already or what the government will provide by the time we

12   make the motion.

13            THE COURT:  Okay.  When you say motions to

14   suppress, you mean statements and/or evidence?

15            MR. DRATEL:  Yes, evidence in terms of wiretaps and

16   the telephone conversations.  I don't know about the other

17   defendants, you know, but we have that obviously.

18            THE COURT:  Okay.  Does anyone else wish to be

19   heard on what you may be anticipating by way of motion work?

20   Mr. Durkin?

21            MR. DURKIN:  Judge, I know that Ms. Moreno and I

22   spoke as late as this morning about issues regarding a motion

23   to dismiss with respect to the drafting of some of the

24   counts.  Certainly in the alternative would be for a bill of

25   particulars.  I know that I'm contemplating filing a motion

1    to quash or suppress my client's post-arrest statement, but I

2    need to look into that more because --

3              THE COURT:  Okay.

4              MR. DURKIN:  -- on some levels it's as helpful as

5    it might be --

6              THE COURT:  Okay.

7              MR. DURKIN:  -- as the government thinks it might

8    be harmful.  There's a -- there might also be a First

9    Amendment motion that I haven't given enough thought or

10   discussion with my co-counsel with, but the political

11   situation in Somalia lends itself to at least thinking about

12   something like that.  And I'm also contemplating -- and I

13   want to speak to you about this later -- as to how, if I

14   decide to do it -- I'm contemplating a motion for release for

15   my client -- and Ms. Moreno may be as well -- but I'm

16   particularly concerned about the potential length of delay in

17   getting this case to trial, and I'd like to -- I don't want

18   to start arguing the motion now, but there's -- there is a

19   different degree of evidence versus my client than several of

20   the others here, and I'm concerned about him being detained

21   for that long.

22             THE COURT:  Okay.

23             MR. DURKIN:  And that goes hand-in-hand with

24   possibly a potential motion for severance under Rule 14 and

25   particularly arguing the detention aspect of that as undue

1    prejudice, but that's kind of where I'm going.

2              THE COURT:  Okay.  Very good.  Thank you, Mr.

3    Durkin.  Mr. Ghappour?

4              MR. GHAPPOUR:  I'm also contemplating a motion to

5    release as well as all of the other motions that Mr. Dratel

6    and Mr. Durkin have mentioned, and obviously the typical

7    motions in limine that would proceed from.

8              MR. DRATEL:  Your Honor, if I may --

9              THE COURT:  Yes.

10             MR. DRATEL:  -- just to clarify, there was also a

11   search that we may or may not be challenging.  But I also

12   wanted to alert the Court that respect to these particular

13   wiretaps, they are not Title IIIs, they're FISA wiretaps, so

14   that's just -- add a layer of complexity on that with respect

15   to these particular motions.  And I, at least as far as I

16   know, we can make the motion in a public context.  I don't

17   know about the government's response, but certainly we'll be

18   able to because we have not seen any classified information

19   or otherwise barred.  And in terms of bail, we're

20   contemplating that as well, but we thought that if we did

21   that, obviously we want to get that to the Court in a far

22   sooner context than what we're talking about down the road

23   for the substantive motions about the case.

24             THE COURT:  Okay.  Mr. Cole?

25             MR. COLE:  Your Honor, our only -- we defer I guess

1  at this point to counsel and the Court in terms of what's

2  needed for them to have time to prepare their motions and

3  have them heard.  The only request we have is that if a FISA

4  suppression motion is filed, that there be an extended time

5  for response.  It just happens that for us to file a response

6  to FISA suppression motions, it typically takes -- we

7  typically need about 60 days to respond so we can get -- to

8  deal with the security issues related to filing and also the

9  Attorney General declaration and things like that.  And so

10 the other motions could be on whatever schedule the Court

11 desires, but that particular motion we would simply ask for

12 an extended response period.

13         THE COURT:  That usually comes a little bit later

14 anyway in the proceedings.

15         MR. COLE:  I just mention that in case your Honor

16 is thinking about dates.

17         THE COURT:  Okay.  Well, I think that it might

18 behoove us to set one further status conference in advance of

19 creating a schedule for motion practice.  You've got some

20 pretty good -- pretty substantial motions here that at least

21 you're contemplating at this point, plus you've got discovery

22 still being provided.  I don't know how critical the

23 remaining discovery will be in connection with any of the

24 substantive motions being contemplated by counsel, but I

25 think it would be appropriate at this point to set one

1  further status conference just to monitor the last of the

2  discovery, to get counsel here, perhaps obtain your best

3  thinking with respect to what motion practice you actually

4  anticipate going forward.  That will give us a better

5  opportunity to create a viable briefing schedule and also set

6  aside sufficient time to accommodate the motions that you're

7  contemplating.  So I think perhaps one further status

8  conference four to six weeks out would be appropriate at this

9  point, probably something toward the end of September.

10          We'll give you a separate day for that so that

11  you're not competing with other calendar matters.  I would

12  think perhaps -- let's say Friday, September 23.  How does

13  that look?  I don't know whether it's better for counsel

14  coming in on a Thursday or a Friday, out-of-town counsel.

