1                      United States District Court

2                    Southern District of California

3

4    UNITED STATES OF AMERICA,        )
                                      )
5                      Plaintiff,     )
                                      )
6       vs.                           ) Case No. 10-CR-4246 JM
                                      ) Status Hearing
7    BASAALY SAEED MOALIN,            ) Friday, September 23, 2011
     MOHAMED MOHAMED MOHAMUD,         )
8    ISSA DOREH,                      )
     AHMED NASIR TAALIL MOHAMUD,      )
9                                     )
                       Defendants.    )
10   _____ )

11

12               Before the Honorable Jeffrey T. Miller
                    United States District Judge

13

14

15

16

17

18

19

20   Official Interpreter:    Ahmedi Farah, CCI

21   Official Court Reporter: Debra M. Henson, CSR, RPR
                              U.S. Courthouse
22                            940 Front Street, Suite 5190
                              San Diego, CA  92101
23                            (619) 238-4538

24

25               Record produced by stenographic reporter

1    Appearances

2    For the Government:        Laura E. Duffy
                                UNITED STATES ATTORNEY
3                               William P. Cole
                                Caroline P. Han
4                               ASSISTANT U.S. ATTORNEYS
                                880 Front Street, Suite 6293
5                               San Diego, CA  92101

6    For the Defendants:
     (Mr. Moalin)              Joshua L. Dratel, Esq.
7                              Alice Fontier, Esq.
                               OFFICE OF JOSHUA L. DRATEL
8                              2 Wall Street, Third Floor
                               New York, NY  10005
9
     (Mr. M. Mohamud)          Linda Moreno, Esq.
10                             LINDA MORENO, P.A.
                               P.O. Box 10985
11                             Tampa, FL  33679

12   (Mr. Doreh)               Ahmed Ghappour, Esq.
                               LAW OFFICES OF AHMED GHAPPOUR
13                             P.O. Box 20367
                               Seattle, WA  98102
14
     (Mr. A. Mohamud)          Thomas A. Durkin, Esq.
15                             DURKIN & ROBERTS
                               2446 N. Clark Street
16                             Chicago, IL  60614

17

18

19

20

21

22

23

24

25

1          San Diego, California - Friday, September 23, 2011

2          (Defendant A. Mohamud is being assisted by a Somali

3   interpreter.)

4               THE CLERK:  Calling matter 13 on calendar,

5   10-CR-4246, USA versus Basaaly Saeed Moalin, Mohamed Mohamed

6   Mohamud, Issa Doreh, Ahmed Nasir Mohamud, for a status

7   hearing.

8               MR. COLE:  Good morning, your Honor.  William Cole

9   and Caroline Han for the United States.

10              THE COURT:  Thank you.  Do we have all counsel

11  present?  All right.  Let's have counsel state your

12  appearances, please; Mr. Cole and Ms. Han already have for

13  the government.

14              MR. DRATEL:  Thank you, your Honor.  Good morning.

15  Joshua Dratel for Mr. Moalin, and with me is Alice Fontier

16  also from my office for Mr. Moalin.

17              THE COURT:  Very good.  Thank you.

18              MS. MORENO:  Good morning, your Honor.  Linda

19  Moreno on behalf of Mr. Mohamud, who's in court in custody.

20              THE COURT:  Thank you, Ms. Moreno.

21              MR. DURKIN:  Tom Durkin on behalf of Nasir Mohamud,

22  who is present in custody.

23              THE COURT:  Thank you.

24              MR. GHAPPOUR:  Good morning, your Honor.  Ahmed

25  Ghappour on behalf of Issa Doreh, who is present in custody.

1              THE COURT:  Okay.  Very good.  Thank you.  We have

2     all four gentlemen present as well.  Okay.  Last time we were

3     together was on August 8, and obviously I'm going to be

4     asking for a bit of a status update and then have a few

5     questions with respect to some of the matters that were being

6     discussed last time in terms of discovery and scheduling.

7              Mr. Durkin indicated last time that the government

8     was trying to locate an interview of his client taken in

9     December of 2009 at the John Wayne International Airport

10    there.  Has that been resolved?  Has that been cleared up?

