FILED
AUG 2 2 2012
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>BASAALY MOALIN et al.,<br><br>    Defendants. | Case No. 10CR4246-JM<br><br>**ORDER DENYING JOINT MOTION TO TAKE RULE 15 DEPOSITIONS; DENYING MOTION TO STAY** |

Defendants Basaaly Moalin, Mohamed Mohamed Mohamud, Issa Doreh and Ahmed Nasir Taalil Mohamud (collectively "Defendants"), pursuant to Federal Rule of Criminal Procedure 15, jointly move for leave to take depositions of eight foreign prospective defense witnesses in Somalia. The Government opposes the motion. For the reasons set forth below, the court denies the motion for Rule 15 depositions without prejudice to reconsidering a further request under Rule 15, or the parties reaching a stipulation for depositions to proceed, and denies the motion to stay.

## BACKGROUND

The Second Superseding Indictment ("SSA"), filed on June 8, 2012, charges Five Counts: (1) Conspiracy to provide material support to terrorists, in violation of 18 U.S.C. § 2339A (all Defendants); (2) Conspiracy to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B (all Defendants); (3)

Conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956 (all Defendants); (4) Providing material support to terrorists, in violation of 18 U.S.C. § 2339A (defendant Moalin only); and (5) Providing material support to foreign terrorist organization, in violation of 18 U.S.C. § 2339B (defendants Moalin, Mohamud, and Doreh only).

Defendants propose taking the depositions of eight Somali nationals: Naji Mohammad, Farah Shidane, Abukar Dahir Mohamed, Sheik Abdur Rahman, Sharif Qorey, Dr. Bashir Ahmed Salad, Osman Isse Nor, and Hassan Mohamud Guled. "Each of these witnesses has agreed to be deposed in Mogadishu, Somalia." (Motion at p.2:5). "The eight prospective witnesses are all people to whom Mr. Moalin transferred money or who possess direct knowledge of how money that the defendants transferred to Somalia was spent." (Motion at p.2:13-14).

## DISCUSSION

Rule 15 provides the mechanism for taking foreign depositions:

> (a) When Taken. Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged, be produced at the same time and place.

"The district court retains broad discretion in granting a Rule 15(a) motion, and considers the particular circumstances of each case to determine whether the 'exceptional circumstances' requirement has been satisfied." United States v. Omene, 143 F.3d 1167, 1170 (9th Cir. 1998) (quoting United States v. Farfan-Carreon, 935 F.2d 678, 679 (5th Cir.1991)). The exceptional circumstances requirement of Rule 15 means that "only in extraordinary cases will depositions be compelled." United States v. Dillman, 15 F.3d 384, 389 (5th Cir. 1994). The burden of proof for Rule 15(a) depositions rests with the Defendants. United States v. Zuno-Arce, 44 F.3d 1420, 1424-25 (9th Cir. 1995).

In considering whether to permit Rule 15 depositions, the court considers the

totality of the circumstances including, but not limited to, timeliness, the availability of the deponents for trial, whether the depositions are for purposes of discovery or for use at trial, the materiality and helpfulness of the proposed deposition testimony, and the safety of United States officials whose safety might be compromised by traveling to the foreign country. See United States v. Olafson, 213 F.3d 435, 442 (9th Cir. 2000); Zuno-Arce, 44 F.3d at 1424. Furthermore, Defendants must also show that the deposition procedures in the foreign country, as to reliability and trustworthiness, are compatible with fundamental issues of fairness. See Societe Nationale Industrielle Aerospoatiale v. United States Dist. Ct., S.D. Iowa, 482 U.S. 522 (1987). The court now turns to pertinent factors.

### Availability

Defendants contend that the proposed deponents are unavailable because the United States does not maintain formal diplomatic presence in Somalia and the Transitional Federal Government controls only a small section of Mogadishu, and travel to the United States "is not regularly permitted, and is not feasible." (Motion at p.4:11-14). Defendants make no particularized showing as whether any of the proposed deponents even applied for a visa. While conditions in Somalia are beyond challenging, Defendants make no evidentiary showing that a visa would be unavailable to them or that they took any measures to obtain a visa. Rather, in their reply papers Defendants argue that in 2011 Somali nationals faced a 66.8% refusal rate on visitor visa applications and that it would be unlikely for the proposed deponents to receive travel authorization. Defendants then cite anticipated travel costs as being an impediment to the average Somali to travel to the United States. Finally, counsel for Defendants acknowledge that procedures are in place for Somali nationals to obtain both visas and passport waivers and that such procedures are available on the Internet, (Fontier Decl. ¶4), but suggest the statistical and financial concerns have rendered any travel prospects

futile.[1]

As noted by the Government, one way to demonstrate unavailability is through affidavits. United States v. Drogoul, 1 F.3d 1546, 1553 (11th Cir. 1993). At a minimum, a defendant must demonstrate "good faith efforts" to obtain the witness' presence at trial. Zuno-Arce, 44 F.3d at 1425. Defendants simply make no showing that the proposed deponents have applied for entry visas. While Defendants need not make a conclusive showing of unavailability, some showing is required.

