1

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3

4    UNITED STATES OF AMERICA,    )
                                  )
5              PLAINTIFF,         )    CASE NO. 10CR4246-JM(WVG)
                                  )
6    VS.                          )    SAN DIEGO, CALIFORNIA
                                  )
7    BASAALY SAEED MOALIN,        )    MONDAY,
     MOHAMED MOHAMED MOHAMUD,     )    OCTOBER 29, 2012
8    ISSA DOREH,                  )    7:00 A.M.
     AHMED NASIR TAALIL MOHAMUD,  )
9                                 )
               DEFENDANTS.        )
10   _____)

11

12

13            REPORTER'S TRANSCRIPT OF PROCEEDINGS

14           MOTION HEARING RE: SAFE PASSAGE

15        BEFORE THE HONORABLE WILLIAM V. GALLO
              UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21                 CAMERON P. KIRCHER
22              CSR NO. 9427, RPR, CRR, RMR
                880 FRONT STREET, ROOM 4290
23             SAN DIEGO, CALIFORNIA  92101
                 PHONE:  (619) 239-4588
24           E-MAIL:  CPKIRCHER@GMAIL.COM

25

COMPUTER-AIDED TRANSCRIPTION

```
 1    APPEARANCES:

 2    FOR THE GOVERNMENT:        LAURA E. DUFFY, U.S. ATTORNEY
                                 BY:  WILLIAM P. COLE, ESQ.
 3                                    CAROLINE P. HAN, ESQ.
                                 ASSISTANT U.S. ATTORNEY
 4                               880 FRONT STREET
                                 SAN DIEGO, CALIFORNIA  92101
 5

 6    FOR DEFENDANT MOALIN:      LAW OFFICES OF JOSHUA DRATEL
                                 ATTORNEYS AT LAW
 7                               BY:  JOSHUA L. DRATEL, ESQ.
                                      ALICE L. FONTIER, ESQ.
 8                               2 WALL STREET
                                 3RD FLOOR
 9                               NEW YORK, NEW YORK  10005

10

11    FOR DEFENDANT MOHAMUD:     LINDA MORENO
                                 ATTORNEY AT LAW
12                               PO BOX 10985
                                 TAMPA, FLORIDA  33679

13

14    FOR DEFENDANT DOREH:       AHMED GHAPPOUR
                                 ATTORNEY AT LAW
15                               PO BOX 30267
                                 SEATTLE, WASHINGTON  98102

16

17    FOR DEFENDANT MOHAMUD:     DURKIN & ROBERTS
                                 ATTORNEYS AT LAW
18                               BY:  THOMAS A. DURKIN, ESQ.
                                 2446 NORTH CLARK STREET
19                               CHICAGO, ILLINOIS  60614

20

21

22

23

24

25
```

COMPUTER-AIDED TRANSCRIPTION

1          SAN DIEGO, CALIFORNIA – MONDAY, OCTOBER 29, 2012

2                          7:00 A.M.

