# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 10CR4246 JM |
|---|---|
| Plaintiff, | **ORDER DENYING OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING SAFE PASSAGE TO FARAH SHIDANE** |
| vs. | |
| BASAALY SAEED MOALIN, et al., | |
| Defendants. | |

Defendants Basaaly Saeed Moalin, Mohamed Mohamed Mohamud, Issa Doreh, and Ahmed Nasir Taalil Mohamud jointly move to reconsider Magistrate Judge William V. Gallo's October 29, 2012 Order Denying Defendants' Joint Motion for Order of Safe Passage ("Order"). (Ct. Dkt. 220). The Government opposes the joint motion. For the reasons set forth below, the court denies the motion to reconsider and rejects Defendants' objections to the Order.

## BACKGROUND

To place Defendants' motion for "safe passage" in context, the court notes that Defendants represent that Farah Shidane, an apparent citizen of Djibouti and current resident of Somalia, is a material defense witness who is anticipated to provide exculpatory testimony at the time of the Rule 15 depositions in Djibouti, Djibouti calendared for November 11-15, 2012.[1] Defendants anticipate that Mr. Shidane will testify, among other things, that he was a part of the local administration of the

---

[1] Somalia and the United States are not signatories to an extradition treaty.

1   Galgaduud region of Somalia, that he actively fought against al-Shabaab, and that the money he
2   received from Defendants was used for humanitarian purposes. (Motion at p.2:12-21). Mr. Shidane,
3   however, is also the "uncharged co-conspirator #1" in a terrorism offense as identified in the October
4   2010 Indictment, as well as subsequent indictments. (Ct. Dkt. 1).

5   Without submission of supporting admissible evidence, Defendants represent that Mr. Shidane
6   is unavailable to testify in the United States and that he will only appear at the time of the Djibouti
7   depositions if he is provided with "safe passage."[2] The Government declines to provide Mr. Shidane
8   with "safe passage." Before Magistrate Judge Gallo, Defendants moved to compel the Government
9   to issue Mr. Shidane "safe passage." On October 29, 2012 Magistrate Judge Gallo denied the motion
10  for safe passage noting, among other things, that the court lacked "the authority to order the executive
11  branch to provide safe passage to defense witnesses." (Order at p.2:24-25). Defendants object to the
12  Order.

### DISCUSSION

**Legal Standard**

Pursuant to 28 U.S.C. § 636(b)(1)(A), Defendants request that this court reconsider Judge Gallo's pretrial Order. This court may set aside or modify a Magistrate Judge's order only if found to be "clearly erroneous or contrary to law." 28 U.S.C. §636(b)(1)(A); Bhan v. NME Hospitals, Inc., 929 F.2d 1404, 1414 (9th Cir. 1991). While findings of fact are reviewed under the clearly erroneous standard of review, legal conclusions are reviewed de novo. See United States v. McConney, 728 F.2d 1195, 1200-01 (9th Cir. 1984).

**The Motion**

Defendants argue that the court should reconsider the Order because (1) the Government is contractually obligated to issue "safe passage to and from the depositions in Djibouti," (Motion at p.7:6), and (2) by analogy to compelled and judicial immunity cases, the Fifth Amendment due process clause and the Sixth Amendment right to compel compulsory process clause require the Government

---

[2] The court notes that Defendants do not define the term "safe passage." Presumably, Defendants request that the Government provide Mr. Shidane with a letter of "safe passage" indicating that his physical liberty would not be interfered with by the Government while Mr. Shidane attends the deposition in Djibouti.

1 to provide "safe passage." As set forth below, the court concludes that the Government is not under
2 any contractual obligation to afford Mr. Shidane "safe passage" and that it lacks the authority to
3 compel the Government to provide "safe passage" to Mr. Shidane.

The Contract Based Argument

Although not so articulated, Defendants rely on principles of contract law to argue that they entered into a valid agreement with the Government to provide "safe passage" to Mr. Shidane. The elements of a contract claim are (1) the existence and terms of the contract, (2) the plaintiff's performance or excuse for failing to perform, (3) the defendant's breach, and (4) plaintiff's damages. Amelco Electric v. City of Thousand Oaks, 27 Cal.4th 228, 243 (2002); Spinks v. Equity Residential Briarwood Apartments, 171 Cal.App.4th 1004, 1031 (2009). Defendants simply fail to establish that any contract existed between the parties. Defendants represent that the Government, at some point in time during the past several months, stated that "it was going to assist in ensuring that the depositions occurred as scheduled" and that safe passage could be sought if the witnesses "were willing to come to the United States." (Motion at pp. 7:17-8:1). The contractual argument is woefully inadequate because it fails to establish the existence of a contract (i.e. competent parties, mutual consent, consideration, essential terms, Cal.Civ. Code §1550), Defendants' performance, the Government's breach of the contract, and damages.[3] In the absence of a contract, Defendants' claims fail.

To the extent Defendants seek to establish a claim based upon a promissory estoppel theory, the argument fairs no better. The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." US Ecology, Inc. v. State of California, 129 Cal.App.4th 887, 901 (2005). Defendants simply fail to provide any evidence that the equitable doctrine of promissory estoppel should apply under the circumstances. Defendants fail to establish a clear and unambiguous promise to provide the

---

[3] The court further notes that there is no admissible evidence before the court that the parties entered into any agreement. The only evidence of an agreement consists of a self-serving letter drafted by Defendants indicating Mr. Cole represented that "he would seek safe passage for the witnesses if they were willing to come to the United States." (Motion at pp.7:27 - 8:1). Defendants provide no declaration to support their argument.

