LAURA E. DUFFY
United States Attorney
WILLIAM P. COLE
CAROLINE P. HAN
Assistant United States Attorneys
Cal. State Bar No. 186772/250301
STEVEN P. WARD
Trial Attorney
D.C. Bar. No. 395410
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone:(619) 546-6762/6968
Email:   William.P.Cole@usdoj.gov
         Caroline.Han@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No.: 10CR4246-JM |
| | ) | |
| Plaintiff, | ) | UNITED STATES' RESPONSE AND |
| | ) | OPPOSITION TO DEFENDANTS' JOINT |
| v. | ) | MOTION FOR NEW TRIAL |
| | ) | |
| BASAALY MOALIN (1), | ) | |
| MOHAMED MOHAMED MOHAMUD (2), | ) | |
| ISSA DOREH (3), | ) | |
| AHMED NASIR TAALIL | ) | Date:      November 12, 2013 |
| MOHAMUD (4), | ) | Time:      2:00 pm |
| | ) | |
| Defendants. | ) | FILED WITH CLASSIFIED |
| | ) | INFORMATION SECURITY OFFICER |
| | ) | |
| | ) | *IN CAMERA* |
| | ) | *EX PARTE* |
| | ) | UNDER SEAL |

**(U)** COMES NOW the United States of America, by and through its counsel, Laura E. Duffy, United States Attorney, and William P. Cole and Caroline P. Han, Assistant U.S. Attorneys, and Steven P. Ward, Trial Attorney, Department of Justice, National Security Division, Counterterrorism Section, and hereby files its Response and Opposition to Defendants' Joint Motion for a New Trial.

## I. (U) INTRODUCTION

**(U)** Defendants move for a new trial, asserting that this Court should revisit its prior rulings regarding the United States' use of electronic surveillance and physical search pursuant to the Foreign Intelligence Surveillance Act (FISA) and discovery determinations made pursuant to the Classified Information Procedures Act (CIPA) Section 4, and Fed. R. Crim. P. 16, based in part on the public revelation of formerly classified facts regarding this investigation.

**(U)** Defendants speculate that Government programs under Section 215 of the USA PATRIOT Act and acquisition of foreign intelligence information through the targeting of non-United States persons reasonably believed to be located outside the United States pursuant to Section 702 of FISA were illegally used in their prosecutions. They renew their previous motions for disclosure of sensitive and highly classified FISA applications, orders, and related materials; disclosure of the ex parte CIPA Motions; and to suppress the FISA information as fruit of the poisonous tree.

Further, they move for discovery of Rule 16 and <u>Brady</u> information they mistakenly assert the United States withheld.

**(U)** The Court has already carefully considered the propriety of the Government's use of FISA information in the case and denied defendants' motions for disclosure of the underlying FISA applications, orders and related materials. The facts disclosed since the Court's decisions do not alter the conclusion that the Government's use of FISA was proper, under the Fourth Amendment and FISA, and that the United States properly discharged its discovery obligations. The Motion for New Trial, including the request for disclosure of FISA materials and the United States' classified <u>ex parte</u> CIPA motions, should be denied.

## II.  **(U)** BACKGROUND

### A. **(U)** The FISA Suppression Litigation

**(U)** Defendants Basaaly Moalin, Mohamed Mohamud, and Issa Doreh were indicted on October 22, 2010. On November 4, 2010, the United States provided its Notice of Intent to Use Foreign Intelligence Surveillance Act Information as to Moalin, Mohamud and Doreh. [See Dkt. 12]. On January 14, 2011, the grand jury returned a Superseding Indictment adding defendant Ahmed Nasir. [See Dkt. 38]. On January 30, 2012, the United States filed its Notice of Intent to Use Foreign Intelligence Surveillance Act Information (Supplemental) as to all defendants. [Dkt. 119].

████████████████████████

(U)  On December 12, 2011, the defendants filed their Motion to Suppress the Wiretap Evidence, seeking to suppress all the telephone conversations intercepted pursuant to FISA, and seeking disclosure of the underlying FISA applications and orders. [See Dkt. 92 ("Motion to Suppress FISA Information")]. That Motion challenged both the Government's use of electronic surveillance pursuant to 50 U.S.C. 1806 (Title I of FISA) and collection conducted pursuant to Section 702 of the FISA Amendments Act of 2008 (FAA). Id. On February 23, 2012, the United States filed its classified response to the Motion to Suppress FISA Information, ex parte and under seal pursuant to 50 U.S.C. 1806(f). [See Dkt. 128]. The Court denied the Motion to Suppress FISA Information on June 4, 2012. [Dkt. 146].

B. (U)  The CIPA Litigation

(U)  On March 9, 2012, the defendants filed their preemptive Joint Motion to Deny the United States' Request to File Ex Parte and Compel Disclosure of CIPA Section 4 Application. [Dkt. 132]. On March 23, 2012, the United States filed its unclassified response to this challenge to the ex parte proceedings under CIPA Section 4. [Dkt. 138]. Subsequently, the Court considered each of the United States' five Motions for Protective Orders pursuant to CIPA Section 4, ex parte, in camera and under seal. On August 28, 2012, the Court entered a Protective Order granting three of the United States' CIPA Section 4 Motions – those dated March 21, 2012,

████████████████████████
4

June 1, 2012, and August 22, 2012.   [Dkt. 183].   The Court

subsequently granted two additional CIPA Section 4 Motions -- dated

January 2, 2013 and January 17, 2013 -- and entered a Protective

Order dated January 17, 2013.   [Dkt. 253].