15  Are there any preferences for setting the matter on a

16  Thursday or a Friday?

17          MR. DRATEL:  No, your Honor, but that Friday works

18  better than Thursday because I have something Thursday, and

19  then I could fly out in the evening and then the court

20  appearance Friday.

21          THE COURT:  Okay.  Or I could give you -- do we

22  have the 19th available, Monday the 19th?  Well if a Monday

23  is better, we have September 19; we could accommodate you in

24  the morning.

25          MR. DRATEL:  I think the 23rd is best.  I'm getting

1    the consensus here, and it's not one of the bad days for Ms.

2    Moreno; I have her schedule also.

3                   THE COURT:  Okay.  Very good.  Mr. Cole?

4                   MR. DURKIN:  Could I speak to Mr. Dratel?  I have a

5    case in Chicago on the 22nd.  Okay.  That's fine.

6                   THE COURT:  So the 22nd is good?

7                   MR. DURKIN:  The 23rd.

8                   THE COURT:  The 23rd, Friday?  Okay.  Mr. Cole?

9                   MR. COLE:  Your Honor, that should be fine for us.

10   Thank you.

11                  THE COURT:  All right.  We'll set one further

12   status conference then for Friday, September 23.  That will

13   be at -- let's make that 10 a.m.  Your pending motions are

14   continued to that date, and as a result, time is excludable

15   under the Speedy Trial Act between today and September 23.

16   Okay.

17                  MS. FONTIER:  Your Honor, I did -- just one further

18   matter I wanted to bring to the Court's attention.  As I'm

19   sure you're aware, it's currently Ramadan.  Mr. Moalin is

20   housed at the GEO, and they're not currently providing meals

21   outside of -- during the time when he is able to eat.

22   They're providing meals on a regular schedule during the day.

23   He's not provided anything prior --

24                  THE COURT:  Have you talked to Nellie Klein?

25                  MS. FONTIER:  Your Honor, we have made some, and

1    Mr. Ghappour has made some inquiry.  We'll try and work it

2    out through GEO and see what we can do.  I did want to bring

3    it to the Court's attention.  We are of the opinion that

4    there's probably a fairly simple solution is to bring him a

5    sandwich or something after sundown.  We absolutely do not

6    want him to be moved from that facility, which is one of the

7    solutions that has been presented to us, and short of that,

8    he will get by; he's made it so far for a week.  But if no

9    other solution can be reached, I would anticipate at least

10   bringing it back to the Court's attention either through

11   letter or conference call and trying to work out some

12   less-drastic solution than moving Mr. Moalin and Mr. Doreh

13   out of that facility.

14            THE COURT:  All right.  Mr. Ghappour?

15            MR. GHAPPOUR:  I concur.

16            THE COURT:  Okay.  Well, speak with -- if you

17   would, speak with Nellie Klein.  She's very accommodating.

18   And either directly or as liaison, I think your -- you'd be

19   wise to contact her.  And you can certainly advise her of any

20   circumstances that need to be addressed.  And if something

21   needs to be done, if I need to become involved in it, you can

22   certainly fax something to me or send a letter to me -- make

23   sure to copy the government on it -- and we'll try to do

24   what's required, okay?

25            MS. FONTIER:  Certainly.  Thank you, your Honor.

1    And I know this is not exactly your Honor's purview, but if

2    it's possible, we're requesting of the marshals to be able to

3    speak to Mr. Moalin downstairs unless he's taken directly

4    back to the facility, which I doubt will happen.

5              THE COURT:  Well, you're right, it's not really

6    within my purview.  I mean that the marshals' considerations

7    would trump that.  I would suggest if it's at all possible

8    for that to happen, that they allow for it.  But this is a

9    Monday, it's a very busy day, as you know; we have long

10   calendars in many of our courtrooms today.  So if it can be

11   accomplished, it would be appreciated, but otherwise, you may

12   have to make other arrangements.  Okay.

13             MS. FONTIER:  Thank you, your Honor.

14             MR. DURKIN:  If that's the case -- I met with my

15   client for some time yesterday -- could I just speak to him

16   for a minute?  That way I won't have -- right now so I can --

17   truly no need for us to do it.  If other people have to go

18   ahead of us, that would be fine.  Can I just tell him that?

19             THE COURT:  Yes.

20        (The proceedings were concluded.)

21

22

23

24

25

1                       Certificate of Reporter

2

3   I hereby certify that I am a duly appointed, qualified, and

4   acting Official Court Reporter for the United States District

5   Court; that the foregoing is a true and correct transcript of

6   the proceedings had in the mentioned cause on the date or

7   dates listed on the title page of the transcript; and that

8   the format used herein complies with the rules and

9   requirements of the United States Judicial Conference.

10

11  Dated August 10, 2012 at San Diego, California.

12                          _____

13                          /s/ Debra M. Henson  (electronic)
                            Debra M. Henson
14                          Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25