11             MR. DURKIN:  I have that, Judge.

12             THE COURT:  You do have that?  Okay.  All right.

13    Thank you.  And the bank records -- apparently bank records

14    were still being provided, Mr. Cole, at that point.  You

15    indicated that bank records were still going over.  Has that

16    process been about completed?  Ms. Han?

17             MR. COLE:  Yeah, the bank records are out, your

18    Honor.

19             THE COURT:  Okay.  All right.  So that's

20    essentially done?

21             MR. COLE:  Yes.

22             THE COURT:  Okay.  And Mr. Moalin's travel

23    documents -- I'd like to pronounce that the correct way.

24    I've heard Mo-al-in, I've heard Mo-a-leen.  What's the

25    correct pronunciation for that?  Mister --

1          MR. DRATEL:  Mo-al-in.

2          THE COURT:  Mo-al-in?  Have Mr. Moalin's travel

3    documents been provided or are they no longer necessary?

4    Anything -- that was an issue that was brought up last time.

5    Not important?

6          MS. FONTIER:  Your Honor, it was related to his

7    nephew, who lived with him.  Those were returned, and --

8          THE COURT:  Not an issue.

9          MS. FONTIER:  -- was taken care of.

10         THE COURT:  Subscriber information and toll records

11   for relevant phone numbers.  Where do we stand on that?  Mr.

12   Cole?

13         MR. COLE:  Your Honor, we produced -- since the

14   last hearing, we produced a substantial amount of toll

15   records information/subscriber information, and I believe we

16   are -- I think we're waiting for a small amount of additional

17   toll or subscriber information, very minimal amount.  Most of

18   the toll and subscriber information was provided in

19   discovery, and as well -- the bulk of it, just for the

20   defense counsel's benefit, probably the bulk of it was simply

21   toll records for Mr. Moalin's phone, which is the largest

22   volume.

23         THE COURT:  Okay.

24         MR. COLE:  Also, your Honor, we reproduced in

25   discovery -- not reproduced -- we gave the Shidaal

1    transaction records again just for counsel's benefit.  Those

2    are the same records they already have; we just got them from

3    a different source as well.  We wanted to let them have what

4    we'd gotten from both sources.

5              THE COURT:  Okay.  All right.  So nothing is

6    missing then from the Shidaal -- it was all from the Shidaal

7    documents?

8              MR. COLE:  It was the electronic database of the

9    transactions, so we produced the disk again with a large

10   number of that data -- a large part of database, but we just

11   did obtain it from another source, and we wanted them to have

12   it from both locations.

13             THE COURT:  Okay.  Last time we were together

14   then -- if we can move to the area of interviews and

15   translations or transcriptions.  Last time we were together,

16   there was a mention of the post-arrest interviews being done

17   in English and that they were in the process of being

18   transcribed.  There were voluminous audiotapes I think that

19   were mentioned by you, Mr. Cole.  What's the status --

20             MR. COLE:  Well, the post-arrest statements,

21   depending on the defendant, some were longer than others; I

22   think some were two to three hours, others were shorter.  We

23   have turned over a transcript of Mr. Doreh's.  We had hoped

24   to have transcripts in English of the others.  We're still

25   waiting.  FBI anticipates within about three weeks or so we

1   should have additional transcripts for the others.  Our

2   office will take a little while to clean those up once we get

3   the draft, but certainly before the next court appearance, we

4   expect to have transcripts, English transcripts of those

5   post-arrest statements for the defendants.

6            THE COURT:  How many audiotapes are there or how

7   many hours --

8            MR. COLE:  I believe there's just one post-arrest

9   statement for each defendant.  So there's four post-arrest

10  statements, but I don't recall the exact length of each one.

11  Mr. Doreh's is done, so we're talking about the post-arrest

12  statement for Mr. Khadar, which actually was really an

13  invocation of rights, so that's really going to be a

14  non-issue.  There's a lengthy post-arrest statement for Ahmed

15  Nasir -- or Mr. Taalil Mohamud, and there's a fairly lengthy

16  one for Mr. Moalin.  Those are the two that are taking a

17  while to transcribe because they were -- I don't remember how

18  long, but I want to say they were several hours each, and so

19  it's taking a while to get a good quality English transcript

20  of those post-arrest statements.  The videos were turned over

21  a long time ago to the defense; it's just a courtesy --

22           THE COURT:  Just the audio portions of the --

23           MR. COLE:  The audio and video have been turned

24  over.  We're just talking about the transcripts.