In sum, this factor does not favor granting the Rule 15 motion.

Timeliness

Defendants contend that this motion is timely because, in part, discovery is on-going, about 1,800 intercepted telephone calls were produced in discovery, the Government only provided transcripts to about 126 telephone calls, the Government has been on notice that Defendants would seek to take Rule 15 depositions, and Defendants moved for Rule 15 depositions at the earliest possible date. The court notes that the Government provided to defense counsel transcripts of the pertinent calls it has identified in 2011 at the latest and that the identities of some if not all of the persons on these calls were known to Defendants from the time the calls were made.

Notwithstanding, Defendants first mentioned the prospect of Rule 15 depositions in late 2011 and again at a April 5, 2012 status hearing. This court then immediately referred the matter of possible depositions to Magistrate Judge Gallo even without the Defendants filing a motion for Rule 15 depositions. This court strongly counseled the parties that the matter of depositions would be managed by Magistrate Judge Gallo. Unfortunately the record demonstrates that Defendants never pursued this matter before Magistrate Judge Gallo and some 3 ½ months later filed a Rule 15 motion to be heard in late August and in such a manner that were the depositions allowed the trial date would, as Defendants acknowledge, have to be continued yet again. In light of

---

[1] At oral argument, moving counsel represented that the proposed deponents have indicated an unwillingness to travel to the United States.

Defendants' longstanding knowledge about the interactions between the proposed deponents and themselves, such a request has not been timely brought.

In sum, this factor does not favor granting the Rule 15 motion.

Materiality/Helpfulness

On this factor, Defendant's strongest argument for the depositions going forward is that these deponents will provide exculpatory evidence to show that the monies provided by Defendants were not intended to assist any terrorist network or organization. (Fontier Decl. ¶¶ 4-38). While the proposed deponents do not provide any declarations regarding the topics of their anticipated testimony, the declaration of attorney Alice Fontier generally describes the anticipated testimony. The court briefly reviews the proposed testimony.[2]

**Najib Mohammed**

Defendants represent that a large number of the recorded telephone calls are between defendant Moalin and Mr. Mohammed, who operated a call center in Somalia. The anticipated testimony would reveal that defendant Moalin would call almost every morning to talk to family members. He would also provide testimony that defendant Moalin would speak with someone referred to as "Shiekalow" who, he believes, was in charge of security in the central region of Somalia.

The court notes that this testimony is not particularly helpful to Defendants because the conversations have been produced to Defendants. Further, testimony that Mr. Mohamed overheard Moalin speaking to someone named "Shiekalow" does not

---

[2] The court is mindful of Defendants' vigorous argument that materiality, for purposes of Rule 15 depositions, must be distinguished from considerations of admissibility such as reliability, credibility, and whether evidence is cumulative. It seems appropriate, however, to juxtapose some evidence proffered by the Government - such as the January 20, 2008 intercept of a conversation between defendant Moalin and "Sheikalow," (Cole Decl. Exh.2), the accuracy and content of which was not disputed as of the filing of this motion - with the proffer from proposed deponents on the question of whether exceptional circumstances exist for the depositions to go forward under Rule 15. In that vein, if much of what is proffered is undisputed (i.e. Somali tribal and cultural history) or is not inconsistent with the Government's theory of wrongdoing (i.e. financial support for worthy causes as well as for the alleged support of al-Shabaab), circumstances become less "exceptional" within the meaning of Rule 15.

materially advance the defense theory that Moalin did not speak with Aden Ayrow. Such proposed testimony may carry little weight.

In sum, the court concludes that this testimony is not particularly helpful to Defendants.

**Farah Shidane, a/k/a "Farah Yare"**

Defendants argue that Mr. Shidane is a member of the Ayr clan from the Gelgaduud region and has known Defendant Moalin for many years. (Fontier Decl. ¶11). Mr. Shidane will provide testimony "about the history and development of the local administration, his role in the administration, and his opposition to al-Shabaab. In addition he will state that he received money from Mr. Moalin because he was the treasurer of the development council" and that the monies received by Mr. Moalin were "used to build and maintain the Orphan Care Center, a school in Gurieel, and provided critical humanitarian aid during the drought." (Fontier Decl. ¶12).[3]

In response, the Government provides a proffer which, if true, substantially undermines the helpfulness of this evidence. Mr. Shidane is the uncharged co-conspirator No. 1 as alleged in the SSA. Further, recorded conversations provide support for the Government's argument that many of the recorded statements with Mr. Shidane are inculpatory, not exculpatory. (Cole Decl. Exhs.15-18).