3               THE COURT:  ALL RIGHT.  GOOD MORNING, EVERYONE.

4     THIS IS BILL GALLO ON THE LINE.

5               THIS IS THE CASE OF THE UNITED STATES VS. MOALIN,

6     ET AL., 10CR4246.  PRESENT IN THE COURTROOM ARE MR. COLE AND

7     MS. HAN, AND THEN WE HAVE THE OTHERS ON THE LINE.  I'LL MAKE

8     THE APPEARANCES FOR THE PARTIES, JUST TO MAKE SURE THAT I'VE

9     GOT THE LINEUP CORRECT.

10              AS I INDICATED, MS. HALL -- OR MR. COLE AND MS. HAN

11    ARE PRESENT IN COURT.  ON THE LINE I BELIEVE WE HAVE

12    MR. DRATEL; IS THAT CORRECT?

13              MR. DRATEL:  YES, YOUR HONOR.

14              THE COURT:  OKAY.  GOOD MORNING.

15              MR. DRATEL:  GOOD MORNING.

16              THE COURT:  MS. FONTIER.

17              MS. FONTIER:  YES.  GOOD MORNING, YOUR HONOR.

18              THE COURT:  GOOD MORNING.

19              MR. GHAPPOUR.

20              MR. GHAPPOUR:  GOOD MORNING, YOUR HONOR.

21              THE COURT:  GOOD MORNING.

22              MS. MORENO.

23              MS. MORENO:  HELLO, JUDGE.

24              THE COURT:  GOOD MORNING.

25              AND MR. DURKIN.

1          MR. DURKIN:  GOOD MORNING, JUDGE.

2          THE COURT:  GOOD MORNING.

3          ALL RIGHT.  SO FOR THOSE OF YOU ON THE EAST COAST, I

4    HOPE YOU'RE SURVIVING FRANKENSTORM.  AND IF YOU NEED TO

5    EVACUATE AT ANY TIME DURING THE HEARING, JUST LET ME KNOW.

6          ALL RIGHT.  ON TAP FOR THIS MORNING -- WE ARE ON THE

7    RECORD AND PRESENTLY WE DO HAVE A COURT REPORTER IN THE

8    COURTROOM, WHO IS TAKING DOWN EVERY WORD.  SO IF THERE IS A

9    NEED FOR A QUICK TURNAROUND ON A TRANSCRIPT, I BELIEVE WE'LL

10   BE ABLE TO ACCOMPLISH THAT FOR EITHER SIDE WHO MAY DESIRE TO

11   HAVE ONE.

12         WE'RE HERE TODAY TO DISCUSS AND RESOLVE THE ISSUE OF

13   SAFE PASSAGE.  DEFENDANTS HAVE BROUGHT TO THE COURT'S

14   ATTENTION LAST WEEK THAT THE SAFE PASSAGE ISSUE WITH RESPECT

15   TO AT LEAST ONE WITNESS WHO IS TO BE DEPOSED AND PERHAPS

16   OTHERS WAS DISCUSSED IN THE PAST BETWEEN THE ATTORNEYS FOR

17   BOTH SIDES, AND I'M GOING TO LET THE DEFENSE GO FIRST ON THIS

18   ISSUE, BECAUSE I BELIEVE IT'S THEIR MOTION FOR THIS TO BE

19   RESOLVED.

20         SO WHO SPEAKS FOR THE DEFENSE ON THIS?

21         MR. DRATEL:  WELL, YOUR HONOR, I SPOKE LAST TIME.

22   THIS IS MR. DRATEL.

23         THE COURT:  GO AHEAD.

24         MR. DRATEL:  UNFORTUNATELY, I DON'T HAVE MY LETTER

25   WITH ME BECAUSE I HAVE NOT BEEN ABLE TO GET TO MY OFFICE

5

1    BECAUSE OF THE STORM.  AND I'LL JUST SPEAK FROM -- GENERALLY,

2    AND IF ANYONE WANTS TO SUPPLEMENT, THAT'S FINE.

3            OUR POSITION IS THAT WE HAVE BEEN ENDEAVORING WITH

4    THE COURT AND THE GOVERNMENT TO ACCOMPLISH THESE DEPOSITIONS

5    IN DJIBOUTI IN ONE -- IN ONE EXCURSION ESSENTIALLY, AND TO DO

6    IT AS EFFICIENTLY AS POSSIBLE WITH A SIGNIFICANT DEVOTION OF

7    RESOURCES FROM ALL THREE POINTS; FROM THE DEFENSE, FROM THE

8    COURT, FROM THE GOVERNMENT.  AND JUST RECENTLY THE GOVERNMENT

9    HAD SHIFTED ITS POSITION WITH RESPECT TO THE QUESTION OF WHAT

10   WOULD OCCUR IN DJIBOUTI WITH RESPECT TO THE WITNESSES, AT

11   LEAST ONE WITNESS IN PARTICULAR, IN TERMS OF THE UNITED

12   STATES' ACTIONS.

13           WE HAD INITIALLY TALKED ABOUT THE POSSIBILITY OF

14   SAFE PASSAGE TO THE UNITED STATES.  THAT WAS OBVIATED BY THE

15   FACT THAT THE WITNESSES WOULD NOT COME TO THE UNITED STATES.

16   WE TALKED ABOUT THE POSSIBILITY OF SAFE PASSAGE TO KENYA.  WE

17   TALKED ABOUT DJIBOUTI.  WE TALKED ABOUT THE FACT THAT -- WE

18   WOULD ACKNOWLEDGE THAT THE U.S. COULD NOT BIND THE GOVERNMENT

19   IN DJIBOUTI, BUT THAT CERTAINLY THE UNITED STATES COULD BIND

20   ITSELF.

21           AND THEN SUDDENLY THOSE DISCUSSIONS BROKE OFF WITH A

22   CATEGORICAL POSITION BY THE U.S. THAT THEY WOULD NOT COMMIT

23   TO ANYTHING UNTIL WE KNOW WHAT WITNESSES, IN PARTICULAR A

24   CO-CONSPIRATOR, AN UNINDICTED CO-CONSPIRATOR, MR. SHIDANE --

25           THE REPORTER:  I'M SORRY.  WAIT, WAIT, WAIT.

1    THE COURT:  MR. DRATEL, SINCE WE DO HAVE A COURT

2    REPORTER IN THE COURTROOM, AND BECAUSE WE ARE USING A

3    TELEPHONE, SOMETIMES THE PRONUNCIATION OF CERTAIN WORDS,

4    PARTICULARLY NAMES, MAY NOT BE AS CLEAR AS WE WOULD HOPE TO

5    MAKE SURE WE CAPTURE THE RECORD CORRECTLY.

6        SO COULD YOU PLEASE PRONOUNCE AND SPELL THE NAME OF

7    THE WITNESS THAT YOU ARE REFERRING TO, WHO IS THE UNINDICTED

8    CO-CONSPIRATOR, WHO YOU JUST MENTIONED.

9        MR. DRATEL:  YES.  S-H-I-D-N -- I'M SORRY.

10   S-H-I-D-A-N-E.  I'LL JUST CALL HIM MR. SHIDANE FOR PURPOSES

11   OF OUR DISCUSSION TODAY.

12       SO HIS SITUATION IS THE MOST PROBLEMATIC, BECAUSE

13   HE'S AN UNINDICTED CO-CONSPIRATOR, WHO CONCEIVABLY -- WELL,

14   WHO COULD CONCEIVABLY HAVE EXPOSURE.  THE OTHER WITNESSES ARE

15   NOT UNINDICTED CO-CONSPIRATORS AS FAR AS WE'VE BEEN TOLD, OR

16   AS FAR AS WE KNOW, AND WE DON'T KNOW WHETHER THAT'S GOING TO

17   BE AN ISSUE OR NOT, AND WE DON'T THINK SO.  WE THINK WE CAN

18   GET THOSE WITNESSES TO DJIBOUTI AND BACK.  WE'RE JUST NOT

19   SURE ABOUT MR. SHIDANE RIGHT NOW BECAUSE OF THE FAILURE OF

20   THE GOVERNMENT TO PROVIDE THE SAFE PASSAGE, WHICH HAS BEEN

21   DONE IN OTHER CASES.

22       WE'VE PROVIDED THE GOVERNMENT A LETTER, I THINK WE