"safe passage" of any proposed deponent from Somalia to Djibouti, any detrimental or reasonable reliance on the alleged promise, and any injury from the failure to provide "safe passage" to Mr. Shidane.

In sum, the court rejects Defendants' argument that contract principles require the Government to provide "safe passage" to Mr. Shidane.

Authority of Court to Provide a Remedy

The court concludes that it lacks the authority to compel the executive branch to provide "safe passage" for a citizen of Djibouti to travel, for the purpose of a Rule 15 deposition, from Somalia to Djibouti, Djibouti and back again. Under the doctrine of separation of powers, each branch of government exercises exclusive authority over certain matters. I.N.S. v. Chadha, 462 U.S. 919, 951 (1983). The executive branch has "primacy in foreign policy matters." Zadvydas v. Davis, 533 U.S. 678 (2001). Such deference is particularly appropriate in light of what all parties describe as an unstable political situation in Somali and the existence of terrorism elements in the region.

In United States v. Santtini, 963 F.2d 585 (3rd Cir. 1992), the Third Circuit concluded that the district court lacked authority to order executive branch officials to refrain from arresting Boris Conde in Costa Rica pending his Rule 15 deposition. In Santtini, the Government did not oppose the Rule 15 deposition of Conde provided that the deposition be conducted at the United States Embassy in Costa Rica. Conde agreed to travel from Colombia to Costa Rica, a signatory to an extradition treaty with the United States, for his Rule 15 deposition provided that the Government not arrest him on an outstanding warrant while in Costa Rica. The district court then ordered executive branch officials to refrain from arresting Conde while he was in Costa Rica. The district court concluded that the interests of the defendants in the proposed exculpatory evidence to be provided by Conde outweighed the Government's interests in arresting Conde. The Government appealed.

In reversing the district court's judicial immunity remedy, the Third Circuit noted that the district court did not cite any "statute or case law in support of its asserted authority to so order the government" to refrain from arresting Conde. Id. at 595. The Third Circuit also noted separation of powers problems arising from any order compelling the government to refrain from arresting Conde, id. at 598, and that the government has a compelling interest in arresting and prosecuting individuals

for their crimes as well as an "institutional interest in maintaining its power to arrest fugitives." Id. at 599. Moreover, the Third Circuit concluded that the district court erred in balancing a defendant's need for testimony against the government's interests in prosecuting claims and apprehending fugitives. "We conclude that where a compelling government interest exists, a court simply may not invoke its 'inherent' authority to ensure that all witnesses whose testimony might exculpate the defendants testify at trial." Id.

Defendants also argue, by analogy to compelled use immunity legal standards, that the court has inherent authority to fashion a judicial immunity remedy to permit Mr. Shidane to travel to Djibouti. For example, Defendants rely on United States v. Herman, 589 F.2d 1191 (3rd Cir. 1978), for the proposition that the court has inherent authority to fashion a judicial immunity remedy to permit Mr. Shidane to travel to Djibouti. Id. at 1204 ("a case might be made that the court has inherent authority to effectuate the defendant's compulsory process right by conferring a judicially fashioned immunity upon a witness whose testimony is essential to an effective defense"). The court rejects these arguments. In the Ninth Circuit, a defendant may compel immunity under two circumstances: where "either (a) the prosecution intentionally caused the defense witness to invoke the Fifth Amendment right against self-incrimination with the purpose of distorting the fact-finding process; or (b) the prosecution granted immunity to a government witness in order to obtain that witness's testimony, but denied immunity to a defense witness whose testimony would have directly contradicted that of the government witness, with the effect of so distorting the fact-finding process that the defendant was denied his due process right to a fundamentally fair trial." United States v. Straub, 538 F.3d 1147, 1162 (9th Cir. 2008). Here, neither prong of the Straub test is satisfied. There is no indication in the record that the Government has taken any action to cause a defense witness not to appear for the deposition nor has it "stacked the deck" by promising safe passage to government witnesses, but not to defense witnesses.

Finally, the court rejects Defendants' argument that United States v. Puchi, 441 F.3d 697 (9th Cir. 1971) and United States v. McKee, 2010 WL 1849330 (D. Nev. 2010) support its argument that the court possess the authority to compel the executive branch to provide "safe passage" to Mr. Shidane, a citizen of Djibouti and resident of Somalia, for travel between Somalia and Djibouti. In

McKee the district court ordered the government not to cause "in any way the arrest of any witness who might come [to testify] based on any traffic offenses or the offense which have been stated and presented to the Court here." Id. at *1. The government arrested a defense witness, a U.S. citizen and resident, after she testified in a sexual assault case. The district court then issued an order to show cause why the government should not be held in contempt for violation of the order. The district court concluded that its order was too ambiguous for enforcement and did not find the government in contempt. In Puchi, one of the issues on review by the Ninth Circuit was the district court's order denying a Rule 15 deposition. 441 F.2d at 700-01. While the Ninth Circuit noted that the district court had issued a "safe passage" order for a witness to testify at trial, the case simply did not discuss the legal or factual circumstances warranting the issuance of "safe passage." Accordingly, these authorities are not helpful to Defendants.

In sum, the court denies the motion to reconsider the Order and denies all objections to the Order.

**IT IS SO ORDERED.**

DATED: November 8, 2012

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All parties