C.  **(U)**  Recent Events

**(U)** After the Court's decisions upholding the propriety of the

United States' use of FISA information in the prosecution of these

defendants, and the Court's Orders granting Protective Orders for

the classified information that was the subject of each of the CIPA

Section 4 motions, additional details about the investigation that

resulted in this prosecution were publicly revealed.   The

disclosures originated in connection with the June 18, 2013 Hearing

before the House Permanent Select Committee on Intelligence (HPSCI)

on the subject: "How Disclosed NSA Programs Protect Americans, and

Why Disclosure Aids Our Adversaries."   See Def. Ex. 2 at 1.[1]  [Dkt.

345-3].

**(U)** The facts related to the Moalin investigation revealed at

this hearing, and on subsequent occasions, include:

   a. Information derived from the use of telephony metadata
      obtained pursuant to Section 215 was involved in the Moalin
      investigation.

---

[1]  **(U)** "Def. Ex." refers to the Exhibits in Support of Defendants'
Joint Motion for New Trial.

███████████████████████████████████

b. The Federal Bureau of Investigation (FBI) had a prior investigation of Basaaly Moalin in 2003, which was closed because it did not find evidence of links to terrorism.[2]

c. In October 2007, the NSA, using Section 215, provided a lead to the FBI consisting only of a San Diego telephone number that was in indirect contact with a Somali extremist outside the United States.[3]

---

[2] **(U)** FBI Deputy Director Sean Joyce ("DD Joyce"), reviewing four examples of cases which benefited from the use of either Section 215 or Section 702, used the Moalin case as an example of Section 215's value: "Lastly, the FBI had opened an investigation shortly after 9/11. We did not have enough information, nor did we find links to terrorism and then we shortly thereafter closed the investigation." Def. Ex. 2 at 9. [Dkt. 345-3].

**(U)** Later, DD Joyce responded to a question:

> THORNBERRY: OK. And -- and what about the other plot? October, 2007, that started I think with a 215?
>
> JOYCE: I refer to that plot. It was an investigation after 9/11 that the FBI conducted. We conducted that investigation and did not find any connection to terrorist activity.

Id. at 18.

**(U)** On July 31, 2013, DD Joyce also stated: "Another instance in which we used the business records 215 program, as Chairman - Leahy mentioned, [Basaaly Moalin]. So, initially, the FBI opened a case in 2003 based on a tip. We investigated that tip. We found no nexus to terrorism and closed the case." Def. Ex. 5. [Dkt. 345-6].

[3] **(U)** DD Joyce stated: "However, the NSA using the business record FISA tipped us off that this individual had indirect contacts with a known terrorist overseas." Def. Ex. 2 at 9. [Dkt. 345-3].

> Several years later, under the 215 business record provision, the NSA provided us a telephone number only, in San Diego, that had indirect contact with an extremist outside the United States.

Id. at 18.

████████████████████████████████████████████

    d. After receiving the lead with the San Diego telephone number, the FBI was able to tie the phone number to Basaaly Moalin, reopen the Moalin investigation, and eventually obtain authorization to conduct electronic surveillance and physical search pursuant to FISA, which produced evidence used at trial against the defendants in February 2013.[4]

    **(U)** Based on these facts, the defendants have moved for a new trial, contending that the use of Section 215 information invalidates the Court's prior determinations approving the United States' use of FISA information in this case.  They also challenge any NSA electronic surveillance, attacking "the NSA interception and/or collection of Mr. Moalin's communications [as a] violat[ion of]  his Fourth and First Amendment rights, . . .the Foreign Intelligence Surveillance Act ("FISA"), or any other statutory authority upon which such interception/collection was purportedly based."[5]

---

[4]  **(U)**  DD Joyce explained:  "We were able to reopen this investigation, identify additional individuals through a legal process, and were able to disrupt this terrorist activity."  Id. at 9.  Later, he stated:

    We served legal process to identify who was the subscriber to this telephone number. We identified that individual. We were able to, under further investigation and electronic surveillance that we applied specifically for this U.S. person with the FISA court, we were able to identify co-conspirators and we were able to disrupt this terrorist activity.

Id. at 24.

[5]  **(U)**  Defendants further state:  "In addition, certain 3500 material alluded to other, subsequent electronic surveillance of Mr. Moalin's communications while the FISA wiretap on his phone was in progress – surveillance which, due to its real-time monitoring, indicates it was not pursuant to the same NSA program that collected the other information related to Mr. Moalin (and the

D. **(U)** <u>Classified Background</u>

subject of the recent official statements), but instead was conducted under the auspices of another statutorily and constitutionally invalid NSA program." Def. Memo. at 1-2.





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

III.   (U) THE UNITED STATES' COLLECTION OF TELEPHONY METADATA
       DID NOT VIOLATE MOALIN'S — OR ANY OTHER DEFENDANTS' —
       FOURTH AMENDMENT RIGHTS

(U) Moalin contends that the United States' collection of his telephony metadata under Section 215 violated his Fourth Amendment rights.  For several reasons, his contention lacks any merit.

(U) First, an order requiring production of tangible things pursuant to Section 215 requires an entity, to include a telephone service provider, to produce records, papers, documents, and other items that are relevant to an authorized investigation.  A Section 215 order does not permit the United States to listen to, or record, the contents of any telephone conversation.  Rather, the particular type of order about which the defense complains required a third-party provider to produce telephone records containing information such as the numbers dialed and the length of calls.  See, e.g., Def. Ex. 2 at 3, 5, 6, and 10.  [Dkt. 345-3].