25           THE COURT:  Okay.  Okay.  And there was an

1   indication you weren't particular happy with the quality of

2   the audio; is that what you're cleaning up?  Is that --

3          MR. COLE:  Not the quality of the audio.  It's just

4   that with the quality of whoever did the first draft; we just

5   weren't happy with the first draft of the English

6   transcriptions.  The interview's in English, but in terms of

7   the transcription of it, the first draft was really poor, and

8   we needed to listen to the audio again to fix it.  There was

9   a lot of things that had been transcribed poorly.  And I

10  expect the same thing's going to happen with the next two

11  because of the accents involved.

12         THE COURT:  Okay.  Okay.  But you're confident you

13  can get that in the best possible form then, perhaps even

14  enter into a stipulation as to the accuracy of the

15  transcriptions with defense counsel?

16         MR. COLE:  Your Honor, I think the -- to the extent

17  the post-arrest statements -- we'd be happy to eventually

18  work through any disputes over those transcripts, to the

19  extent the government even uses them; we haven't even made

20  that decision yet.

21         THE COURT:  Okay.

22         MR. COLE:  I think the bigger laboring oar will

23  be -- and the bigger time savings ultimately will be if we

24  are able to reach stipulations as to the transcripts of the

25  Somali language audio intercepts --

1          THE COURT:  Right.

2          MR. COLE:  -- and so we'll eventually work with

3    counsel on that.

4          THE COURT:  Okay.  Where are you in terms of

5    providing those, the audio intercepts?

6          MR. COLE:  We've provided all of them.  If we

7    receive -- well, we've provided all of the audio intercepts,

8    and we've provided English language summaries, or verbatim to

9    the extent we have them.  If we get additional relevant

10   translations of those calls, we'll keep providing those over

11   as we receive them.  But we've given them all over.

12         THE COURT:  So they've been translated?  Have you

13   translated them and/or have you --

14         MR. COLE:  We already have translated them --

15         THE COURT:  -- provided only the English summaries?

16         MR. COLE:  We've provided English summaries if we

17   didn't have them verbatim --

18         THE COURT:  Okay.

19         MR. COLE:  -- and we've provided verbatim

20   translations if we had them.  And there are some calls that I

21   don't have -- there's some calls that we turned over for

22   which the government has neither summary or a translation,

23   but the audio has been turned over to the defense.

24         THE COURT:  There were about 690 audio calls that

25   you were working with?

1          MR. COLE:  No, I think the final number of audio

2     calls ultimately produced in this case is around 1800 I

3     believe.

4          THE COURT:  Eighteen hundred, okay.

5          MR. COLE:  Yes.

6          THE COURT:  How many are pertinent and relevant

7     from your perspective?

8          MR. COLE:  Well, we turned over -- I think the

9     number, your Honor, is around -- between 130 and 140

10    translations --

11         THE COURT:  Okay.

12         MR. COLE:  -- and so, from our viewpoint at least,

13    we obviously focused -- that's at least some rough estimate

14    of what we felt was the most relevant of that whole 1800.

15         THE COURT:  And that number's been pretty constant

16    as I recall.

17         MR. COLE:  Yeah.  It's gone up by -- we've added

18    additional verbatims over the initial number, maybe less than

19    ten additional verbatim translations from our initial

20    estimate the first time we were here before your Honor.

21         THE COURT:  Okay.  Okay.

22         MR. COLE:  And you can -- I mean we certainly don't

23    intend on using even that many in court, but that's kind

24    of --

25         THE COURT:  Are the two sides working together on

1    getting agreed-upon transcriptions or translations from the

2    Somali audio intercepts?

3                MR. COLE:  Well, we haven't had any -- well, I

4    think we just haven't really discussed it.  There certainly

5    hasn't been any argument or disagreement about it, but there

6    also hasn't really been a discussion.  If they have them,

7    they probably are taking time to review them, and certainly

8    we'll look forward to discussing with them if there are, you

9    know, any disagreements with any of the translations.