In sum, the court concludes that this testimony may be helpful to Defendants.

**Sheik Abdul Rahman, a/k/a/ "Geedow Qorow"**

Mr. Raham, current governor of Dhusamarreb and defendant Moalin's brother-in-law, is anticipated to provide testimony regarding the Ilyes Foundation, Moalin's support for the Ilyes Foundation, and al-Shabaab's opposition to the development of schools and local Governments in Somalia. (Fontier Decl. ¶15). Mr. Rahman would also provide testimony about his opposition to al-Shabaab, the use of defendant

---

[3] Defendants also represent that Mr. Shidane is able to provide background information and context on the political situation in Somalia. The court notes that there are many sources capable of providing background information and context to the political situation in Somalia.

Moalin's house by Ahlu Suna Wa Jameea, not al-Shabaab, and an individual named "Sheikalow" who is not Aden Ayrow.

The Government responds that the proffered testimony that Ayrow is not "Sheikalow" is inherently unreliable because, for the reasons discussed with respect to Hassan Mohamud Guled, the recorded conversations undermine this proffer. Further, the Government concedes that Moalin was an Ilyes supporter. The court notes that the use of Moalin's house by Ahlu Suna does not necessarily mean that al-Shabaab did not also use the Mogadishu home of defendant Moalin.

In sum, this evidence provides some support for Defendants' theories of the case and is potentially helpful to Defendants.

**Sharif Qorey**

Defendants contend that there are recorded conversations between Mr. Qorey and defendant Moalin, that Moalin permitted members of Ahlu Suna to use his home in Mogadishu and that he remembers "Sheikalow." (Fontier Decl. ¶27, 28).

The Government responds that Defendants already have the recorded conversations, the information regarding "Sheikalow" as someone other than Aden Ayrow has been substantially undermined, and the SSA alleges that Ayrow used the house in Mogadishu, not the compound Moalin was building (with Qorey's help) in Guriceel.

In sum, the court concludes that this information is not particularly helpful to Defendants.

**Dr. Ashir Ahmed Salad**

Defendants represent that Dr. Salad, the head Somali Iman, has taught at the Islamic International University where he met Defendant Mohamud, and that he has stayed in touch with Mohamud and other members of the North American Islamic Council ("NAIC"). He would also provide testimony that the goal of NAIC is to unify Somali Imans under a moderate peaceful teaching. He would also testify that al-Shabaab websites specifically state that NAIC, and the Counsel of Somali Religious

Schools, are against al Shabaab. (Fontier Decl. ¶¶29-31).

The court notes the marginal relevance of a Somali Iman providing testimony about NAIC, a North American organization. The court further notes that there are several different means of introducing statements encountered on al-Shabaab websites.

In sum, the court concludes that this testimony is only marginally helpful to Defendants.

**Hassan Mohamud Guled, a/k/a "Sheikalow"**

Defendants represent that Mr. Guled was a police commissioner of the Gelguduud region during the relevant time period and that he is the person identified on the telephone calls as "Sheikalow." He would also provide testimony that he had used defendant's house on more than one occasion for administrative purposes. This testimony would undermine that Government's theory that defendant Moalin communicated with the leader of al-Shabaab, Aden Ayrow (a/k/a Sheikalow).[4]

In large part, the Government responds that the proposed testimony that Mr. Guled is "Sheikalow," meaning Aden Ayrow, is simply not credible in light of the recorded conversations between "Sheikalow" and Moalin. The recorded conversations identified by the Government tend to support this argument. Given that the name "Sheikalow" may be applied to hundreds if not thousands of individuals it is not in that sense an uncommon nickname.

The court concludes that the identity of "Sheikalow" is a material issue in the case and that the commonness of the name may raise challenges for the parties. On this motion, it is not the role of the court to weigh credibility determinations of potential witnesses. While the translated conversations themselves indicate that the "Sheikalow" taking part in the conversation is Aden Ayrow, this evidence may be countered by Defendants.

In sum, the court concludes that this testimony is potentially helpful to

---

[4] According to Defendants, Sheikalow is a nickname that means "of the Sheikal tribe." (Fontier Decl. ¶38).

Defendants.