23   PROVIDED IT TO THE COURT AS WELL AS AN EXHIBIT, IN OUR -- TO

24   OUR LETTER.  AND IF I'M -- I THINK SO.  DID WE DO THAT?

25       THE COURT:  YES.

7

1          MR. DRATEL:  OKAY.  THANK YOU, YOUR HONOR.

2          AND SO THIS IS NOT SOMETHING THAT IS REINVENTING THE

3     WHEEL.  THIS IS JUST DOING SOMETHING THAT IS PART OF THE

4     PROCESS OF MAKING SURE THAT THE DEFENDANTS GET A FAIR TRIAL.

5     THIS IS ALL PART OF THE PROCESS OF ENSURING THAT WE HAVE THE

6     OPPORTUNITY TO HAVE A DEFENSE IN A CASE IN WHICH THE

7     GOVERNMENT IS CHARGING THIS CRIMINAL CONDUCT WITH RESPECT TO

8     PEOPLE WHO ARE HALF A WORLD AWAY, IN AN AREA THAT IS

9     EXTRAORDINARILY INACCESSIBLE TO US, AND IN WHICH WE DO NOT

10    HAVE THE ABILITY TO WIRETAP, TO GET FOREIGN GOVERNMENT

11    INTELLIGENCE OR ALL THOSE THINGS WE CAN'T DO.  WE HAVE TO GET

12    THESE WITNESSES TO TESTIFY SO THAT WE CAN HAVE A SHOT AT THIS

13    TRIAL.

14         AND THIS IS AN EXTRAORDINARILY IMPORTANT WITNESS.

15    THIS IS SOMEONE WHOM THE GOVERNMENT CLAIMS -- WE'RE TALKING

16    ABOUT MR. SHIDANE NOW.  THIS IS SOMEONE WHOM THE GOVERNMENT

17    CLAIMS IS AN UNINDICTED CO-CONSPIRATOR; YET, WE HAVE

18    EXTRAORDINARILY CONTRARY INFORMATION ABOUT HIM AND HIS

19    RELATIONSHIP WITH THE SOMALI GOVERNMENT AS IT EXISTS RIGHT

20    NOW AND AS IT EXISTED THEN, HIS RELATIONSHIP WITH AL-SHABAAB,

21    NOT AS AN AL-SHABAAB OPERATIVE, BUT AS THE CONTRARY, THE

22    OPPOSITE, AS AN AL-SHABAAB TARGET.  SO WE NEED TO GET THAT

23    INFORMATION IN THE RECORD IN FRONT OF A JURY SO WE CAN HAVE A

24    FAIR TRIAL.

25         THE COURT:  ALL RIGHT.  ANYBODY ELSE?

1    MR. DRATEL:  AND I WOULD SUGGEST THAT THE COURT,

2  JUST LIKE THE NINTH CIRCUIT PERMITS THE COURT TO ORDER

3  IMMUNITY, WHICH IS REALLY TO ME A FAR GREATER -- IS

4  CONFERRING A FAR GREATER -- IS A FAR GREATER EXERCISE THAN

5  SIMPLY SAFE PASSAGE IN THIS CONTEXT, THAT WE WOULD HOPE THAT

6  WE COULD DO THAT AND GET MR. SHIDANE THERE FOR THE TESTIMONY;

7  AND IF NOT, THAT WE SHOULD BE DOING IT SOME OTHER WAY FROM

8  SOMALIA DOWN THE ROAD AS QUICKLY AS POSSIBLE IN A MANNER THAT

9  THE GOVERNMENT CAN PARTICIPATE IN ANY WAY THEY LIKE, BY

10  VIDEO, THEY CAN GO TO MR. SHIDANE, WHATEVER.

11    WE DON'T WANT -- YOU KNOW, WE DON'T WANT TO

12  COMPLICATE THIS PROCESS ANY MORE THAN HAS ALREADY BEEN, BUT

13  WE NEED TO FOR THE CLIENTS' CONSTITUTIONAL RIGHTS TO A FAIR

14  TRIAL.

15    THE COURT:  ALL RIGHT.  ANYBODY ELSE FROM THE

16  DEFENSE LIKE TO ADD THEIR THOUGHTS?  NO?  OKAY.  ALL RIGHT.

17    MR. COLE OR MS. HAN.

18    MR. COLE:  YES.  THANK YOU, YOUR HONOR.

19    WE HAVE LOOKED AT THIS CLOSELY.  WE'VE CONSIDERED IT

20  IN THE CONTEXT OF THE TYPE OF CASE THAT IT IS.  IT INVOLVES A

21  THIRD COUNTRY.  THE UNITED STATES SIMPLY IS NOT GOING TO MAKE

22  ANY ASSURANCES IN THIS TYPE OF A CONTEXT WHERE A GROUP OF

23  WITNESSES, INCLUDING AN UNINDICTED CO-CONSPIRATOR, WILL BE

24  TRAVELING TO A THIRD COUNTRY.  WE ARE GOING -- WE HAVE WORKED

25  HOPEFULLY WELL, AND COOPERATIVELY TO WORK OUT THE LOGISTICAL

1    ARRANGEMENTS TO HELP MAKE THIS HAPPEN.  WE CERTAINLY HAVE NO

2    INTEREST IN SEEING IT NOT HAPPEN.

3         BUT AT THE SAME TIME, AS A MATTER OF POLICY, WE ARE

4    NOT GOING TO APPEAR -- FOR ONE THING, WE'RE NOT GOING TO

5    APPEAR TO BE SPONSORING THESE WITNESSES OR VOUCHING FOR THEM

6    IN ANY WAY TO A THIRD-PARTY GOVERNMENT.  I KNOW THE DEFENSE

7    MAY NOT SEE THAT AS AN ISSUE OR CONCERN, BUT THE UNITED

8    STATES IS NOT GOING TO BE MAKING ASSURANCES TO A GROUP OF

9    WITNESSES IN A TERRORISM CASE WHO ARE HEADED TO A THIRD

10   COUNTRY, PARTICULARLY WHERE ONE OF THEM IS AN UNINDICTED

11   CO-CONSPIRATOR IN A TERRORISM CASE.  IT'S SIMPLY NOT GOING TO

12   HAPPEN.  IT WOULDN'T HAPPEN EVEN IF I WANTED IT TO.  IT WILL

13   NOT BE AUTHORIZED.  AND SO WE ARE NOT GOING TO BE ABLE TO DO

14   THAT.

15        THERE WERE LOTS OF DISCUSSIONS ALONG THE WAY HERE IN

16   EXPLORING, IN THE CONTEXT THAT NEITHER MS. HAN OR MYSELF HAVE

17   EVER LITIGATED IN, THE NOTION OF DEPOSITIONS OVERSEAS IN THIS

18   TYPE OF A MATTER, IN THIS TYPE OF A CIRCUMSTANCE.  THERE WERE

19   PRELIMINARY DISCUSSIONS ABOUT THEM COMING TO THE U.S.  IN

20   THAT CONTEXT, THERE WAS DISCUSSION OF SAFE PASSAGE.  THERE

21   HAS BEEN DISCUSSIONS ABOUT A LOT OF THINGS IN THE CONTEXT

22   THAT WERE ALL PRELIMINARY.  AND AS WE SAW HOW THIS SHAPED UP

23   AND FORMED, THERE HAS NEVER BEEN A COMMITMENT TO PROVIDE

24   THESE WITNESSES SAFE PASSAGE ANYWHERE.  AND WE CANNOT MAKE

25   THAT COMMITMENT, NOT AUTHORIZED TO MAKE THAT COMMITMENT.

1           AND WE BELIEVE THAT UNDER THE NINTH CIRCUIT LAW THAT

2     WAS JUST REFERRED TO, THERE IS NO -- THERE IS NO BASIS FOR --

3     TO COMPEL THE UNITED STATES TO PROVIDE THESE ASSURANCES.

4     THERE SIMPLY HAS BEEN NO SHOWING OF ANYTHING.  ONE, THERE ARE

5     NO CASES IN THE NINTH CIRCUIT THAT EVEN LAY OUT A TEST FOR

6     COMPELLING SAFE PASSAGE.  THE CLOSEST ANALOGY THAT MR. DURKIN

7     REFERRED TO IS THE COMPELLED USE IMMUNITY.  AND EVEN THERE,

8     UNDER THE TWO PRONGS OF THE STRAUB TEST, THERE JUST SIMPLY IS

9     NO BASIS HERE TO COMPEL IT.  THERE IS SIMPLY NOTHING HERE

10    THAT WOULD RAISE A SITUATION WHERE SAFE PASSAGE WOULD BE