(U) Telephone users — including Moalin — have no reasonable expectation of privacy in telephony metadata.  In Smith v. Maryland, 442 U.S. 735 (1979), the Supreme Court held that the government's recording of numbers dialed from an individual's home telephone, through a pen register installed at the telephone company's central offices, did not constitute a search of that

individual under the Fourth Amendment, because persons making telephone calls, even from their own homes, lack a reasonable expectation of privacy in the numbers they call. 442 U.S. at 741-46. Unlike the contents of telephone calls, the Court held there is no reasonable expectation of privacy in the telephone numbers dialed, because telephone users "typically know that they must convey numerical information to the phone company; that the phone company has facilities for recording this information; and that the phone company does in fact record this information for a variety of legitimate business purposes." Id. at 743. The Court observed that someone who uses a phone has "voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business," and therefore has "assumed the risk that the company would reveal to police the numbers he dialed." Id. at 744; accord United States v. Reed, 575 F.3d 900, 914 (9th Cir. 2009)(because data about the call origination, length, and time of call is nothing more than pen register and trap and trace data, there is no Fourth Amendment expectation of privacy).

(U) Second, as defendants concede, the United States obtained Moalin's telephone records from a third-party service provider, not from Moalin. The Supreme Court "has repeatedly held that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to United States

authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." _United States v. Miller_, 425 U.S. 435, 443 (1976); _see also_ _United States v. Golden Valley Electric Association_, 689 F.3d 1108, 1116 (9th Cir. 2012)(holding that a customer has no Fourth Amendment interest in energy consumption records obtained by subpoena from the power company, and that a "customer ordinarily lacks 'a reasonable expectation of privacy in an item,' like a business record, 'in which he has no possessory or ownership interest'")(citation omitted).

**(U)** Following _Smith_ and _Miller_, courts have repeatedly rejected Fourth Amendment challenges directed at the government's collection of telephony metadata or, analogously, Internet protocol addressing information. _See, e.g._, _United States v. Forrester_, 512 F.3d 500, 510 (9th Cir. 2008) (the Supreme Court has drawn "a clear line between unprotected addressing information and protected content information"); _United States v. Taketa_, 923 F.2d 665, 668 n.1 (9th Cir. 1991) (the use of a pen register is "not constrained by the Fourth Amendment"); _United States v. Phibbs_, 999 F.2d 1053, 1077 (6th Cir. 1993) (holding it was "evident" that the defendant did not have any justifiable privacy interest in telephone records obtained from the service provider); _United States v. Mountain States Telephone and Telegraph Company, Inc._, 516 F. Supp. 225,

231-32 (D. Wyo. 1981)("A defendant can have no 'reasonable expectation of privacy' in the numbers which are dialed from his telephone."); United States v. Qing Li, 2008 U.S. Dist. LEXIS 22283, at *15 (S.D. Ca. Mar. 20, 2008)(finding that the defendant had no Fourth Amendment interest in her IP log-in histories and addressing information).[7]

(U) Third, Moalin lacks standing to assert the interests of any service provider, or the interests of other persons whose telephony metadata may have been collected along with his own, regardless of the collection's scope. Fourth Amendment rights are "personal in nature, and cannot bestow vicarious protection on those who do not have a reasonable expectation of privacy in the place to be searched." Steagald v. United States, 451 U.S. 204, 219 (1981); accord Minnesota v. Carter, 525 U.S. 83, 88 (1998)(a person claiming Fourth Amendment protection "must demonstrate that he personally has an expectation of privacy in the place searched"). Accordingly, "a court may not exclude evidence under the Fourth Amendment unless it finds that an unlawful search or seizure violated the defendant's own constitutional rights." United States v. Payner, 447 U.S. 727, 731-32 (1980); see also In re Grand Jury Proceedings, 827 F.2d 301, 305 (8th Cir.

---

[7] (U) Even before the Supreme Court's decision in Smith v. Maryland, the Ninth Circuit had rejected the notion that release of telephone toll records constitutes a Fourth Amendment search. See United States v. Baxter, 492 F.2d 150, 167 (9th Cir. 1973); United States v. Fithian, 452 F.2d 505, 506 (9th Cir. 1971).

1987)(rejecting argument that a subpoena was unreasonable under the Fourth Amendment because it "may make available to the grand jury [money transfer] records involving hundreds of innocent people"); United States v. Rigmaiden, 2013 U.S. Dist. LEXIS 65633, at *38 (D. Ariz. May 8, 2013) (United States did not violate defendant's Fourth Amendment rights by acquiring 1.8 million IP addresses from Verizon); Li, 2008 U.S. Dist. LEXIS, at *17 (because the court concluded that the defendant lacked any reasonable expectation of privacy in the evidence obtained from the third-party service provider, "the court also finds that defendant does not have standing to seek suppression of the evidence"). Therefore, neither Moalin nor his co-defendants have standing to challenge the United States' collection of the telephony metadata from the service provider, regardless of the collection's expanse. See In re Application of the Federal Bureau of Investigation for an Order Requiring the Production of Tangible Things, 2013 WL 5307991, at 5 (For. Intell. Surv. Ct. August 29, 2013), (hereinafter "FISC's August 29th Memorandum Opinion" or "In Re Application of FBI") ("Put another way, where one individual does not have a Fourth Amendment interest, grouping together a large number of similarly-situated individuals cannot result in a Fourth Amendment interest springing into existence *ex nihilo*.").[8]

---

███████████████████████████████████

**(U)** The FISC's August 29th Memorandum Opinion – granting the government's application for bulk collection of telephony metadata under Section 215 in the wake of the public revelations regarding the scope of this program – is on point. <u>See id</u>. at 5. The court found that a Section 215 order for telephony metadata does not implicate the Fourth Amendment. <u>Id</u>. It stated:

> [B]ecause the Application at issue here concerns only the production of call detail records or "telephony metadata" belonging to a telephone company, and not the contents of communications, <u>Smith v. Maryland</u> compels the conclusion that there is no Fourth Amendment impediment to the collection. . . . [T]his court finds that the volume of records being acquired does not alter this conclusion. Indeed, there is no legal basis for the Court to find otherwise.