10               THE COURT:  Okay.  Thank you, Mr. Cole.  I

11   appreciate the information.  Would any defense counsel want

12   to be heard on any of these matters that I've been discussing

13   with Mr. Cole related to ongoing discovery?

14               MR. DRATEL:  Your Honor, I don't quarrel with all

15   that Mr. Cole said as being accurate in terms of the status.

16   The only -- I guess one thing I would say is in our

17   preliminary beginning of -- in terms of having translations

18   reviewed to determine accuracy, we probably will have some

19   issues, but obviously before we'd bring that to the Court, we

20   would marshal them for the government and try to work that

21   out --

22               THE COURT:  Sure.

23               MR. DRATEL:  -- so we probably will have some

24   disagreements with them about -- just based on what we've

25   gone through so far.  Another question is just in terms of

1   the audio, while we have gotten a substantial amount of

2   audio, obviously, it does end at a certain point, and I don't

3   know whether that's because the eavesdropping ended at that

4   point or because that hasn't been produced, and I don't know

5   the answer to that question; so that's one question that we

6   have is -- basically it ended -- sometime in 2009 is when the

7   production ends, and obviously there's a significant amount

8   of time between that and the arrest, and I don't know whether

9   that means we're going to be anticipating getting more

10  material or whether that's the full universe of material

11  that's already been provided.

12          THE COURT:  Well, have you talked to Mr. Cole about

13  this concern?  I mean this is something you can --

14          MR. DRATEL:  Yeah, sure --

15          MR. COLE:  Sure.

16          THE COURT:  -- get worked out pretty easily.  Okay.

17          MR. DRATEL:  You know, one of the other things I

18  guess just to -- because of the nature of the interceptions,

19  there's no minimization in an intelligence-oriented wiretap;

20  it's 24/7, and minimization occurs really in the context --

21          THE COURT:  Title III.

22          MR. DRATEL:  Yeah, so we have a large universe of

23  material that we have to go through to determine whether

24  there are conversations that we would like to transcribe and

25  then perhaps submit in evidence at some point, but this is

1   just a bit of a painstaking, time-consuming process because

2   it's not as if -- you know, the summaries -- and the

3   summaries sometimes don't match because they're not verbatim,

4   they don't cover an entire conversation, and what may be

5   important to us may not be important to the agent or the

6   language specialist who's listening to the conversation.

7              THE COURT:  Okay.  Anything else, Mr. Dratel, on

8   any of these matters Mr. Cole addressed?

9              MR. DRATEL:  I don't think so, your Honor, but my

10  co-counsel might.

11             THE COURT:  Thank you.  Yes, Mr. Ghappour?

12             MR. GHAPPOUR:  Yes, your Honor, on the topic of

13  interpreting is that we're currently in the process of trying

14  to find a certified Somali interpreter that does not have a

15  conflict with the case, so that's one of the things that's

16  taking some time on our part.

17             THE COURT:  Okay.  Very good.  Anyone else?

18  Apparently not.  Okay.

19             MR. DRATEL:  Your Honor, if --

20             THE COURT:  Yes, sir?

21             MR. DRATEL:  Not about what Mr. Cole said, but also

22  in terms of what we had discussed at the prior conference is

23  that now that we --

24             THE COURT:  We're going to get into scheduling if

25  that's where you're going.

1          MR. DRATEL:  Oh, yes.

2          THE COURT:  I was just trying to canvass counsel on

3   what some of the discovery activity had been, where you were

4   in connection with that.  I had my own notes from the last

5   hearing about what you needed to address.  I think those were

6   all the discovery matters that were kind of left hanging from

7   the August 8 hearing, and I know that we were beginning then

8   to discuss a possible timetable for motion practice.

9          My question off the top would be based on an

10  assumption that it's going to be fairly important to get the

11  relevant discovery on much of this that we've discussed today

12  and in proper form, transcribed form, to the defense

13  community before the motions or many of the motions

14  anticipated are actually filed.