### Safety of United States Officials and Defense Counsel

The court must consider whether the safety of United States officials and defense counsel would be compromised by travel to a foreign location. Omene, 143 F.3d at 1169-70; United States v. Olafson, 213 F.3d 435, 442 (9th Cir. 2000). In Olafson the Ninth Circuit concluded that the district court properly considered and denied Rule 15 depositions in Mexico because, in part, conditions in Mexico were unsafe for American prosecutors. Id.

Here, the dangers of travel to Somalia are acute and present substantial risks to both United States personnel and defense counsel. The State Department has issued a warning to U.S. citizens to avoid all travel to Somalia. The travel warning, dated June 15, 2012, identifies the risk of kidnaping, murder, illegal roadblocks, banditry and other violent incidents. (Jacobson Decl. ¶4). The travel warning identifies numerous recent acts of violence. While Defendants propose taking the depositions adjacent to the airport in Mogadishu, the airport has been a particular target of terrorist attacks. The terrorist attacks at the airport include a mortar attack on Congressman Payne in April 2009 and an al-Shabaab suicide bombing in September 2010. (Cole Decl. ¶¶19, 20). Furthermore, Mogadishu has a history of recent extreme violence. (Cole Decl. ¶23). Finally, the court notes that there is no State Department presence to assist U.S. personnel in case of an emergency.

While Defendants argue that the SKA facility adjacent to the airport is secure and protected by African Union peacekeepers, this argument does not take into consideration the recent and on-going violent history in Somalia. For this court to order, encourage, or condone United States prosecutors traveling to a lawless and proven violent state - with advance notice to those who might contemplate harming these individuals - would be reckless and indefensible.

In sum, this factor weighs strongly and, in and of itself, decisively against Rule 15 depositions going forward in Somalia.

Miscellaneous Factors

The court also considers whether the deposition procedures in the foreign country, as to reliability and trustworthiness, are compatible with fundamental issues of fairness. See Societe Nationale Industrielle Aerospoatiale, 482 U.S. 522. Defendants contend that an oath will be administered by a Somali magistrate and subject to cross-examination by Government counsel. There is no evidence before the court that the methods proposed by Defendants are either reliable or trustworthy. There is no showing that an oath in Somali has the same meaning as an oath in this country (or one subject to the Hague convention). There is no showing that an oath in Somalia is subject to penalties of perjury and judicial process like those available in the United States. In fact, due to civil unrest in Somalia, there does not appear to be any significant functioning executive or judicial process in Somalia.[5] As noted on the State Department's website, "There is no organized system of criminal justice in Somalia, nor is there any recognized or established authority to administer a uniform application of due process. Enforcement of criminal law is, therefore, haphazard to nonexistent." (Jacobson Decl. ¶10). In sum, this factor of reliability and trustworthiness of the proposed depositions strongly disfavors Rule 15 depositions in Somalia.

Considering all relevant factors and based upon the present motion, Defendants fail to establish extraordinary circumstances warranting Rule 15 depositions. The motion for Rule 15 depositions is denied without prejudice subject to a further showing.[6]

---

[5] Without a functioning government, the court notes that even simple tasks such as establishing the identity of a witness by means of official government documentation presents a challenge.

[6] While the core and thrust of this motion is for depositions to proceed in Somalia, Defendants have intermittently and casually suggested in their papers alternative considerations might be given to depositions through written interrogatories or videoconferencing. (Reply at pp. 20-21). At the time of oral argument, alternatives were expanded to include taking Rule 15 depositions at other sites in the region. Accordingly, the court has, once again, ordered the parties to immediately appear before Magistrate Judge Gallo for management of further Rule 15 discussions between the parties including any arrangements that may be agreed upon by the parties. Again, the court indicates its willingness to consider, and even adopt, any agreements the parties may reach concerning Rule 15 depositions or other

## THE MOTION TO STAY

Defendant Mohamud moves to stay the action pending the taking of Rule 15 depositions. As the court has denied the motion for Rule 15 depositions under the pending request, there is no basis to stay the action. As articulated by the court at the August 22, 2012 hearing, a continuance of pending pretrial and trial dates is preferable to an open-ended stay of the action.

**IT IS SO ORDERED.**

DATED: Aug 22, 2012

JEFFREY T. MILLER
United States District Judge

cc: All parties

---

discovery. To that end, this court is willing to entertain a reasonable continuance of all pending dates to accommodate Rule 15 depositions that may be agreed upon or for other good cause shown. At the time of the August 22, 2012 status hearing, all Defendants requested a continuance of all pending dates. The Government did not oppose the request. To these ends, the parties have been requested to meet and confer on Rule 15 issues and the scheduling of new dates for status hearings, motions in limine briefing and argument, and trial.