11    COMPELLED.

12          WE INTEND TO NOT STAND IN THE WAY OF ANYONE SHOWING

13    UP, BUT WE DON'T INTEND TO DO ANYTHING FURTHER IN TERMS OF

14    INDUCING THEM TO SHOW UP.

15          MS. MORENO:  IF I MAY SPEAK.  THIS IS LINDA

16    MORENO.

17          THE COURT:  MS. MORENO, YOU'RE GOING TO HAVE TO

18    SPEAK UP.

19          MS. MORENO:  OKAY.  I'M GOING TO DO MY VERY BEST.

20    IS THAT GOOD?  IS THAT BETTER?

21          THE COURT:  SLIGHTLY.  GO AHEAD.

22          MS. MORENO:  THE PROBLEM IS THAT MR. COLE DOESN'T

23    TELL THE WHOLE STORY, NEITHER IN HIS REPRESENTATION TO THE

24    COURT JUST NOW OR IN HIS ATTACHED DECLARATION TO THE MOTION

25    FILED ON THE 26TH OF OCTOBER.

1        WHAT HE FAILED TO ADDRESS IN THAT DECLARATION, AND

2   WHICH WAS REALLY PART OF THE INCENTIVE FOR US TO BRING THIS

3   TO THE COURT'S ATTENTION, WAS THE CONVERSATION THAT HE HAD

4   WITH MR. DURKIN AND WITH ME ON OCTOBER THE 12TH WHERE HE TOLD

5   US THAT THERE WAS MORE THAN ONE OF THE WITNESSES WHO HAD

6   VULNERABILITY, THAT THEY NEEDED TO -- THEY SHOULD GET THEIR

7   OWN LAWYER, THAT HE COULDN'T PROMISE WHAT HE WAS GOING TO DO

8   ONCE WE GOT TO DJIBOUTI.

9        NOW, QUITE FRANKLY, IN OUR MINDS, LOOKING AT THAT

10  VERY SOBERLY, THAT WAS THE FIRST TIME THAT WE FELT THAT THERE

11  WAS REALLY -- AND I'M NOT TRYING TO BE DRAMATIC HERE.  BUT WE

12  FELT THAT THE WITNESS MIGHT BE SLIGHTLY YOU COULD SAY

13  VULNERABLE, I WOULD SAY THREATENED, IN SOME FASHION.

14       NOW, WE DID NOT WANT TO SPEND ALL THESE RESOURCES,

15  TRAVEL THOUSANDS OF MILES TO A PLACE WHERE ONE OR MORE OF

16  THESE WITNESSES COULD BE DETAINED OR ARRESTED ON ANYBODY'S

17  AUTHORITY.  THAT'S THE FIRST THING.

18       THE COURT:  I'M SORRY, MS. MORENO.  COULD YOU REPEAT

19  THAT LAST SENTENCE.

20       MS. MORENO:  IF I COULD REMEMBER IT, YOUR HONOR.

21       WE DID NOT WISH TO TRAVEL AND HAVE OUR RESOURCES,

22  YOUR HONOR'S RESOURCES, THE GOVERNMENT'S RESOURCES EXPENDED

23  ONLY FOR THIS TO RESULT IN A SCENARIO WHERE ONE OR MORE OF

24  OUR DEFENSE WITNESSES WERE GOING TO BE DETAINED OR ARRESTED.

25  WE FELT AFTER THAT CONVERSATION THAT MR. COLE MIGHT HAVE SOME

1    INFORMATION THAT SOME OF THESE WITNESSES HAD SOME CRIMINAL

2    VULNERABILITY, AND WE ASKED FOR SPECIFICS.  BECAUSE WE TOLD

3    HIM THAT WE WERE ON TOP --

4            THE COURT:  MS. MORENO.

5            MS. MORENO:  I'M SORRY.

6            THE COURT:  AGAIN, ONLY BECAUSE WE'RE USING THE

7    TELEPHONE HERE, YOU'RE GOING TO HAVE TO SLOW DOWN AND SPEAK

8    AS LOUDLY AS YOU CAN AND ENUNCIATE.  SO WE MISSED A FEW

9    THINGS SO GO BACK.

10           MS. MORENO:  OKAY.  I'M NOT SURE IF I COULD BE HEARD

11   OR NOT.  BUT I'M TRYING TO UNDERSCORE THAT MR. COLE HAS

12   FAILED TO ADDRESS THE LAST COMMUNICATION HE HAD WITH DEFENSE

13   COUNSEL ON OCTOBER THE 12TH, WHICH BASICALLY HAD HIM

14   INDICATING TO US THAT MORE THAN ONE OF OUR WITNESSES COULD BE

15   CRIMINALLY VULNERABLE.  AND I'M QUOTING HIM, THAT SOME OF THE

16   WITNESSES HAVE LIABILITY AND THEY SHOULD GET THEIR OWN

17   LAWYER.

18           HE FURTHER SAID THAT IF THEY TESTIFIED IN THEIR

19   DEPOSITION CONSISTENT WITH THEIR PROFFERED TESTIMONY, THEY

20   WOULDN'T BE TELLING THE TRUTH.  AND WHILE ON THAT DAY, ON

21   OCTOBER THE 12TH, HE SAID THERE WAS NO WARRANT OR SECRET

22   INDICTMENT OUT THERE, HE WAS NOT GOING TO GUARANTY WHAT WOULD

23   HAPPEN ONCE THE WITNESSES WERE IN DJIBOUTI.

24           IS THAT CLEAR?

25           MR. DRATEL:  ALSO --

1        THE COURT:  HOLD ON.  MS. MORENO.

2        MR. DRATEL:  -- MS. MORENO WAS IN THE PROCESS OF

3   EXPANDING ON THAT WHEN --

4        THE COURT:  IS THIS MR. DURKIN?

5        MR. DRATEL:  -- WHEN YOU HAD TO ASK HER TO SLOW

6   DOWN.

7        ONE OF THE OTHER THINGS IS THAT WE DID ASK THE

8   GOVERNMENT IN WRITING AFTER THE CONVERSATION FOR INFORMATION

9   THAT -- THAT WOULD PUT THE NEGOTIATIONS IN A DIFFERENT

10  FRAMEWORK IN THIS SENSE.  WE DID NOT WANT TO TRAVEL HALFWAY

11  AROUND THE WORLD, WE DID NOT WANT -- AS LAWYERS, WE DID NOT

12  WANT TO BE PARTIES TO A SITUATION IN WHICH THE GOVERNMENT IS

13  CLAIMING THAT THESE WITNESSES ARE ALL GOING TO LIE.

14        IF THEY CAN DEMONSTRATE THAT NOW, WHY BOTHER TO GO.

15  IF THIS IS ALL --

16        THE REPORTER:  I'M SORRY.  WAIT, WAIT, WAIT, WAIT.

17        THE COURT:  MR. DRATEL.  MR. DRATEL.  MR. DRATEL.

18  MR. DRATEL.

19        THE REPORTER:  I CAN'T GET IT.

20        THE COURT:  MR. DRATEL.  MR. DRATEL, STOP.

21        MR. DRATEL:  OKAY.

22        THE COURT:  LET ME CAUTION EVERYONE WHO IS ON THE

23  TELEPHONE THAT YOU'RE ON THE TELEPHONE.  AND WHEN YOU START

24  SPEAKING AT THE CYCLIC RATE, PARTICULARLY SINCE YOU'RE ON THE

25  PHONE, AND WE'RE USING A SOUND SYSTEM HERE IN THE COURT THAT

1    WE MAY NOT BE ABLE TO CATCH EVERY WORD THAT YOU'RE SAYING IF

2    YOU'RE GOING TO SPEAK FAST.

3           SO IF YOU WANT US TO GET THIS RECORD AND GET IT AS

4    ACCURATE AS POSSIBLE, YOU'RE GOING TO HAVE TO SLOW DOWN.  I

5    KNOW YOU'RE EXCITED, BUT SLOW DOWN.

6           MR. DRATEL:  THANK YOU, YOUR HONOR.  I APOLOGIZE.

7           THE COURT:  BACK UP.

8           MR. DRATEL:  I'LL TRY AGAIN.

9           THAT WE DID NOT WANT TO PROCEED WITH THESE

10   DEPOSITIONS HALFWAY AROUND THE WORLD AND PUT EVERYBODY AT THE