<u>Id</u>.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

███████████████████████████████████

**(U)** The same applies here.   Defendants have failed to assert –
much less establish – any cognizable Fourth Amendment claim arising
from the United States' collection of telephony metadata.[9]

## IV. (U)  THERE IS NO SUPPRESSION REMEDY FOR ANY ALLEGED STATUTORY VIOLATION OF SECTION 215

**(U)** Beyond raising their constitutional challenge to the
Section 215 collection, defendants make only the most passing
references to alleged "statutory" violations.   See, e.g., Def.
Memo. at p.11 (alleging, in the heading, that the collection
violated "other claimed statutory authority").   But defendants
never identify any statute allegedly violated by the telephony
metadata collection, much less explain how they would be entitled
to any remedy for a statutory violation.

**(U)** Assuming that defendants are claiming that the metadata
collection violated Section 215, this claim is without merit.   The
NSA metadata collection program is fully consistent with the terms
of Section 215 as the FISC has repeatedly held.   E.g., In Re

---

[9]   **(U)** Defendants' First Amendment argument is entirely unfounded.
Defendants provide no factual support whatsoever for any claim that
their speech is being chilled by the past instances of business
records collection at issue here.   Nor do they provide any legal
support for a suppression remedy pursuant to the First Amendment.
And, in any event, where, as here, Government information gathering
does not violate the Fourth Amendment, it also "does not violate
First Amendment rights, even though it may be directed at
communicative or associative activities."   Gordon v. Warren Consol.
Bd. of Educ., 706 F.2d 778, 781 n.3 (6th Cir. 1983); see United
States v. Mayer, 503 F.3d 740, 750 (9th Cir 2007); ACLU Found. of
S. Cal. v. Barr, 952 F.2d 457, 471 (D.C. Cir. 1991) (same in FISA
context).

████████████████████████

Application of the FBI, 2013 WL 5307991, at 12-13.  But this Court need not even reach that issue here.  Even if the United States had committed a statutory violation of Section 215, and it has not, there is no suppression remedy for such a violation.

(U) Suppression of evidence is "a disfavored remedy" that is generally unavailable for non-constitutional violations unless such a remedy "is clearly contemplated by the relevant statute." Forrester, 512 F.3d at 512; accord Sanchez-Llamas v. Oregon, 548 U.S. 331, 348 (2006) (suppression available only for constitutional violations and statutory violations "that implicate[] important Fourth and Fifth Amendment interests").

(U) FISA's text makes clear that Congress did not contemplate a suppression remedy for a violation of Section 215.  Section 215 is codified within Title V of FISA, which is one of five FISA titles that provide information gathering tools for use in foreign intelligence investigations.  In four of these titles (Titles I, III, IV, and VII), Congress provided that a criminal defendant is entitled to notice and an opportunity to move for suppression.  See 50 U.S.C. §§ 1806(e), 1825(f), 1845(e), 1881e.  In Title V, however, Congress elected not to provide for notice or for a suppression remedy.  See 50 U.S.C. § 1861.  Given that Congress has clearly provided for a suppression remedy for certain FISA Titles while withholding such a remedy for Section 215 violations, a court "would encroach upon the prerogatives of Congress were [it] to

████████████████████████

authorize a remedy not provided for by statute." _Forrester_, 512 F.3d at 512 (internal quotation marks omitted) (declining to find a suppression remedy for violation of pen register statute); _see also_ _Smith_, 442 U.S. 735 (no suppression remedy for violation of pen register statute); _United States v. Donovan_, 429 U.S. 413, 432 n.22 (1977) (no suppression remedy for violation of wiretapping statute).

(U) Because there is no suppression remedy for a violation of Section 215, defendants' statutory challenge is without merit.

## V. (U) THE DEFENDANTS' CHALLENGE TO ANY PURPORTED INTERCEPTION OF MOALIN'S COMMUNICATIONS UNDER SECTION 702 OF FISA IS WITHOUT MERIT

(U) Defendants contend that the U.S. Government's "likely" interception of Moalin's communications under the FAA of 2008 (Section 702) violated the Fourth and First Amendments. This claim is similarly meritless and cannot support granting a new trial.