15          Initially, last time we were together, you were

16  talking about a filing date after Thanksgiving; I think

17  that's what you were looking at, filing your motions after

18  Thanksgiving.  Well, that's coming up pretty quickly here,

19  and I don't know how the defense feels in terms of their

20  readiness to file substantive motions.  It would be nice to

21  get all foreseeable substantive motions filed at one time and

22  then take the time that's necessary for a hearing, whether

23  it's a day or a couple of days to deal with those -- with

24  those pretrial substantive motions.  But I don't know -- I'll

25  take the pulse right now.  I don't know if you're ready for a

1   briefing schedule at this point given that you're still

2   waiting for material to be provided, transcriptions to be

3   provided; for a certified Somali interpreter without a

4   conflict to be invested in the case; for, as you point out,

5   Mr. Dratel, all of the audiotapes to be mined for -- with the

6   understanding there was no minimization, to be very carefully

7   reviewed to see if there's evidence there that can be helpful

8   to the defense.  So what is your thinking on motion practice

9   now?

10          MR. DRATEL:  I think we still would like to set a

11  motion schedule for two reasons, one of which is that in the

12  event that we can proceed under the schedule that we've set

13  forth here, I think that if we set it far enough out, we can

14  manage to do all the things that need to be done for the

15  substantive motions.

16          The second part is that I think also that it helps

17  to motivate us all to get there as opposed to, you know, not

18  having something firm, and, you know, if something comes --

19  if we -- if a month from now we're in a situation in which it

20  appears that that was unrealistic, we can revisit that in

21  communication with the government and then communicate with

22  the Court if we need to adjust the schedule.  But we would

23  like to set the schedule so we have something to shoot for.

24          THE COURT:  Okay.  I assume everyone's in agreement

25  with that; you want to get some kind of a schedule down now

1    that you can be working toward in good faith and due

2    diligence.  Have you -- have the two sides met and conferred

3    over the scheduling of pretrial motions?  Mr. Cole, have you

4    had that opportunity?

5            MR. COLE:  No, your Honor, but we like the idea of

6    having a motion hearing set as well or at least a date for

7    the filing of the motions and a hearing date.  And we are

8    generally open -- we're far enough out in the schedule that

9    our calendars are generally open.  There's just a couple of

10   weeks we wanted to avoid, but if counsel has a date --

11           THE COURT:  Okay.  I don't know if you can get your

12   motions on -- that is, we can set a date right now for the

13   filing of motions you feel comfortable with, but we can

14   certainly set a date that you think has a fair chance of

15   being met.  Originally you had indicated after Thanksgiving

16   or shortly after Thanksgiving, and then -- I don't know that

17   that would include a FISA motion because I think the

18   government's indicated that that would in all probability

19   come later and you'd need something like 60 days to respond

20   to that.

21           MR. COLE:  That's right.

22           THE COURT:  That might be -- we might set that

23   aside; we might set it aside.

24           MR. COLE:  Set it aside or, if it's filed -- our

25   main concern is not when it's filed but that when it's filed

1  with all the other motions, to just recognize hopefully that

2  it could be -- the response time, the hearing time on that

3  would be on a different track.

4         THE COURT:  All right.  It should be dealt with

5  perhaps separately.  What I'd like to do is suggest to you

6  this.  You're all here together.  If you'd like to use the

7  jury deliberation room to sit down and pull out your

8  schedules and begin to think about what dates you can agree

9  upon, at least for the briefing schedule, I think that would

10 be very helpful before counsel leaves.  And I've got other

11 calendar matters.  We can just recess in this matter and have

12 you come back, let me know what your thoughts are.

13        In terms of actually going forward with a motion

14 hearing, I will tell you that I've got a major civil trial

15 beginning October -- the last Monday in October, October 29,

16 that is scheduled to go on the order of two to three months.

17 I think that case will take me into the early part of

18 January, and I'll be looking for every possible free day to

19 continue with the trial of that very substantial matter.

20 After that, there's -- I've got a -- what I would say is a

21 major multi-defendant criminal case set for trial on the

22 heels of the civil case.  It's estimated to go anywhere from

23 I think four to six weeks.  But we could certainly take a

24 couple of days' break in that trial -- now we're talking

25 about latter January/early February -- to hear the motions

1   that will be filed in this case.  So that might be an

2   appropriate time to think about when you'd like to actually

3   have these pretrial motions set for hearing, latter part of

4   January or in February.  So I give you those other scheduling

5   matters so that you can keep those in mind.  Obviously they

6   don't affect the briefing schedule; you can file your briefs

7   at any point in time.