11   INCONVENIENCE OF MAKING THIS TRIP IF THE GOVERNMENT COULD

12   DEMONSTRATE IN ADVANCE THAT THESE WITNESSES WERE LYING SO

13   MUCH THAT THE GOVERNMENT IS SO CONVINCED THAT THEY ARE LYING

14   THAT THEY ARE UNWILLING TO GIVE THEM SAFE PASSAGE, EVEN JUST

15   TO COME AND GO FROM DJIBOUTI.

16          WE SAID, WELL, LET US KNOW IF THAT'S THE CASE.  IF

17   YOU HAVE SOMETHING THAT IS SO COMPELLING, WE DON'T WANT TO

18   JUST GO THERE AND PUT ON WITNESSES WHO YOU HAVE CONCLUSIVE

19   EVIDENCE ARE LYING.  WE THINK THEY ARE TELLING THE TRUTH.  WE

20   ARE OPERATING IN GOOD FAITH HERE.  THE GOVERNMENT DECLINED.

21   THAT'S THEIR PREROGATIVE.  THEY DECLINED.  BUT -- AND THAT'S

22   WHAT MS. MORENO IS ALSO SAYING, WHICH I THINK SHE DID NOT ADD

23   WHEN SHE REPEATED HER PRESENTATION.

24          I ALSO JUST WANT TO RESPOND TO MR. COLE IN THREE

25   RESPECTS.  ONE IS THAT THE SAFE PASSAGE LETTER THAT I

1    PROVIDED WAS IN A TERRORISM CASE.  IT WAS A NARCOTERRORISM

2    CASE INVOLVING THE COLOMBIAN FARC, THE COLOMBIAN

3    REVOLUTIONARY ORGANIZATION.  NUMBER TWO, THERE IS NO

4    DIFFERENT CONSTITUTION FOR TERRORISM CASES THAN THERE IS FOR

5    OTHER CASES.  AND, THIRD, IS THAT, IN TERMS OF THE IMMUNITY

6    TEST, WE'RE NOT ASKING FOR SOMETHING AS BLANKET AS IMMUNITY.

7    WE ARE ASKING FOR A VERY SMALL SUBSET OF THAT.

8         AND IF WHAT THE GOVERNMENT IS TELLING US IS THAT

9    THEY DON'T HAVE THE AUTHORITY IN THIS CASE, IT'S SOME

10   DECISION MADE BY SOMEONE ELSE SOMEWHERE, THEN LET US KNOW

11   THAT THAT'S WHAT IT IS AND WE OUGHT TO ADDRESS THAT.  IT'S

12   NOT A QUESTION OF WHAT IS RIGHT IN THIS CASE AND WHAT

13   DEFENDANTS ARE ENTITLED TO, BUT RATHER IT'S SOME OTHER -- AN

14   AGENCY OR SOME OTHER PART OF THE GOVERNMENT THAT'S MAKING A

15   DECISION THAT'S AFFECTING OUR CLIENTS' RIGHTS.  THAT'S WHAT

16   WE THINK IS NOT A REASON NOT TO GRANT SAFE PASSAGE.

17        THE COURT:  GO AHEAD, MR. COLE.

18        MR. COLE:  YES, YOUR HONOR.

19        FIRST, I WANT TO SAY THAT MR. DRATEL ENDED ABOUT

20   TALKING ABOUT WHAT THE DEFENSE IS ENTITLED TO.  THE

21   GOVERNMENT DISAGREES THAT THEY ARE ENTITLED TO ANYTHING.

22   THERE HAS BEEN NO SHOWING UNDER THE LAW THAT THEY ARE

23   ENTITLED TO UNILATERALLY REQUIRE THE UNITED STATES TO PROVIDE

24   SAFE PASSAGE.

25        SECONDLY, THE CONVERSATION THAT MS. MORENO REFERRED

1    TO, I WANT TO PUT THAT IN CONTEXT JUST TO MAKE SURE THE

2    RECORD IS CLEAR.  THE UNITED STATES WAS MINDING ITS OWN

3    BUSINESS.  I WAS SITTING IN MY OFFICE.  I DID NOT REACH OUT

4    TO MS. MORENO OR MR. DURKIN.  THEY REACHED OUT TO ME AND

5    BEGAN PRESSING ME AS TO WHETHER I WOULD GIVE SAFE PASSAGE,

6    AND IF NOT, WHY.  WE'VE HAD A VERY COOPERATIVE RELATIONSHIP

7    IN THIS CASE.  I'VE RESPECTED THEM AND ENJOYED OUR

8    CONVERSATIONS.

9         I PROBABLY SHOULD NEVER HAVE ENGAGED IN THAT

10   CONVERSATION AT ALL.  I THOUGHT I COULD SPEAK WITH THEM

11   SOMEWHAT FREELY ABOUT MY CONCERNS ABOUT THEIR WITNESSES.  I

12   NEVER SPOKE TO THEIR WITNESSES OR TO THEIR WITNESSES'

13   REPRESENTATIVES AND HAD NO INTENTION OF DOING SO.

14        NOW THEY ARE SUGGESTING THAT BECAUSE THEY CALLED ME

15   AND ASKED ME WHY I WOULDN'T GRANT SAFE PASSAGE THAT I WAS

16   THREATENING THEIR WITNESSES.  AND I TAKE EXCEPTION TO THAT.

17   I WAS RESPONDING TO DEFENSE COUNSEL'S CALL TO ME.  I DID NOT

18   REACH OUT IN ANY AFFIRMATIVE WAY TO STIR THE POT ON THIS

19   ISSUE WHATSOEVER.  AND, OF COURSE, I'M NOT GOING TO GO

20   FURTHER AND PROVIDE WORK PRODUCT OR MENTAL IMPRESSIONS AS TO

21   HOW WE MAY CROSS-EXAMINE THEIR WITNESSES WHEN WE SHOW UP AT A

22   DEPOSITION.  WE HAVE NO INTENTION OF DOING THAT, OBVIOUSLY.

23        AND, FINALLY, THE ISSUE OF WHETHER OR NOT THEY WOULD

24   LIE OR NOT IS IRRELEVANT BECAUSE THE SAFE PASSAGE THAT WAS

25   REQUESTED BY THE DEFENSE HAD A CARVE-OUT FOR PERJURY ANYWAYS.

1    AND SO THIS IS NOT ABOUT WHETHER THESE PEOPLE ARE GOING TO

2    LIE AT A DEPOSITION OR NOT.  THIS HAS NOTHING TO DO WITH

3    THAT.  BECAUSE THE VERY LETTER OF SAFE PASSAGE THAT THE

4    DEFENSE REQUESTED CARVED OUT PERJURY AND ALLOWED THE WITNESS

5    TO BE ARRESTED FOR THAT PURPOSE.

6          THIS IS ABOUT THE NOTION OF PROVIDING ASSURANCES

7    FROM THE OUTSET REGARDLESS, BEFORE THEY EVEN TESTIFY, THAT

8    THEY CAN COME IN AND EXIT WITHOUT -- WITH A 100 PERCENT

9    GUARANTY THAT THE UNITED STATES WOULD NOT MAKE AN ARREST.

10   AND AS I'VE STATED, WE ARE NOT IN A POSITION TO PROVIDE THAT

11   ASSURANCE, AND I HAVE NOT SEEN THE CASE LAW THAT COMPELS IT.

12          THE COURT:  ALL RIGHT.  THANK YOU.

13          LET ME OFFER MY IMPRESSIONS ON THIS.  MY

14   RECOLLECTION IS AT THE VERY FIRST MEETING THAT WE HAD AND I

15   BELIEVE THE ONLY ONE THAT WE'VE HAD WHERE ALL COUNSEL WERE

16   PRESENT WAS BACK IN AUGUST.  IT WAS SHORTLY AFTER A HEARING

17   THAT YOU HAD BEFORE JUDGE MILLER.  THE ONLY ATTORNEY NOT

18   PRESENT, AS I RECALL, IS MR. DURKIN.  EVERYONE ELSE WAS

19   PRESENT AND WE WERE IN MY OFFICE.

20          I DO RECALL THAT SAFE PASSAGE WAS ADDRESSED, MORE OR

21   LESS IN PASSING.  AND MY RECOLLECTION IS MORE IN LINE WITH

22   WHAT MR. COLE HAS SET FORTH IN HIS DECLARATION, AND THAT IS

23   WHAT WOULD IT TAKE TO HAVE THE SEVEN OR -- THEN, AT THAT