(U) As required by 50 U.S.C. § 1806(c) and 1825(d), the United States notified the defense and this Court that it intended to use against Moalin and his co-defendants in its prosecution evidence obtained or derived from electronic surveillance and physical search under Titles I and III of FISA, 50 U.S.C. §§ 1801-1812 and 1821-1829. The United States did not enter into evidence or otherwise use or disclose in the course of the prosecution of Moalin or his co-defendants any FAA-obtained or -derived foreign intelligence collection as to which Moalin or his co-defendants were aggrieved persons under FISA. The government's notice

obligations regarding its use of FISA information under §§ 1806 (electronic surveillance under Title I of FISA), 1825 (physical search under Title III of FISA), and 1881e (acquisition of foreign intelligence information through the targeting of non-United States persons reasonably believed to be located outside the United States pursuant to Section 702 of FISA) apply only if the government: (1) "intends to enter into evidence or otherwise use or disclose" (2) "against an aggrieved person" (3) in a "trial, hearing or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States" (4) any "information obtained or derived from" (5) an "electronic surveillance [or physical search] of that aggrieved person." See 50 U.S.C. §§ 1806(c), 1825(d) and 1881e. Thus, even if any of defendants' communications were acquired pursuant to Section 702 of FISA as they speculate, defendants would have no standing under the statute to challenge such acquisition in this proceeding. Neither is a suppression remedy available because no such evidence was used in the prosecution.[10] Accordingly, defendants do not – and cannot – establish any Fourth Amendment violation pertaining to the FAA.[11, 12]

████████████████████████████

## VI.(U)  THERE IS NO BASIS TO DISCLOSE ANY PORTION OF THE FISA APPLICATIONS OR THE CIPA SECTION 4 MOTIONS

**(U)**  Defendants renew their motion to disclose the FISA applications and CIPA Section 4 Motions, asserting that the U.S. Government's disclosure of the use of Section 215 telephony metadata in connection with Moalin means that the proceedings under FISA and CIPA must now be conducted on notice to the defendants. Def. Memo. at 25.  But their inaccurate speculation concerning Section 215 and the FAA does not entitle them to disclosure of sensitive FISA applications, orders, and related materials or the ex parte CIPA Section 4 Motions.

**(U)**  As the United States noted in its Response to the Motion to Suppress the FISA Information, FISA allows the disclosure of the underlying applications and orders only "where such disclosure is necessary to make an accurate determination of the legality of the

---

[11]  **(U)**  This also dispenses with defendants' complaint that they were not provided the proper notice so that they could challenge FAA authorized surveillance, because the notice requirement does not arise unless and until the Government plans to use such material against an aggrieved party.  See 50 U.S.C. §§ 1806(c), 1881e(a).

[12]  **(U)**  Similarly, the defendants' First Amendment claim lacks merit.  The defendants incorporate by reference the plaintiffs' pleadings in Amnesty Intern. USA v. McConnell, 08-CV-6259 (JGK) (Def. Memo. 11), adopting the arguments that the FAA has a chilling effect on their speech.  The defendants lack standing just like the plaintiffs in Clapper v. Amnesty Intern. USA, whose challenge was rejected earlier this year because they could not show that the "future injury they purportedly fear[ed] [was] certainly impending."  133 S. Ct. 1138, 1155 (2013).

surveillance." See Dkt. 128 at 17 (citing 50 U.S.C. § 1806 (f)).

Further, "[i]f the court determines that the surveillance was

lawfully authorized and conducted, it shall deny the motion of the

aggrieved person except to the extent that due process requires

discovery or disclosure." See id. at 18 (citing 50 U.S.C. §

1806(g)).

(U)   In national security matters, need to know is the

benchmark by which disclosure is measured.   See Response to Joint

Motion to Deny Government's request to File Ex Parte and Compel

Disclosure of CIPA Section 4 Application [Dkt. 138], at 8-10 (mere

fact that counsel is cleared does not entitle them to disclosure of

classified information unless they have a need to know); Response

to Motion to Suppress FISA Information [Dkt. 128], at 21-22 (same).

In this context, defendants do not have a need to know unless,

after an ex parte, in camera review, the Court determines there is

an issue with legality of the FISA that it cannot determine without

the assistance of the defendants.   See id.   Other than to claim

that the U.S. Government has declassified certain previously

classified information, defendants do not suggest (nor is there

any) basis that creates a need to know, other than their position,

which they have adhered to from the start, that all classified

litigation should be in an adversarial proceeding.   However, that

██████████████████████████████████

position has been consistently rejected by the Courts.  <u>See</u> Dkt.

128 at 21-22;  Dkt. 138 at 8-10; ████████████████████████.[13]

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

_____

[13]  **(U)** Subsequent to the United States' Response to the Motion to Suppress the FISA Information, the Ninth Circuit reinforced the rule that a security clearance does not entitle the defense to access to the government's classified filings.  In <u>United States v. Sedaghaty</u>, -- F.3d --, 2013 WL 4490922 (9th Cir. August 23, 2013), the Ninth Circuit rejected the argument that a security clearance entitled defense counsel to access to classified filing under CIPA. It stated:

> [T]he simple fact that defense counsel held security clearances does not mean that the attorneys were entitled to access the government's classified filings.  <u>See</u> <u>United States v. El-Mezain</u>, 664 F.3d 467, 568 (5th Cir. 2011) (approving, in the context of the Foreign Intelligence Surveillance Act, denial of discovery to cleared defense counsel because of the government's substantial interest in maintaining secrecy).

<u>Id</u>. at 25.  <u>See also</u> <u>United States v. Ott</u>, 870 F.2d 473, 476-77 (9th Cir. 1987) (a defendant's due process right to disclosure of FISA materials does not turn on the security clearance of his counsel).

██████████████████████████████████



[14]   **(U)** Defendants' reliance on an October 3, 2011 FISC Opinion is misplaced.   The opinion documented the FISC's judicial review of the Government's Certifications of Collection and Interception pursuant to Section 702 of FISA and is hence irrelevant here where Section 702 is not at issue.   See supra 20.