8            But if there's nothing else you wish to discuss now

9   while we're all here and in the presence of these four

10  gentlemen and their friends and supporters, I would ask that

11  you begin to meet and confer on arriving at some dates here.

12           MR. DRATEL:  Certainly, your Honor.

13           MR. DURKIN:  If I could just stand, I just have one

14  other issue.  I had mentioned earlier when we were here last

15  time that I might be filing a motion regarding detention,

16  and --

17           THE COURT:  Yes, you did, you did, Mr. Durkin, and

18  I think a few others joined in with you on that, and I think

19  that's something that I may just defer to the magistrate

20  judge on.

21           MR. DURKIN:  My question was is that something I

22  could file and just motion up at an earlier date.  I --

23           THE COURT:  I think so.  Oh, definitely, yeah.  I

24  think that should come before the magistrate judge at this

25  point in time.  And I may or may not need to become involved

1    in that at a later point, but I think at the first instance,

2    that, you know, that should be addressed by the magistrate

3    judge in the case.

4            MR. DURKIN:  Could I just clarify one other thing,

5    Judge?

6            THE COURT:  Certainly.

7            MR. DURKIN:  The Section 4 pleading that the

8    government was talking about, could they give us an estimate

9    of when they think that might be filed?

10           MR. COLE:  Well, your Honor, we would -- well, what

11   would trigger that would be a motion to suppress by the

12   defense, which we're -- we're not trying to put that off.

13   Whatever your Honor -- and I guess we'll confer about the

14   date they're going to be filing any motions to suppress.

15   Their suppression motion will trigger our response, which

16   will require us to do a Section 4 CIPA hearing with your

17   Honor.  And so I just know that, as I mentioned a couple

18   times in the past, once they file their motion and we prepare

19   our response and approach your Honor with that, that CIPA

20   motion, with respect to the -- that filing with respect to

21   the FISA suppression, we just need a longer response time

22   than the usual two weeks; that's the point.

23           We will probably also -- at the time of the motion

24   hearing, we'll also probably bring a Section 2 notice under

25   CIPA just to set forth some of the basics again.  It's a very

1    standard document I'm sure counsel have seen before talking

2    about the CIPA framework and requesting a hearing under CIPA,

3    a pretrial hearing with all counsel under CIPA.

4              We don't have a lot of CIPA issues for your Honor.

5    We have -- other than the -- responding to a -- what I

6    anticipate will be a FISA suppression motion.  Other than

7    that response being handled through CIPA procedures, we have

8    very -- I would say, as far as it goes, potentially a very

9    small number of additional CIPA-related matters to discuss

10   with you and counsel.  I think that we could tee those up for

11   your Honor with our Section 2 filing at the same time as the

12   hearing of the other motions, and then we can set further

13   dates for addressing those issues.

14             THE COURT:  All right.

15             MR. DURKIN:  That answers that.

16             THE COURT:  Does that help, Mr. Durkin?  Okay.

17   Very good.  Okay.  Then we'll be in recess in this matter.

18   Anything further will be strictly briefing issues for which I

19   assume defense counsel would be willing to waive their

20   clients' presence as we just put dates --

21             MR. DRATEL:  Yes, your Honor.

22             THE COURT:  -- on the calendar?  Okay.  Very good.

23   All right.  Thank you.

24        (There was a break in the proceedings.)

25             THE CLERK:  Recalling matter 13 on calendar,

1    10-CR-4246.

2              THE COURT:  We don't need appearances at this point

3    by the defendants; all defendants have waived their

4    appearances through counsel for this brief resumption of the

5    hearing in Moalin just to address a scheduling issue.  Okay.

6    We have everyone present; all counsel are present once again.

7              MR. COLE:  Yes, your Honor.  We had a good

8    conversation, and these are the dates the parties want to

9    propose to the Court:  December 9, the defendants would file

10   their motions by that date; January 13 the government would

11   file its responses; February 9 there would be a motion

12   hearing if it fits the Court's calendar.  And counsel also

13   expressed a desire to propose a trial date of May 7, which we

14   all discussed and would meet all of our calendars.

15             MS. MORENO:  Counsel forgot the January 27 proposed

16   date for the defense to file replies.