24   TIME, EIGHT WITNESSES COME TO THE UNITED STATES TO TESTIFY?

25   BASICALLY, GIVE US YOUR WISH LIST.

1          BECAUSE I THINK WE ALL RECOGNIZE IS THAT LIVE

2     TESTIMONY IN FRONT OF A JURY IS BETTER THAN A VIDEOTAPED

3     DEPOSITION.  I THINK WE WOULD ALL AGREE TO THAT.  AND SO

4     HAVING THOSE WITNESSES APPEAR IN A COURT IN THE UNITED STATES

5     TO TESTIFY ON BEHALF OF THE DEFENDANTS WOULD BE BETTER, AND

6     SO SAFE PASSAGE WAS MENTIONED IN THAT CONTEXT OF COMING TO

7     THE UNITED STATES.

8          THAT'S THE ONLY TIME THAT I RECALL, WITH THE

9     EXCEPTION OF JUST LAST WEEK, AND PERHAPS THE WEEK BEFORE THAT

10    IN ONE OF OUR TELEPHONIC STATUS CALLS, WHERE SAFE PASSAGE WAS

11    EVEN RAISED.  THERE CERTAINLY WASN'T ANY MENTION OF IT TO ME

12    THAT THE WITNESSES -- THAT AS A CONDITION OF PRECEDENT TO THE

13    WITNESSES APPEARING ANYWHERE FOR DEPOSITION OUTSIDE OF THE

14    UNITED STATES, THAT SAFE PASSAGE HAD TO BE GUARANTEED OR

15    PROMISED BY THE UNITED STATES, GETTING TO AND THEN FROM THE

16    DEPOSITION UNMOLESTED BY ANY GOVERNMENT, OR AT LEAST THE

17    UNITED STATES, THAT THERE WOULD BE NO ARREST, NO PROVISIONAL

18    ARREST OR ANYTHING OF THE SORT.

19          I SIMPLY DON'T RECALL MR. COLE OR MS. HAN IN THE

20    CONTEXT OF REPRESENTING THE UNITED STATES, AT LEAST IN MY

21    PRESENCE, GUARANTEEING OR PROMISING SAFE PASSAGE.  THAT'S

22    POINT NO. 1.

23          POINT NO. 2 IS IF THERE WERE CONVERSATIONS,

24    COMMUNICATIONS OUTSIDE OF THESE SEVERAL STATUS HEARINGS AND

25    CONFERENCES THAT WE'VE HELD, THEN I MUST RELY UPON WHAT THE

1    ATTORNEYS ARE TELLING ME.  IF ON THE ONE HAND THERE WAS AN

2    EXPLICIT PROMISE OR A GUARANTY OF SAFE PASSAGE, I WOULD

3    CONSIDER THAT PROMISE MADE BY THE UNITED STATES MUCH

4    DIFFERENTLY THAN IF THERE WASN'T.

5         I'VE READ THE CASES THAT HAVE BEEN CITED BY BOTH

6    SIDES.  MOST NOTABLY THE SANTTINI CASE OUT OF THE THIRD

7    CIRCUIT.  AND WE HAVE WHAT THE DEFENSE HAVE CITED AS THE

8    PUCHI CASE, OR PUCHI, OUT OF THIS CIRCUIT.  I DON'T FIND THE

9    PUCHI DECISION TO BE VERY HELPFUL, GIVEN THAT THE DISCUSSION

10   OF SAFE PASSAGE REALLY WASN'T FULLY FLESHED OUT AS IT WAS IN

11   THE SANTTINI CASE.

12        SANTTINI IS A THIRD CIRCUIT CASE AND ACCORDINGLY NOT

13   BINDING PRECEDENT UPON THIS COURT, BUT IT IS INSTRUCTIVE I

14   BELIEVE.  AND IN THAT CASE, CLEARLY THE COURT THERE, THE

15   THIRD CIRCUIT CLEARLY SAID THAT THE COURT EXCEEDS ITS

16   AUTHORITY IN ORDERING THE EXECUTIVE BRANCH TO PROVIDE SAFE

17   PASSAGE.

18        TRYING TO DIG A LITTLE DEEPER INTO THE CASE LAW, I

19   FOUND A CASE, WE FOUND A CASE, IT'S A DISTRICT COURT CASE OUT

20   OF NEVADA.  IT'S A 2010 CASE.  IT'S UNITED STATES VS. MCKEE.

21   AND IT CAN BE FOUND -- AND IT'S A NONREPORTED CASE.  IT CAN

22   BE FOUND AT 2010 WESTLAW 1849330.  THAT CASE DISCUSSED

23   SANTTINI AND TRIED -- AND DISTINGUISHED SANTTINI, ON ONE

24   GROUND THAT IT WASN'T BINDING PRECEDENT ON ANY COURT IN THIS

25   DISTRICT OR THE CIRCUIT, BUT IT RECOGNIZED THE COURT'S LACK

1   OF AUTHORITY TO ORDER THE GOVERNMENT TO PROVIDE ESSENTIALLY

2   SAFE PASSAGE.

3         HOWEVER, IN THIS CASE, IN THE MCKEE CASE, THE COURT

4   WENT THE OTHER WAY AND FOUND THAT AN ORDER THAT THEY HAD

5   ISSUED PREVIOUSLY THAT THE DEFENSE -- A DEFENSE WITNESS WAS

6   NOT TO BE ARRESTED AFTER SHE TESTIFIED ON BEHALF OF THE

7   DEFENDANT; AND, OF COURSE, THE UNITED STATES DID EXACTLY

8   THAT.  AND THE COURT FOUND THAT THAT WAS IN VIOLATION OF ITS

9   ORDER.  DIDN'T DIRECTLY ADDRESS SAFE PASSAGE, BUT IT DID CITE

10  THE SANTTINI CASE.

11        SO GETTING BACK TO MY SECOND POINT ABOUT PROMISES OR

12  GUARANTEES.  SINCE THERE WAS NONE MADE IN MY PRESENCE BY THE

13  UNITED STATES, I HAVE TO RELY UPON THE INFORMATION PROVIDED

14  TO ME BY THE ATTORNEYS.  MR. COLE HAS STATED IN A DECLARATION

15  THAT NO PROMISES OR GUARANTEES OF ANY KIND WERE MADE ABOUT

16  SAFE PASSAGE, NOR HAVE I HEARD FROM THE DEFENSE THAT SUCH A

17  GUARANTY OR PROMISE WAS MADE BY MR. COLE IN ANY OF THE

18  PLEADINGS THAT WERE FILED OR EVEN IN ARGUMENT TODAY, BUT

19  MERELY THAT THERE WAS DISCUSSIONS ABOUT IT.

20        AND SO I'M NOT GOING TO AT THIS POINT ORDER THAT THE

21  GOVERNMENT PROVIDE SAFE PASSAGE.  ONE, I DON'T BELIEVE -- I

22  FIND THE SANTTINI DECISION TO BE HELPFUL AND INSTRUCTIVE AND

23  I DO NOT BELIEVE THAT THIS COURT HAS THE AUTHORITY TO

24  AUTHORIZE OR, EXCUSE ME, TO ORDER THE UNITED STATES, THE

25  EXECUTIVE BRANCH TO PROVIDE SAFE PASSAGE TO ANY OF THE

1    DEFENSE WITNESSES.  AND SO THAT WILL BE THE ORDER IN THIS

2    CASE.  I'M NOT GOING TO -- I'M NOT GOING TO ORDER THE UNITED

3    STATES TO PROVIDE SAFE PASSAGE.  I BELIEVE AN ADEQUATE RECORD

4    HAS BEEN MADE.  THIS IS SUBJECT TO REVIEW BY JUDGE MILLER.

5            NOW, I WOULD HIGHLY RECOMMEND THAT IF THE DEFENSE

6    INTENDS TO SEEK REVIEW OF THIS DECISION, THAT IT DO SO

7    IMMEDIATELY.  I CAN SEE ON THE LAPTOP IN FRONT OF ME THAT A

8    TRANSCRIPT WILL BE AVAILABLE HERE ALMOST IMMEDIATELY UPON THE

9    CONCLUSION OF THIS HEARING, SUBJECT TO SOME CLEANING UP OF

10   THE TRANSCRIPT; BUT IT WOULD BE AVAILABLE ON SHORT ORDER.

11   I'M SURE JUDGE MILLER WILL ENTERTAIN THIS -- ANY REVIEW IF