████████████████████████████████

## VII. (U)  DEFENDANTS' DISCOVERY CLAIMS LACK MERIT

A.   **(U)** The Defendants Do Not Establish Any Rule 16 Violation

**(U)**  Defendants apparently contend that the collection of Moalin's telephony metadata and the alleged interception of his communications created discovery obligations under Rule 16 which the United States ignored.  However, the United States fully complied with Rule 16.  Defendant Moalin's position that the telephony metadata was seized from him and is therefore discoverable under Fed. R. Crim. P. 16(a)(1)(E)(iii); Def. Memo. at 33; is unsupported in fact or law.  As the forgoing discussion demonstrates, the telephony metadata was not seized from defendant Moalin.  Rather, it was produced by the relevant telecommunications providers in response to an Order from the FISC.  See supra at 11; In re Application of the FBI, 2013 WL 5307991, at 2-3.  Moreover, there was no seizure in the Fourth Amendment sense because Moalin had no privacy interest in a third party telecommunications provider's records of his phone calls.  See supra Section III.

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

[REDACTED]

(U) Moreover, even assuming for argument's sake that the third party was in direct communication with Ayrow, this still would not contradict the United States' theory at trial that Ayrow and Moalin talked to each other on the phone.  Whether Moalin had phone conversations with a third party who also had conversations with Ayrow is irrelevant to whether Moalin himself also spoke directly to Ayrow on other occasions.[15]

(U) The assertion that the United States failed to provide communications intercepted under Section 702 of FISA is equally unfounded.  As stated previously, no information obtained from or derived from FAA-authorized collection as to which the defendants

---

[REDACTED]

are aggrieved under FISA was used in the course of this prosecution.  Further, the United States is aware of and complied with its discovery obligations in this prosecution.

B. **(U)** The Defendants Do Not Establish Any Brady Violations

**(U)** Defendants also assert that several other items constitute Brady material.  A Brady violation occurs only if favorable exculpatory or impeaching evidence is withheld from the defendant, and the evidence is material to the defendant's guilt or innocence. Sedaghaty, 2013 WL 4490922, at *9.  As explained below, the defendants' claims have no merit.

i. **(U)** Prior investigation of defendant Moalin

ii. **(U)** Alleged earlier investigation of Ahmed Nasir

**(U)** Defendants also argue that statements made in defendant Nasir's presentence report suggest that the United States has withheld <u>Brady</u> material. Specifically, they argue that the United States may have withheld exculpatory information from an alleged prior Anaheim investigation. In fact, there was only one FBI investigation of Nasir, an investigation that began in Anaheim (where Nasir lived), but was later transferred to the San Diego FBI. Any statement suggesting otherwise in the presentence report merely reflects a miscommunication between the case agent and the Probation Officer.

iii.  **(U)**  January 24th email

**(U)** The defendants argue that the United States failed to provide them with Rule 16 discovery because a January 24, 2008 email, provided in discovery, between an unnamed FBI employee and an FBI linguist discusses Aden Ayrow placing a call to defendant Moalin that *did not go through*. See Def. Ex. 6. [Dkt. 345-7]. However, there is nothing to discover about an uncompleted call. Moreover, the defendants were provided with toll records for defendant Moalin's phone, including records for January 24, 2008.

████████████████████████████

The toll records reflect that on January 24, 2008, two calls of seconds in duration were made from a Somali number ending in -9957 to defendant Moalin's phone.   See Ex. 1 (attached hereto).   On January 20 and 24 and February 2, 3, and 14, defendant Moalin spoke with Ayrow, who was then using the number ending in -9957.   In short, defendants fail to establish that the United States withheld any Rule 16 or Brady discovery pertaining to the January 24, 2008 email.

## VIII.  (U) CONCLUSION

    **(U)**  For  each  of  the  foregoing  reasons,  the  Court's determinations  upholding  the  United  States'  use  of  the  FISA information  and  conducting  _ex  parte_  proceedings  in  litigation involving both the FISA information and the CIPA Protective Orders, were  proper  and  remain  so.  Further,  the  United  States  fully discharged its discovery obligations.  Defendants have not advanced any basis for a new trial;  thus, their motion should be denied.

Dated: September 30, 2013

                          Respectfully submitted,

                          LAURA E. DUFFY
                          United States Attorney

            By:    /s/ William P. Cole
                  WILLIAM P. COLE
                  CAROLINE P. HAN
                  Assistant United States Attorneys

                  /s/ Steven P. Ward
                  STEVEN P. WARD
                  Trial Attorney
                  Counterterrorism Section
                  National Security Division