17             MR. COLE:  Sorry.

18             THE COURT:  January 27 for reply?

19             MS. MORENO:  Yes, your Honor.

20             THE COURT:  You're not giving me too much time to

21   look over all these things, are you, with the briefing

22   completed the end of January and then your hearing on

23   February 9.  I think I'd like a little more time.  You're

24   taking two weeks to reply, but you're giving me less than two

25   weeks to review all of this material.

1               MR. DRATEL:  We could compress that reply time,

2       your Honor.

3               THE COURT:  I'm sorry?

4               MR. DRATEL:  We'll compress that reply time if --

5               THE COURT:  I think so.

6               MR. DRATEL:  Want to say a week?

7               THE COURT:  The 20th for reply.  Obviously I'll be

8       looking at the papers before the reply comes in, but still, I

9       assume that the matters will be pretty substantial.  Okay.

10      Well, I'll adopt those dates then.  Let's get those initial

11      dates down.  It will be the order that all motions, pretrial

12      motions, be filed and served no later than Friday,

13      December 9, 2011; further, that responses to motions be filed

14      and served no later than January 13, 2012; that reply papers

15      be filed and served no later than January 20, 2012, Friday;

16      and that the date of February 9 be set -- what day of the

17      week is that?

18              MR. DRATEL:  Thursday, your Honor.

19              THE COURT:  Thursday?  Let me just check one thing.

20      What's your estimated length of the hearing, one day or

21      longer?

22              MR. DRATEL:  Could be one day, your Honor.

23              THE COURT:  Okay.  We'll make it Thursday,

24      February 9.

25              MR. DRATEL:  Particularly also since it's probably

1   likely that the FISA will extend beyond that.

2             THE COURT:  Yes.

3             MR. DRATEL:  We may be able to do that -- we may be

4   able to do the Section 2 on that same day, but that obviously

5   depends on whether the government can get all that together.

6             THE COURT:  Okay.  Those dates then are set at this

7   point and made a part of the scheduling order.  And with

8   respect to a trial date, I think you can be confident that

9   whether we set a trial date in May now or in February, that

10  May would be available for you.  Does that raise your comfort

11  level though that if a trial date is set now that you're

12  going to actually go to trial at that time?

13            MS. MORENO:  Raises my comfort level, your Honor.

14            MR. DRATEL:  The other issue, your Honor, is also

15  the ability to tell other courts that something is set so

16  that something doesn't get put then and then we end up

17  backing this up a significant amount of time.

18            THE COURT:  What's your estimated length of trial?

19            MR. DRATEL:  I think we're talking about maybe

20  three weeks total, including a defense case in there.  I

21  think the government's somewhere in the two-week range.

22            MR. COLE:  That's right, your Honor.

23            THE COURT:  What was your date then?  What was the

24  date that you arrived at?

25            MR. COLE:  May 7.

 1              THE COURT:  Which is a Monday.

 2              MS. MORENO:  Yes, your Honor.

 3              THE COURT:  We'll set your trial date for May 7,

 4    and we'll mark it at 9 a.m.  We'll mark it as a three-week

 5    matter.  Motions in limine need to be backed up to that.  I'm

 6    having a hard time getting a 2012 calendar.  Let me see if I

 7    have it here.  Okay.  April and May of 2012, Gaby.  Hold on

 8    for just a moment, counsel.  I've got March.

 9              MR. COLE:  Your Honor, while you're pulling that

10    calendar, what was the time for the motion hearing on the 9th

11    of February?

12              THE COURT:  Nine a.m.  May 9, May 9 -- was that the

13    date you mentioned?

14              MR. DRATEL:  May 7.

15              THE COURT:  Yeah, Monday.  Then I would want to

16    hear motions in limine by Friday, April 20.

17              MR. DRATEL:  Your Honor --

18              THE COURT:  Yes?

19              MR. DRATEL:  -- can we ask for an earlier period

20    because we think some of them might be substantial and

21    somewhat fact-intensive, and it might better in terms of

22    trial preparation if we --

23              THE COURT:  Well, to the extent motions in limine

24    are fact-intensive, that's not really the function of motions

25    in limine as I see them.  What did you have in mind when

1    you're saying fact-intensive?