12   SOUGHT -- ON AN EXPEDITED BASIS, UNDERSTANDING THE URGENCY OF

13   THE MATTER.

14           I DO BELIEVE THAT THE WITNESSES, DEFENSE WITNESSES

15   IN THIS CASE OR ANY CASE, PARTICULARLY IN A SITUATION LIKE

16   THIS, WHO VOLUNTARILY DECIDE THAT THEY WOULD LIKE TO TESTIFY,

17   WOULD DO SO SUBJECT TO WHATEVER RISK MAY BE OUT THERE THAT

18   THEY MAY BE ARRESTED EITHER BEFORE OR AFTER THEIR TESTIMONY.

19   AND THAT'S TRUE IF THE CASE WAS BEING HELD HERE, OR THE TRIAL

20   WAS BEING HELD HERE IN THE UNITED STATES AND THESE WITNESSES

21   DECIDED TO VOLUNTARILY APPEAR HERE.

22           THIS DISTRICT, BECAUSE IT IS ON THE BORDER, HAS MANY

23   PROSECUTIONS OF DRUG-RELATED CASES WHERE WITNESSES ROUTINELY

24   ENTER THE UNITED STATES TO COME TO TESTIFY AND DO SO WITHOUT

25   ANY GUARANTEES ONE WAY OR THE OTHER OF SAFE PASSAGE.  SIMPLY

1   BECAUSE SAFE PASSAGE WAS CONSIDERED AND GRANTED IN A CASE IN

2   ANOTHER DISTRICT HERE IN THE PAST, WITHOUT KNOWING MORE ABOUT

3   THAT CASE AND CERTAINLY AGREEING WITH THE DEFENSE THAT IT'S

4   THE SAME CONSTITUTION THAT APPLIES WHETHER IT'S A

5   NARCOTERRORISM CASE OR TERRORISM ON SOME OTHER LEVEL.

6          I THINK IT'S -- IT'S INSTRUCTIVE THAT IT OCCURRED

7   THERE, BUT IT'S NOT BINDING THAT IT OCCURS, IT SHOULD OCCUR

8   HERE.  CIRCUMSTANCES MAY BE ENTIRELY DIFFERENT AND NONE OF

9   THOSE CIRCUMSTANCES HAVE BEEN PROVIDED TO THE COURT.  BUT,

10  NEVERTHELESS, EVEN IF THE CIRCUMSTANCES WERE IDENTICAL, THE

11  FACTS WERE IDENTICAL, THIS COURT DOES NOT BELIEVE IT HAS THE

12  AUTHORITY TO ORDER THE UNITED STATES TO OFFER A LETTER OF

13  SAFE PASSAGE TO ANY WITNESS, WHETHER THAT WITNESS IS AN

14  UNINDICTED CO-CONSPIRATOR AND MAY BE MORE CRIMINALLY

15  VULNERABLE THAN SOME OF THE OTHER WITNESSES OR NOT.

16          AND SO THE ORDER IS THAT THERE WILL BE NO ORDER FROM

17  THIS COURT ORDERING THE UNITED STATES TO PROVIDE SAFE

18  PASSAGE, AND SO THE DEFENSE MOTION TO DO SO IS HEREBY DENIED.

19  I'VE GIVEN YOU THE CITES TO THE CASE THAT I HAVE READ AND

20  DON'T FIND IT PARTICULARLY HELPFUL, AND THAT'S THE MCKEE

21  CASE.  I DON'T FIND THE PUCHI CASE TO BE PARTICULARLY

22  HELPFUL, BUT I AM INFORMED BY THE SANTTINI CASE.

23          ALL RIGHT.  IS THERE ANYTHING ELSE BEFORE WE SIGN

24  OFF FOR TODAY?

25          MR. DURKIN:  JUDGE, THERE IS ONE MATTER THAT I HAVE.

1    I HAVE FILED AN AFFIDAVIT OF MY CLIENT WAIVING HIS PRESENCE.

2    I HAVE HAD SOME SCHEDULING ISSUES AND OTHER ISSUES THAT ARE

3    GOING TO MOST LIKELY MAKE IT IMPOSSIBLE FOR ME TO GO, AND I'M

4    LIKELY TO FILE AN AMENDED AFFIDAVIT OF MY CLIENT.  I'VE

5    ALREADY SPOKE TO HIM ABOUT THIS AND HE'S AGREEABLE.

6            I'D LIKE TO FILE AN AMENDED AFFIDAVIT, SIMILAR TO

7    THE ONE MS. MORENO FILED, WAIVING MY PRESENCE AS WELL AND

8    HAVING SOMEONE ELSE STAND IN.

9            THE COURT:  AND WHO IS THIS SPEAKING?

10           MR. DURKIN:  THAT'S MR. DURKIN.

11           THE COURT:  ALL RIGHT, MR. DURKIN.

12           MS. MORENO:  AND, YOUR HONOR, I WILL ALSO, BECAUSE

13   OF SCHEDULING ISSUES, NOT BE ABLE TO ATTEND THE DEPOSITIONS.

14   MY CLIENT WAS INFORMED OF THAT, OF THE POTENTIAL OF THAT A

15   MONTH, FOUR WEEKS OR SO AGO.  AND BECAUSE OF THE LATE DATE

16   AND THE TENTATIVE POSSIBILITY THAT THIS TRIAL MATTER WILL

17   RESOLVE, I WILL NOT BE ABLE TO ATTEND.  AND MY CLIENT HAS

18   BEEN SO INFORMED AND HE, TOO, HAS EXECUTED AN AFFIDAVIT.

19           IF THE COURT FEELS I NEED TO SUBMIT THAT AFFIDAVIT

20   IN ADDITION TO THE FIRST ONE I SUBMITTED, I CAN DO THAT.  BUT

21   I'M STATING THAT FOR THE RECORD TODAY.

22           THE COURT:  WELL, I WOULD APPRECIATE HAVING THOSE

23   AFFIDAVITS AND DECLARATIONS, AMENDED DECLARATIONS ON FILE

24   QUICKLY IF THEY HAVEN'T ALREADY BEEN FILED SO I CAN REVIEW

25   THEM.

1          MS. MORENO:  CERTAINLY.

2          THE COURT:  ALL RIGHT.  ONE LAST ISSUE THAT I WOULD

3    LIKE TO BRING UP.  IT'S NOT AN ISSUE AT ALL, BUT JUST TRYING

4    TO REVISIT SOMETHING THAT WE DISCUSSED SEVERAL WEEKS AGO, AND

5    THAT IS THE KIND OF OATH THAT WOULD BE GIVEN TO THESE

6    WITNESSES AND WHETHER WE NEED TO MODIFY THE OATH AT ALL.  I'M

7    NOT ASKING THAT I HAVE THE ANSWER TO THAT RIGHT NOW, BUT THAT

8    IS SOMETHING THAT I WANT TO MAKE SURE THAT WE HAVE LOCKED ON

9    AND HAVE CONSIDERED AND RESOLVED.

10          AND HAVE WE, MR. COLE?

11          MR. COLE:  I DON'T THINK WE HAVE, YOUR HONOR.  THE

12    UNITED STATES HAS BEEN, TO THIS POINT, ASSUMING THAT THE

13    WITNESSES WOULD JUST TAKE THE STANDARD U.S. OATH UNDER THE

14    CIRCUMSTANCES, SINCE YOU WOULD BE THERE TO ADMINISTER IT.

15    HOWEVER, I KNOW EARLY ON THERE WAS REFERENCE BY MS. MORENO OR

16    OTHERS TO PERHAPS AN ADDITIONAL, SUPPLEMENTAL OATH.

17          WE FRANKLY -- AT LEAST THE U.S. HAS FRANKLY LET THAT

18    DISCUSSION LAPSE.  AND I'D BE HAPPY TO REACH BACK OUT TO THE

19    DEFENSE TO SEE IF WE CAN EXPLORE WHETHER THERE IS A NEED FOR

20    AN ADDITIONAL OATH OR NOT.

21          THE COURT:  I WOULD APPRECIATE THAT.

22          GO AHEAD.

23          MR. DRATEL:  YOUR HONOR, THIS IS MR. DRATEL.

24          I THINK THE RULE PRESCRIBES THAT THE OATH BE THAT

25    WHICH IS ACCOMMODATING OR APPROPRIATE IN THE JURISDICTION

1    THAT THE DEPOSITIONS ARE BEING TAKEN.  HOWEVER, I DO AGREE