                  Attorneys for Plaintiff
                  United States of America

Exhibit 1

**(U)**   Toll Records for Basaaly Moalin's cellular phone
(619) 278-1189

| Target Number | Call Date | Call Number | Start Time | Stop Time | Duration | Call Type | InvOut Number | InvOut Name |
|---|---|---|---|---|---|---|---|---|
| (619) 278-1189 | 01/24/08 | 0001 | 00:01:09 | :01:33 | 00:00:24 | IN | 25215209957 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0002 | 00:24:55 | 00:25:06 | 00:00:11 | IN-UNA | 25262270369 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0003 | 06:17:20 | 06:54:19 | 00:36:59 | OUT | 4597040 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0004 | 07:00:05 | 07:03:02 | 00:02:57 | OUT | 2880898 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0005 | 07:00:41 | 07:07:37 | 00:06:56 | IN | 6192880698 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0006 | 07:12:12 | 07:12:25 | 00:00:13 | OUT | 2418599 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0007 | 07:15:10 | 07:15:50 | 00:00:40 | OUT | 2418599300049233572F | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0008 | 07:16:06 | 07:18:02 | 00:01:56 | OUT | 2418599300049233572F01125215209957F | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0009 | 07:18:31 | 07:18:45 | 00:00:14 | OUT | 2418599 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0010 | 07:23:28 | 07:23:42 | 00:00:14 | OUT | 2418599 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0011 | 07:23:59 | 07:28:23 | 00:04:24 | OUT | 2418599300049233572F01125215209957FFF0112 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0012 | 07:28:29 | 07:33:05 | 00:04:36 | OUT | 2418599F300049233572F01125215118774FFF01 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0013 | 07:35:34 | 07:37:27 | 00:01:53 | OUT | 16192436362 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0014 | 07:53:27 | 07:55:40 | 00:02:13 | OUT | 12146825540 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0015 | 08:24:19 | 08:35:15 | 00:10:56 | OUT | 2418599300049233572F01125215118774FFF0112 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0016 | 08:38:59 | 08:42:19 | 00:03:20 | OUT | 2696478 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0017 | 08:48:45 | 09:01:48 | 00:15:03 | IN | 3142650978 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0018 | 09:04:54 | 09:06:26 | 00:01:32 | OUT | 12146825540 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0019 | 09:06:49 | 09:08:07 | 00:01:18 | OUT | 2418599468533653309F468533653309F468533653 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0020 | 09:08:18 | 09:11:53 | 00:03:35 | OUT | 2696478 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0021 | 09:13:08 | 09:13:08 | 00:00:00 | OUT-UNA | 2696478 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0022 | 09:13:18 | 09:13:18 | 00:00:00 | OUT-UNA | 2696478 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0023 | 09:13:30 | 09:13:30 | 00:00:00 | OUT-UNA | 2696478 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0024 | 09:13:46 | 09:16:07 | 00:02:21 | OUT | 2418599468533653305F01125215209957FFF0112 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0025 | 09:16:30 | 09:17:19 | 00:00:49 | OUT-UNA | 25215209957 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0027 | 09:31:19 | 09:31:31 | 00:00:12 | IN | 25215209957 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0028 | 09:32:27 | 09:32:51 | 00:00:14 | OUT | 2418599 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0029 | 09:33:22 | 09:35:11 | 00:01:49 | OUT | 2418599468533653305F01125215209957F | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0030 | 09:35:31 | 09:35:38 | 00:00:07 | OUT-UNA | 25215209957 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0031 | 09:35:47 | 09:35:51 | 00:00:04 | OUT-UNA | 25215209957 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0032 | 09:36:18 | 09:37:04 | 00:00:46 | OUT | 0112521520957 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0033 | 09:37:17 | 09:39:15 | 00:01:58 | OUT | 2418599468533653305F01125215209957FFF0112 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0034 | 09:53:45 | 09:54:36 | 00:00:51 | OUT | 2418599468533653309F4685336505F | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0035 | 09:54:48 | 09:57:09 | 00:02:23 | OUT | 2418599468533653305F01125215209957FFF0112 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0036 | 09:59:21 | 10:01:35 | 00:02:14 | OUT | 2418599468533653305F01125215205FFFFFF0112 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0037 | 10:04:35 | 10:05:33 | 00:00:58 | OUT | 2418599468533653305F01125215209957F | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0038 | 10:09:34 | 10:11:17 | 00:01:43 | OUT | 2418599468533653305F01125215209957FFF0112 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0039 | 10:32:36 | 10:32:36 | 00:00:00 | IN-UNA | 25215118774 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0040 | 11:28:47 | 11:29:50 | 00:01:03 | OUT | 2418599468533653305F01125215209957F | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0041 | 11:35:23 | 11:35:32 | 00:00:09 | OUT | 3145182127 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0042 | 12:03:21 | 12:03:52 | 00:00:31 | IN | 3145182127 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0043 | 12:25:39 | 12:26:15 | 00:00:36 | IN | 6125980161 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0044 | 12:27:26 | 12:28:17 | 00:00:51 | OUT | 16125980161 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0045 | 12:28:38 | 12:37:30 | 00:08:52 | OUT | 16125980161 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0046 | 12:37:17 | 12:38:04 | 00:00:47 | IN | 6195493197 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0047 | 12:38:50 | 12:39:22 | 00:00:32 | OUT | 2418599468533653305F | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0048 | 12:39:31 | 12:43:52 | 00:04:21 | OUT | 2418599468533653305F01125215209957FFF0112 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0049 | 12:44:18 | 12:44:18 | 00:00:00 | OUT-UNA | 0125215209957 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0050 | 12:44:47 | 12:44:57 | 00:00:10 | OUT-UNA | 0112525960190 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0051 | 12:56:56 | 12:57:45 | 00:00:49 | OUT-UNA | 0112525960190 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0052 | 13:56:57 | 13:57:25 | 00:00:28 | IN | 3145182127 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0053 | 14:54:25 | 14:55:04 | 00:00:39 | OUT | 4597040 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0054 | 15:22:06 | 15:22:38 | 00:00:32 | OUT | 13145182127 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0055 | 15:29:14 | 15:30:00 | 00:00:46 | OUT | 2301001 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0056 | 16:07:06 | 16:09:28 | 00:02:22 | OUT | 3109207442 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0057 | 16:10:59 | 16:11:43 | 00:00:44 | OUT | 16514318052 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0058 | 16:12:03 | 16:12:35 | 00:00:32 | OUT | 13145182127 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0059 | 16:22:34 | 16:22:56 | 00:00:22 | IN | 6514318052 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0060 | 16:23:09 | 16:26:49 | 00:03:40 | IN | 6514318052 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0061 | 16:26:13 | 16:27:46 | 00:01:33 | IN | 3145182127 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0062 | 16:48:39 | 16:49:17 | 00:00:38 | OUT | 13145182127 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0063 | 16:50:02 | 16:50:16 | 00:00:14 | OUT | 3109207442 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0064 | 16:52:20 | 16:55:20 | 00:03:00 | IN | 3109207442 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0065 | 17:03:15 | 17:04:02 | 00:00:47 | OUT | 3374671 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0066 | 17:10:45 | 17:16:07 | 00:05:22 | IN | 3145182127 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0067 | 17:27:05 | 17:27:35 | 00:00:30 | OUT | 13145182127 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0068 | 17:30:17 | 17:31:06 | 00:00:49 | OUT | 13145182127 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0069 | 17:31:36 | 17:38:47 | 00:07:11 | OUT | 6126967072 | Unknown Subscriber |
| (610) 278-1189 | 01/24/08 | 0070 | 18:26:57 | 18:28:16 | 00:01:19 | IN | 2146825540 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0071 | 18:33:16 | 18:35:42 | 00:02:26 | IN | 3145182127 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0072 | 18:39:21 | 18:39:21 | 00:00:00 | OUT-UNA | 6125987672 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0073 | 18:39:35 | 18:45:42 | 00:06:07 | OUT | 13145182127 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0074 | 18:52:21 | 18:54:19 | 00:01:58 | OUT | 12146825540 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0075 | 18:54:36 | 18:59:31 | 00:04:55 | OUT | 12146825540 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0076 | 19:09:33 | 19:10:49 | 00:01:16 | IN | 6109086394 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0077 | 19:16:12 | 19:16:20 | 00:00:08 | OUT | 16198086394 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0078 | 19:16:33 | 19:48:44 | 00:32:11 | OUT | 16198086394 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0079 | 19:30:26 | 19:32:38 | 00:02:12 | IN | 6192540888 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0080 | 19:40:19 | 19:43:08 | 00:02:49 | IN | 6192540888 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0081 | 20:06:09 | 20:06:39 | 00:00:30 | IN | 6192540888 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0082 | 20:36:01 | 20:40:09 | 00:04:08 | IN | 6128120189 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0083 | 20:40:28 | 20:40:40 | 00:03:12 | OUT | 7849627 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0084 | 20:50:17 | 20:57:06 | 00:06:49 | OUT | 2418599468533653305F011252596FFFFFF011252 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0085 | 20:58:00 | 20:58:16 | 00:00:16 | OUT | 7849627 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0086 | 20:58:29 | 20:59:05 | 00:00:36 | IN | 6197849627 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0087 | 21:04:27 | 21:05:04 | 00:00:37 | IN | 6197849627 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0088 | 21:06:18 | 21:36:46 | 00:30:28 | IN | 6197849627 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0089 | 21:40:36 | 21:40:36 | 00:00:00 | OUT-UNA | 6122344171 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0090 | 21:41:55 | 21:41:55 | 00:00:00 | OUT-UNA | 16144418902 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0091 | 21:42:26 | 21:42:30 | 00:00:04 | OUT | 6143644057 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0092 | 21:59:53 | 22:00:20 | 00:00:27 | IN | 6145635592 | Unknown Subscriber |