2          MR. DRATEL:  Well, in the sense that the -- in

3    terms of volume, in terms of -- for example, there may be

4    parts of conversations that the government's looking to

5    introduce that we might think are either for 403 or other

6    reasons not admissible.  There are evidentiary issues that I

7    think are perhaps somewhat fundamental in the case that

8    might -- I'll give you one, not giving anything away in the

9    sense that there's a -- there's a period of time in which

10   there is conduct that's before a designation of Al-Shabaab so

11   that it would not be aid to a designated terrorism

12   organization during a period of time.  If the government's

13   going to seek to introduce that, then we would have an

14   in-limine motion with respect to that in -- both on an

15   evidentiary level as well as on a constitutional level/First

16   Amendment issues, things like that that we think are going to

17   be implicated by that.

18         THE COURT:  Well, how much earlier were you looking

19   at, Mr. Dratel?

20         MR. DRATEL:  If we could have three weeks earlier

21   than that, your Honor, maybe end of March.

22         THE COURT:  Well, you're really going to be -- if

23   you're talking about March, my concern is this.  We set a

24   date for motions in limine.  I just want to set one date for

25   motions in limine, I mean have motions in limine heard at one

1   time and not in stages.  And so if you set it too early, you

2   may not know exactly where you're going, what your strategy

3   is going to be, exactly what your proofs are going to be; and

4   you may be able to -- to file certain motions but not all

5   motions is what I'm saying.  So I'd rather be handling

6   everything at once and having both sides know exactly what's

7   in or what's out and then have you prepare and, you know,

8   knowing what in all probability is going to be excluded by

9   way of motion in limine practice.  I'll do this, I'll move it

10  up another -- well, I'll move it up to Friday, April 6 --

11          MR. DRATEL:  That's good, your Honor.  Thank you.

12          THE COURT:  -- and that will be the date for the

13  deadline for filing and serving motions in limine.  Wait a

14  minute.  No, that's the hearing date.  Okay.  April 6

15  hearing.  Well, the problem -- no, the problem with that is

16  it's a Friday, it's a calendar Friday.  I'm going to have to

17  set you on a separate Friday, so you're looking at Friday,

18  the 13th, you're looking at Thursday, the 5th, Thursday, the

19  12th.

20          MR. DURKIN:  Thursday, the 5th, that's fine with

21  me.

22          THE COURT:  Everyone available then?

23          MR. COLE:  Yes, your Honor.

24          THE COURT:  That's one day, okay.  That's your

25  hearing date for motions in limine.  Okay.  Let's work our

1    way back from that then.  Your motions have to be filed and

2    served no later than March 8, and opposition filed and served

3    no later than March 22.  I would imagine most if not all of

4    your motions are going to be opposed, but if there is an

5    unopposed motion, then in your opposition -- in your response

6    indicate please that a particular motion is not opposed, for

7    obvious reasons.  And I don't need reply on motions in

8    limine.  So those will be your dates, March 8, then March 22

9    for filings and motions of the -- filing and motions in

10   limine and your responses thereto.  Of course that applies

11   for both sides, okay?

12          MR. DURKIN:  Yes, thank you, your Honor.  And I may

13   have missed it, but the time on the 5th of April?

14          THE COURT:  Should be nine o'clock.

15          MR. DURKIN:  Thank you.

16          THE COURT:  Okay.  Okay.  If we need to set a

17   further pretrial motion in connection with FISA/CIPA, we can

18   do that at the -- your motion hearing now currently set for

19   pretrial motions.

20          MR. COLE:  Thank you, your Honor.

21          THE COURT:  Okay.  Anything else before we adjourn

22   in this matter?  Okay, counsel.  Thank you.

23          (The proceedings were concluded.)

24

25

1                      Certificate of Reporter

2

3    I hereby certify that I am a duly appointed, qualified, and

4    acting Official Court Reporter for the United States District

5    Court; that the foregoing is a true and correct transcript of

6    the proceedings had in the mentioned cause on the date or

7    dates listed on the title page of the transcript; and that

8    the format used herein complies with the rules and

9    requirements of the United States Judicial Conference.

10

11   Dated August 10, 2012 at San Diego, California.

12
                                _____
13                              /s/ Debra M. Henson  (electronic)
                                Debra M. Henson
14                              Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25