2    WITH MR. COLE, JUST IN THE SENSE THAT SINCE YOUR HONOR IS

3    PRESIDING THAT PERHAPS THE ORDINARY OATH IS SUFFICIENT,

4    ALTHOUGH WE WILL LOOK INTO THAT AS WELL.

5          ALSO, THE QUESTION OF OBVIOUSLY WHAT OATH

6    COMMUNICATES TO THE WITNESS APPROPRIATELY THE WITNESS'

7    OBLIGATION, THAT'S WHAT'S MOST IMPORTANT TO ME.  IN OTHER

8    WORDS, THE WITNESS UNDERSTANDS, A, THAT HE'S BOUND TO TELL

9    THE TRUTH, AND, B, THAT THERE ARE POTENTIAL PENALTIES IF THEY

10   DON'T TELL THE TRUTH; SO TO ME, THAT'S THE MOST IMPORTANT.

11         WHETHER IT CONFORMS WITH THE ORDINARY OATH OR HAS

12   SOME OTHER ASPECT TO IT THAT'S CULTURALLY OR GEOGRAPHICALLY

13   DIFFERENT IN TERMS OF COMMUNICATING THAT, I THINK THOSE ARE

14   THE TWO IMPORTANT THINGS THAT ARE IN ANY OATH, SO WE'LL WORK

15   ON THAT TOGETHER.  I DON'T PERCEIVE THAT TO BE A PROBLEM.

16         THE COURT:  ALL RIGHT.  VERY GOOD.

17         ALL RIGHT.  NEXT WEEK ON FRIDAY IS WHEN WE'RE

18   DEPARTING, ASSUMING THE SCHEDULE REMAINS AS IS.  I WOULD

19   RECOMMEND THAT WE HAVE ONE LAST STATUS CALL A WEEK FROM TODAY

20   AT THE USUAL TIME, 7:00 A.M., JUST TO MAKE SURE THAT

21   EVERYTHING IS -- ALL SYSTEMS ARE GO.

22         MS. FONTIER:  YOUR HONOR, WE -- I AT LEAST WON'T BE

23   AVAILABLE.  I DON'T BELIEVE MR. GHAPPOUR WILL BE EITHER, AS

24   WE'RE GOING TO BE TRAVELING TO DJIBOUTI EARLIER THAN THE

25   GOVERNMENT, OBVIOUSLY.

1          MR. DRATEL:  I'LL STILL BE HERE, YOUR HONOR.  THIS

2     IS MR. DRATEL.

3          THE COURT:  OKAY.  ALL RIGHT.  WELL, LET'S --

4     WHOEVER CAN MAKE THE PHONE CALL, THAT'S WHO WE'LL HAVE ON THE

5     LINE.

6          MR. GHAPPOUR:  YOUR HONOR.  I'M SORRY, THIS IS

7     MR. GHAPPOUR.

8          THE COURT:  YES.

9          MR. GHAPPOUR:  I JUST HAVE ONE QUESTION.

10          WITH RESPECT TO ANY MOTION BY THE DEFENSE TO TAKE

11     THE DEPOSITION OF MR. SHIDANE OR OTHER WITNESSES IN SOMALIA,

12     ON THE BASIS OF YOUR RULING TODAY, IS THAT SOMETHING TO BE

13     BROUGHT TO YOUR ATTENTION OR THE ATTENTION OF JUDGE MILLER?

14          THE COURT:  I BELIEVE YOU'RE GOING TO HAVE TO BRING

15     THAT TO JUDGE MILLER.  JUDGE MILLER HAS RULED THAT

16     DEPOSITIONS IN SOMALIA HAS BEEN DENIED.  I MEAN, HE'S DENIED

17     THAT MOTION, AND I DON'T SEE THAT I HAVE THE AUTHORITY TO

18     REVERSE A DISTRICT JUDGE'S DECISION ON THAT.

19          I DO KNOW THAT HE'S REFERRED THE MATTER TO ME TO

20     FIND ALTERNATIVE SOLUTIONS PERHAPS, BUT WITH RESPECT TO A

21     DEPOSITION THAT OCCURS IN SOMALIA, I BELIEVE THAT'S SOMETHING

22     YOU'LL HAVE TO BRING BACK BEFORE JUDGE MILLER.

23          MR. GHAPPOUR:  THANK YOU, YOUR HONOR.

24          THE COURT:  ALL RIGHT.  MR. COLE.

25          MR. COLE:  YEAH.  JUST ONE LAST QUESTION.

1          I WANTED TO SEE IF WE COULD CONFIRM TODAY FOR

2    EVERYBODY WITH THE DEFENSE IF WE ARE -- IF THE ROOM FOR THE

3    DEPOSITION ITSELF HAS BEEN SECURED?  I BELIEVE IT'S GOING TO

4    BE AT THE BAVARIA HOTEL WHERE THE DEFENSE MADE ARRANGEMENTS,

5    BUT I JUST WANTED TO CONFIRM THAT.  WE CAN, OF COURSE,

6    CONFIRM IT ON THE 5TH, BUT I THINK IT WOULD BE GOOD FOR THE

7    U.S. TO KNOW SO THAT WE CAN LET PEOPLE THERE OVERSEAS KNOW

8    WHERE THE ACTUAL LOCATION IS GOING TO BE, WHERE THE

9    DEPOSITIONS THEMSELVES ARE GOING TO HAPPEN.

10          MR. GHAPPOUR:  YOUR HONOR, I'VE BEEN IN

11   CORRESPONDENCE WITH THE BAVARIA HOTEL, AND THEY HAVE YET TO

12   GET BACK TO ME AS TO WHETHER -- INITIALLY THEY AFFIRMED THAT

13   WE HAD A RESERVATION FOR THE MEETING ROOM, BUT THEY HAVE YET

14   TO GET BACK TO ME AS FAR AS PAYMENT AND OTHER ISSUES, SO I

15   CANNOT CONFIRM THAT AT THE MOMENT.

16          I ALSO HAVE -- THE OTHER PROBLEM IS THAT EVERYONE IN

17   DJIBOUTI SPEAKS FRENCH.  I DON'T.  SO I'VE GOT AN INTERN

18   LOOKING INTO CALLING OTHER CONFERENCE AREAS IN DJIBOUTI AS A

19   BACKUP.  AND I BELIEVE THAT MS. FONTIER IS ALSO LOOKING INTO

20   THAT, TOO, AS A FRENCH SPEAKER.

21          THE COURT:  ALL RIGHT.  I WOULD ASK THAT THE DEFENSE

22   NOTIFY MR. COLE OR MS. HAN JUST AS QUICKLY AS YOU CAN ONCE A

23   DECISION AND CONFIRMATION OF THE LOCATION HAS BEEN REACHED.

24          ALL RIGHT.  ANYTHING ELSE?

25          MR. COLE:  NO, YOUR HONOR.  THANK YOU.

1          MS. FONTIER:  NO.  THANK YOU, YOUR HONOR.

2          THE COURT:  ALL RIGHT.  THAT'S ALL FOR TODAY.  THANK

3     YOU.

4          MR. DRATEL:  THANK YOU, YOUR HONOR.

5          (PROCEEDINGS CONCLUDED AT 7:40 A.M.)

6                            --OOO--

7              C E R T I F I C A T I O N

8          I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
      QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
9     STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND
      CORRECT TRANSCRIPT OF THE PROCEEDINGS HAD IN THE
10    AFOREMENTIONED CAUSE; THAT SAID TRANSCRIPT IS A TRUE AND
      CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE
11    FORMAT USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS
      OF THE UNITED STATES JUDICIAL CONFERENCE.

12

13             DATED:  OCTOBER 29, 2012, AT SAN DIEGO, CALIFORNIA.

14                            S/CAMERON P. KIRCHER
                              CAMERON P. KIRCHER

15

16

17

18

19

20

21

22

23

24

25