GA-ATOLL-000038

| Target Number | Call Date | Call Number | Start Time | Stop Time | Duration | Call Type | In/Out Number | In/Out Name |
|---|---|---|---|---|---|---|---|---|
| (619) 278-1189 | 01/24/08 | 0093 | 22:30:47 | :36:48 | 00:06:01 | IN | 3145182127 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0094 | 22:37:02 | 22:37:06 | 00:00:04 | OUT | 7849627 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0095 | 22:37:37 | 22:41:17 | 00:03:40 | OUT | 7849627 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0096 | 22:38:08 | 22:38:38 | 00:00:30 | IN | 6192540888 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0097 | 22:41:30 | 22:41:53 | 00:00:23 | OUT | 16192540688 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0098 | 22:45:43 | 22:45:52 | 00:00:09 | OUT | 4597040 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0099 | 22:46:19 | 22:49:18 | 00:02:59 | OUT | 16128120189 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0100 | 23:03:31 | 23:05:43 | 00:02:12 | IN | 6197849627 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0101 | 23:07:33 | 23:12:26 | 00:04:53 | IN | 6128120189 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0102 | 23:12:53 | 23:15:11 | 00:02:18 | OUT | 7849627 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0103 | 23:18:49 | 23:19:50 | 00:01:01 | OUT | 241859948853365305F01125215571520F | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0104 | 23:20:03 | 23:25:44 | 00:05:41 | OUT | 241859948853365305F01125215571520F | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0105 | 23:26:01 | 23:28:23 | 00:02:22 | OUT | 16128120189 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0106 | 23:26:48 | 23:33:11 | 00:06:23 | IN | 6128120189 | Unknown Subscriber |
| (619) 278-1189 | 01/24/08 | 0107 | 23:51:07 | 23:51:24 | 00:00:17 | OUT | 7849627 | Unknown Subscriber |

GA-ATOLL-000039