1                    United States District Court

2                  Southern District of California

3

4  UNITED STATES OF AMERICA,      )
                                  )
5                  Plaintiff,     )
                                  )
6      vs.                        ) Case No. 10-CR-4246 JM
                                  )          10-CR-4645 JM
7  BASAALY SAEED MOALIN,          ) Thursday, January 20, 2011
   MOHAMAD MOHAMAD MOHAMUD,       ) Motion Hearing
8  ISSA DOREH,                    )
   AHMED NASIR TAALIL MOHAMUD,    )
9                                 )
                   Defendants.    )
10 _____)

11

12              Before the Honorable Jeffrey T. Miller
                    United States District Judge

13

14

15

16

17

18

19

20 Official Interpreter:    Ahmedei M. Farah, CCI

21 Official Court Reporter: Debra M. Henson, CSR, RPR
                            U.S. Courthouse
22                          333 W. Broadway, Suite 420
                            San Diego, CA  92101
23                          (619) 238-4558

24

25              Record produced by stenographic reporter

```
 1    Appearances

 2    For the Government:      Laura E. Duffy
                               UNITED STATES ATTORNEY
 3                             William P. Cole
                               Caroline P. Han
 4                             ASSISTANT U.S. ATTORNEYS
                               880 Front Street, Suite 6293
 5                             San Diego, CA  92101

 6    For the Defendants:
      (Mr. Moalin)             Marc B. Geller, Esq.
 7                             LAW OFFICES OF MARC B. GELLER
                               1010 Second Avenue, Suite 1820
 8                             San Diego, CA  92101

 9    (Mr. M. Mohamud)         Mahir T. Sherif, Esq.
                               LAW OFFICES OF MAHIR T. SHERIF
10                             3376 30th Street
                               San Diego, CA  92104
11
      (Mr. Doreh)              Kenneth J. Troiano, Esq.
12                             LAW OFFICE OF KENNETH J. TROIANO
                               P.O. Box 33536
13                             San Diego, CA  92163

14    (Mr. A. Mohamud)         Holly S. Hanover, Esq.
                               LAW OFFICES OF HOLLY S. HANOVER
15                             1016 La Mesa Avenue
                               Spring Valley, CA  91977
16

17

18

19

20

21

22

23

24

25
```

```
 1              San Diego, California - Thursday, January 20, 2011
 2         (Defendants are being assisted by a Somali interpreter.)
 3              THE CLERK:  Calling matters 2 and 3 on calendar,
 4    matter No. 2, 10-CR-4246, USA versus Basaaly Saeed Moalin.
 5    Counsel, could you please state your appearance.
 6              MR. GELLER:  Marc Geller, your Honor, on behalf of
 7    Basaaly Moalin.  For the record -- good morning, your Honor.
 8    Marc Geller appearing on behalf of Basaaly Moalin.  He is
 9    entering the courtroom in custody.
10              THE COURT:  Thank you.
11              MR. SHERIF:  Good morning, your Honor.  Mahir
12    Sherif on behalf of Mr. Mohamad Mohamad Mohamud.  He's in
13    custody, your Honor, and present.
14              THE COURT:  Okay.  Thank you.
15              MR. TROIANO:  Good morning, your Honor.  Kenneth
16    Troiano on behalf Mr. Doreh.  He's not present yet.  I do
17    need a brief moment with him, if I could, before we start.
18              THE COURT:  Okay.
19              MS. HANOVER:  Good morning, your Honor.  Holly
20    Hanover on behalf of Ahmed Mohamud.  He is also present
21    before the Court in white.
22              MR. GELLER:  Also for the record, your Honor, it
23    doesn't appear that we have an interpreter that's -- or they
24    have headsets that are working with the interpreter.
25              MR. COLE:  Your Honor, William Cole and Caroline
```

1    Han for the United States.

2              THE COURT:  Thank you.  We're still missing one.

3    Whose client is missing at this time?

4              MR. SHERIF:  I think we have all four, your Honor.

5    Oh, we are missing a client.

6              DEPUTY U.S. MARSHAL:  There's one in the back, your

7    Honor.  Be out in just a second.  They're bringing him out.

8              THE COURT:  Okay.  Very good.  Thank you.  Did you

9    say there's no interpreter?

10             THE CLERK:  Yes, there is, your Honor.

11             THE COURT:  There is, okay.  Very good.

12             MR. SHERIF:  Your Honor, is the Court going to

13    arraign them on the superseding indictment?

14             THE COURT:  No -- well, I understand the

15    superseding indictment has been issued in the case joining

16    all four gentlemen at this point; is that correct, Mister --

17             MR. COLE:  Yes, your Honor.  The superseding

18    indictment was returned.  It simply merges the two cases;

19    there's no new charges, but it does add Mr. Ahmed Nasir

20    Taalil Mohamud as a fourth defendant in the main case, 4246,

21    so I suppose these gentlemen would need to be arraigned on

22    the superseding indictment.

23             MR. SHERIF:  If that's the case, I'm going to need

24    a minute, your Honor, because I haven't gone over the

25    superseding indictment with my client.

1          MR. GELLER:  I haven't --

2          THE COURT:  One at a time, please.  Mr. Sherif, how

3    much time would you like?

4          MR. SHERIF:  Five, ten minutes, your Honor.

5          THE COURT:  All right.  I'm certainly prepared to

6    give you additional time if you'd like.  I don't want you in

7    any way to feel rushed.

8          MR. SHERIF:  No, I'm not being rushed, your Honor.

9          THE COURT:  Okay.  Mr. Geller?

10          MR. GELLER:  I don't have a copy of the superseding

11   indictment.

12          THE COURT:  All right.  Tell you what.  Why don't

13   we take about ten minutes at this point, all right, so that

14   Mr. Cole can provide copies of the superseding indictment to

15   all counsel, counsel can stake a look at the superseding

16   indictment, Mr. Sherif can confer with his client if he needs

17   to confer, other counsel may confer with their clients if

18   they seem that necessary, and then we'll proceed.

19          MR. GELLER:  Thank you, your Honor.

20          THE COURT:  Very good.  Just let us know when

21   you're ready to proceed, counsel.

22       (There was a break in the proceedings.)

23          THE COURT:  Okay.  Have all counsel had an

24   opportunity to review the superseding indictment and review

25   that with your client if necessary?

1         MR. SHERIF:  Yes, your Honor.

2         MS. HANOVER:  Yes, your Honor.

3         MR. TROIANO:  Yes, your Honor.

4         MR. GELLER:  Yes, your Honor.

5         THE COURT:  Okay.  Very good.  Thank you.  All

6    right.  Let us proceed with the arraignment then on the

7    superseding indictment.  The superseding indictment I assume

8    is still going to bear case number 10-CR-4246; is that

9    correct, Mister --

10        MR. COLE:  Yes, your Honor.

11        THE COURT:  Very good.

12        THE CLERK:  Basaaly Saeed Moalin, is that your true

13   name?

14        DEFENDANT MOALIN:  (In English)  Yes.

15        THE CLERK:  Mohamad Mohamad Mohamud, is that your

16   true name?

17        DEFENDANT M. MOHAMUD:  (In English)  Yes.

18        THE CLERK:  Issa Doreh, is that your true name?

19        DEFENDANT DOREH:  (In English)  Yes, ma'am.

20        THE CLERK:  Ahmed Nasir Taalil Mohamud, is that

21   your true name?

22        DEFENDANT A. MOHAMUD:  (In English)  Yes.

23        THE CLERK:  You are each informed that a

24   superseding indictment has been filed charging you with

25   conspiracy to provide material support to terrorists;

1   conspiracy to provide material support to a foreign terrorist

2   organization; conspiracy to kill in a foreign country;

3   conspiracy to launder monetary instruments; providing

4   material support to terrorists.  Have you received a copy?

5           MR. GELLER:  On behalf of Mr. Moalin, we have, and

6   we'd waive further reading.

7           MR. SHERIF:  On behalf of Mr. Mohamad Mohamad

8   Mohamud, we have, your Honor, and we waive reading.

9           MR. TROIANO:  Yes as to Mr. Doreh as well.

10          MS. HANOVER:  As to Mr. Ahmed Mohamud as well, yes.

11          THE COURT:  And you waive further reading,

12  Mr. Troiano?

13          MR. TROIANO:  Yes, I do.

14          THE COURT:  Ms. Hanover, you waive further reading?

15          MS. HANOVER:  Yes, your Honor.

16          THE COURT:  All right.

17          THE CLERK:  Gentlemen, you are further informed

18  that you're entitled to a trial by jury or a trial by the

19  Court; to be represented by counsel at all stages of the

20  proceedings before the Court; and to have witnesses summoned

21  to testify in your behalf.  How do you now plead to the

22  superseding indictment?

23          MR. GELLER:  With respect to the charge alleged

24  against Mr. Moalin, we'd ask that not guilty pleas be

25  entered.

```
 1              THE COURT:  A not guilty plea will be entered on
 2   behalf of Mr. Moalin with respect to all counts.
 3              MR. SHERIF:  Not guilty on behalf of Mr. Mohamud,
 4   your Honor.
 5              THE COURT:  A not guilty plea will be entered with
 6   respect to Mr. Mohamud as to all counts.
 7              MR. TROIANO:  Not guilty for Mr. Doreh as to all
 8   counts.
 9              THE COURT:  A not guilty plea will be entered as to
10   Mr. Doreh as to all counts.
11              MS. HANOVER:  Not guilty as to Ahmed Mohamud as
12   well, your Honor.
13              THE COURT:  All right.  Not guilty as to Mr. Ahmed
14   Mohamud as to all counts will be entered.  All right.  Thank
15   you, counsel.  All right.  Gentlemen, you certainly may be
16   seated if you wish.
17              Okay.  So are you moving at this time then,
18   Mr. Cole, to have case number 10-CR-4645 dismissed without
19   prejudice in light of the superseding indictment filed in
20   4246?
21              MR. COLE:  Yes, your Honor.
22              THE COURT:  All right.  Case 10-CR-4645 JM is
23   dismissed without prejudice at this time.  The --
24              MR. COLE:  Your Honor, with respect to that
25   dismissal --
```

1          THE COURT:  -- motions -- excuse me.

2          MR. COLE:  Oh, I'm sorry.

3          THE COURT:  The motions that are filed in 4645 are

4    deemed filed in case 10-CR-4246, the sole remaining case in

5    this litigation.  Mr. Cole?

6          MR. COLE:  That was one of the points I was going

7    to raise, and I just wanted to also make sure that the

8    protective order that was signed in the dismissed case is --

9    there's already an identical protective order in the current

10   case.  I just wanted to make sure it's clear on the record

11   that the fourth defendant is subject to that protective order

12   as well.

13         THE COURT:  Yes, that will be the order.  The

14   fourth defendant is subject to the protective order that was

15   earlier filed in case 10-CR-4645 as it is now deemed filed in

16   case 10-CR-4246 with respect to Mr. Ahmed Mohamud, and of

17   course Holly Hanover is deemed appointed -- is appointed for

18   Mr. Mohamud in case 10-CR-4246.

19         MR. COLE:  The only other matter I can think of in

20   regards to essentially transfering the new case is the order

21   of detention that was existing in the old case, I assume

22   that's transfered to the new case.

23         THE COURT:  All motions and all orders --

24         MR. COLE:  Okay.

25         THE COURT:  -- that were filed or issued in case

1    10-CR-4645 are deemed filed and/or issued in case 10-CR-4246

2    as it has been indicted in the superseding indictment.  Okay.

3    Can we move to discovery?  Let's monitor the case for

4    discovery at this time.  Mr. Cole?

5          MR. COLE:  Yes, your Honor.  We have provided what

6    we consider to be the great bulk of discovery in this case.

7    Today we have also put out for discovery -- counsel will get

8    it after court today; it's available now -- the disk that we

9    discussed at the last hearing.  What we've done, your, Honor,

10   is we provided approximately 870 some-odd audio calls to the

11   defense --

12         THE COURT:  May I stop you -- and please excuse me

13   interrupting counsel -- not just you, Mr. Cole; I'm sure I'll

14   need to interrupt counsel for the defense a few times.  As I

15   recall, the audio disk that you had had 1200 calls on it; at

16   least that was my understanding.

17         MR. COLE:  That was.  That's what I said before.  I

18   was mistaken.  There were a lot of duplicates that -- and

19   when it winnowed out, the number of calls, we've turned over

20   876.  We do anticipate that there may be in the near future

21   some dozens of additional calls, but we're not going to get

22   to 1200.  It's going to be substantially less than 1200.  I'm

23   thinking at this point -- I'm going to be surprised if we get

24   over 1,000 calls.  I think it will stay right at or under

25   1,000 audio calls.

1          THE COURT:  So then you're envisioning a larger

2    group of secondary calls that you're going to be providing

3    than you did last time we were together.  Last time we were

4    together, you indicated the disk had 1200 calls and that

5    there might be another 10 or 20 calls that would be trickling

6    in; but now you're saying that secondary group is more than

7    10 or 20?

8          MR. COLE:  Yeah, we think, instead, the first group

9    is much smaller than we anticipated, the second group's going

10   to be a little bit bigger.  And the reason for that, there

11   was a miscommunication that was largely my fault with the

12   agent; we were using different vocabularies talking about

13   different classes of calls.  We've straightened that out.

14   There's not going to be 1200 calls; there's just not going to

15   be.  There's going to be I think ultimately closer to a

16   thousand.

17         THE COURT:  Okay.  How many in the second group,

18   Mr. Cole?

19         MR. COLE:  We are anticipating about 110 to 115.

20   They're in decreasing -- candidly, in terms of planning

21   budgets or thinking about this, they're in decreasing

22   relevance to this case, but in an abundance of caution, we're

23   making them available.  Just so your Honor is aware, we think

24   that the 876 includes -- you know, really even that was

25   beyond probably what defense is going to find entirely

1    helpful, but we're providing it.  We have provided today --

2              THE COURT:  May I stop you there --

3              MR. COLE:  Yes.

4              THE COURT:  -- because last time we were together,

5    you indicated that of the 1200 calls you thought were on the

6    disk, about 120 had been defined as material.  Now you seem

7    to be saying there's a larger group that would be deemed

8    material.

9              MR. COLE:  No, no.  What I'm saying is that what we

10   did was we have given -- we have given them the verbatim --

11   partial or complete verbatim translations of the calls that

12   we deemed to be sort of the government's case-in-chief, the

13   material, most relevant matters, and that's about 120, 126.

14   We've provided those.

15             We've also today -- defense counsel today will

16   receive the -- what we discussed last time, which was the

17   segregated disk, so instead of having to pick through the 800

18   and some calls to find those 126, they will have a disk today

19   that is just the audio for those 126 phone calls that match

20   the verbatim translations they received.

21             Now, what I should have -- what I meant to

22   represent last time and hope I can make clear now is that

23   those are what the government deemed most relevant

24   case-in-chief calls.  The others -- the number kind of

25   spreads out there, and we're simply trying to be generous in

1   terms of Rule 16 in our view of it and in terms of what we

2   can make available in discovery from the audio intercepts.

3   As we discussed last time, I'm reluctant to pass my judgment

4   to the defense as to what they may find relevant, but that's

5   where it stands right now from the government's standpoint.

6           THE COURT:  Okay.  Now, you've indicated you have

7   about 126 intercepts that would be material from the

8   government's perspective and translate.  Didn't you have to

9   go through all of these intercepts though one by one to

10  determine whether it fell into the material pile or not?

11          MR. COLE:  Yes.  The -- is the Court's question if

12  there's summaries or translations for other calls; is that --

13          THE COURT:  Yes, that's where I'm ultimately

14  getting because if you had -- it seems to me you would have

15  to have a translation of either the entire intercept that you

16  deemed nonmaterial -- or a summary of it -- but in English so

17  that you could understand it.

18          MR. COLE:  We do not have verbatim translations for

19  -- when I say verbatim, I mean line-by-line, complete

20  verbatim translations of all these other calls.  There are

21  summaries, very -- perhaps similar to a T-3 case, there are,

22  you know, line sheets or summaries of calls.  We are working

23  now to make these available to the defense, but we do not

24  have them in a format that we are authorized to release at

25  this time.  And so we anticipate, your Honor, that we will

1   obtain the authority to release summaries, but we -- at this

2   time we can't commit to that on our own.  I hope to be able

3   to report to defense counsel soon the status of that.

4             THE COURT:  How much time would be necessary to

5   acquire authorization to release the summaries of the

6   additional calls that have been at least initially deemed

7   nonmaterial by the government?

8             MR. COLE:  We think we'll have an answer within two

9   or three weeks.  Now, I can tell you that after we get the --

10  assuming we get the affirmative answer, from the records

11  management standpoint, having them be passed over to us and

12  having been checked and passed over with any necessary

13  redactions is a little bit more cumbersome, but we'll know

14  and be able to tell defense counsel in I think two or three

15  weeks if we're in fact going to be able to make whatever

16  summary is available.  Some of these summaries are very

17  brief, but whatever summary we do have we would like to make

18  available; and I think we'll have an answer to defense

19  counsel within a few weeks on that.

20            THE COURT:  Okay.  Let's move on then.

21            MR. COLE:  Beyond that, your Honor, we have -- the

22  remaining discovery in the case that will still be coming is

23  really what I'd describe typical to any -- just about any

24  case you'd see in this courtroom.  It's going to be -- I'd be

25  surprised -- it will be, you know, document discovery, and I

1    would be surprised -- reports, witness interviews, et

2    cetera -- and I'd be surprised if it exceeds one ream of

3    paper total, probably much less than that.  And we are

4    continually in the case of course reviewing files and making

5    sure we're complying with discovery.  I just don't anticipate

6    a large volume beyond the audio.

7              We are going to be looking at some seized computer

8    media to see if there's anything off of that that needs to be

9    turned over in discovery.  We will provide that in electronic

10   form as soon as we determine that it's either Brady or Rule

11   16.  It's not voluminous either, your Honor.  There were

12   searches of the Shidaal Express, which was, you might

13   recall --

14             THE COURT:  Five or six boxes where the absence of

15   receipts you felt was --

16             MR. COLE:  Those have been made available --

17             THE COURT:  Okay.

18             MR. COLE:  -- and so -- yeah.  So, really, it's

19   just cleanup discovery that will not be voluminous.  I'm not

20   saying it won't be important if we find something that needs

21   to be turned over, it won't be -- from a budgeting standpoint

22   or from a time management standpoint, it's not going to be

23   voluminous discovery from here on out.

24             THE COURT:  When you say they've been made

25   available, the material from Shidaal Express, are you saying

1   that the original -- the original documentation in boxes have

2   been made available for inspection by counsel or has

3   everything been copied off and made available?  What --

4           MR. COLE:  What we've done is we gave the

5   electronic records that we -- the electronic spreadsheet or

6   database we gave over to defense counsel on disk.  The paper

7   receipts we've made available for inspection and for them to

8   determine whatever, if anything, they want to copy.  We don't

9   intend to copy all the receipts.  They're not standard size;

10  it would be very time-consuming to copy all the receipts for

11  no particular reason.  If defense counsel wants to make

12  arrangements to bring in a copy service, we'd be more than

13  happy to make them available for that reason.  Or if they

14  want to flag specific things, we could negotiate from there I

15  guess the copy issue.

16          THE COURT:  Anything else on discovery, Mr. Cole?

17          MR. COLE:  I don't think so, your Honor.

18          THE COURT:  Okay.  Let me ask counsel what their

19  concerns, if any, are with respect to discovery.  Mr. Sherif?

20          MR. SHERIF:  Yes, your Honor.  Before I start,

21  perhaps I could ask counsel how many conversations there are

22  overall because it seems like the number has been reduced

23  this time.  So I just want to know how many they have and how

24  many are they turning over.  I think that's a fair question

25  to ask them at this stage so we don't --

1    THE COURT:  Well, I think it is fair, and I'll

2    certainly -- you know, you have good working relationship; I

3    assume you --

4    MR. SHERIF:  Yes, we do.

5    THE COURT:  -- can confer with Mr. Cole, so let Mr.

6    Cole -- discuss that with Mr. Cole unless Mr. Cole has a

7    ready answer at this point to the question.

8    MR. COLE:  You know, your Honor, I'd rather discuss

9    it with him off line just to make sure I don't get it wrong.

10   I think I know.  There are -- I will tell your Honor that

11   there are a great number more audio intercepts that we are

12   turning over in this case, that we are -- there are many

13   audio intercepts that are not pertinent or relevant to this

14   matter and that we do not intend to turn over, and that is

15   absolutely true; it's a number that would dwarf the number

16   that we're turning over.  And I can discuss that more with

17   Mr. Sherif out of court.  But Rule 16 of course it refers to

18   relevant audio recordings, not just audio recordings of a

19   defendant, and so that's part of why I described it -- the

20   number we are giving, we feel we've gone even beyond -- just

21   to make sure there's a buffer there -- beyond Rule 16.  We

22   have gone beyond where we think is strictly relevant even

23   under Rule 16 and provided hundreds of additional calls on

24   discovery to make sure we're complying with Rule 16 and

25   Brady, but --

1              THE COURT:  Well, I'm a little unclear now.  Does

2     your -- does your number of 126 intercepts, is that what

3     you're talking about is going above and beyond or is the

4     figure of 126 plus some additional number what you've turned

5     over?  In other words -- and where does the 876 fit in?

6              MR. COLE:  Right.  So let me back up.  If we take

7     the 876 we've turned over, and assuming, as I mentioned

8     earlier, we get ultimately to a number around a thousand,

9     just assuming, a rough figure, we have 126 that we as the

10    government deemed relevant and important enough to go to the

11    time and expense of getting verbatim translations from

12    Somali, which is a burdensome process, prepared.

13             THE COURT:  And put on a separate disk.

14             MR. COLE:  And put on a separate disk for the

15    defense.  We certainly agree that there are other calls that

16    are relevant -- not important enough to warrant, in our view,

17    preparing verbatim translations but relevant under Rule 16 or

18    Brady and have turned those over to the defense.  Exactly how

19    many between 126 and 1,000 a defense attorney would agree

20    with me as to, you know, where the line is on what's

21    relevant, I can't give you an exact number; I just know that

22    the approach we've taken is to go beyond -- I've reviewed the

23    summaries, and I have attempted to go far beyond ones that I

24    deem relevant under Rule 16 or Brady, to the tune of hundreds

25    of calls beyond what I deem relevant but have nevertheless,

1   since we have a summary for them, since we have -- since we

2   can make them available, we will, and that's what we've done.

3   But there are many thousands of calls that simply are not

4   relevant to this matter, that are not -- that we don't intend

5   to produce.

6              THE COURT:  Okay.  Mr. Sherif, hopefully that is

7   information that provides additional assistance and guidance

8   for you, and I'm sure you'll be able to talk to Mr. Cole

9   about that.  Have you had an opportunity to review what has

10  been provided to you thus far?

11             MR. SHERIF:  Yes, we have, your Honor.

12             THE COURT:  All right.  Have you reviewed the 126

13  on the separate disk?

14             MR. SHERIF:  Yes, I have.

15             THE COURT:  And have you reviewed the other number

16  of conversations over and above the 126 with marginal

17  relevance?

18             MR. SHERIF:  No, I have not.

19             THE COURT:  Okay.  I would think counsel would need

20  to do that just to get the spirit of what's being provided to

21  see if anything else really does need to be provided, and I'm

22  confident you can work with Mr. Cole on that and anything

23  that's reasonably requested would be provided.  Okay.  Was

24  there anything else you had, Mr. Sherif?

25             MR. SHERIF:  No, your Honor.

 1          THE COURT:  Okay.  Mr. Geller, anything on --

 2          MR. GELLER:  Yes, your Honor.  I would just like

 3  to --

 4          THE COURT:  -- discovery, on discovery?

 5          MR. GELLER:  Yes, your Honor.

 6          THE CLERK:  Okay.

 7          MR. GELLER:  Well, it's on discovery, and I don't

 8  know if the Court wants me to address budgetary concerns

 9  right --

10          THE COURT:  No, I don't.  Right now just discovery.

11  I'm just trying to do this in an orderly way.

12          MR. GELLER:  No, thank you, your Honor.

13          THE COURT:  Okay.  Very good.  Mr. Troiano?

14          MR. TROIANO:  Yes, your Honor.  I had made a

15  request of my client's statements made before or after his

16  arrest.  I have received his postarrest statement.  I know

17  there are at least three other prearrest statements, and I'm

18  not sure what the position the government's going to take on

19  whether they're relevant or discoverable under the Rule 16,

20  but we would ask that the Court be provided those statements

21  in camera to review and not have to accept the government's

22  representations on whether they're relevant because clearly

23  if they were talking to my client, they're relevant to me.

24          THE COURT:  Well, on that issue, Mr. Cole, I think

25  the last time we were together, you indicated that 302s would

1   be provided, the statements of defendants would be provided,

2   and other materials as well, and I think you indicated at the

3   time it would be far down the road.  But in terms of -- in

4   terms of what's being provided to the defense, why -- are you

5   providing all the statements of defendants?

6           MR. COLE:  We -- I anticipate that with the

7   statements he's talking about, his client's own statements

8   that were made to law enforcement prior --

9           THE COURT:  Yes.

10          MR. COLE:  -- that we will be turning those over.

11  We'll look at those -- Ms. Han and I will look at those in

12  the next two weeks and likely will turn them all over to Mr.

13  Troiano.  If we don't, we'll make him of aware of the number

14  we didn't so that we can raise this issue with your Honor and

15  certainly address it.

16          THE COURT:  Right.  I would think all statements

17  made by the defendants in connection with this

18  investigation -- that is, interviews and statements made to

19  the authorities -- should be provided to defense counsel.

20  And if, as you say, there's something that's going over that

21  you're not providing, then you'll need to at the earliest

22  possible time provide notice of that to Mr. Troiano and then

23  submit those materials in camera so that I can --

24          MR. COLE:  Yes, your Honor.

25          THE COURT:  -- review them and make appropriate

1  orders.  Okay.

2          MR. TROIANO:  That's all.

3          THE COURT:  All right.  Ms. Hanover?

4          MS. HANOVER:  Yes, your Honor.  I did receive an

5  audio recording of my client's statements after he was

6  arrested as well.  During the discussion there was talk by

7  agents about a few other money transfer companies that may

8  have records that have not been around over to defense

9  counsel yet as well -- I know a Wells Fargo account was

10 mentioned as well, but I've not seen that yet in discovery,

11 and I was wondering if the government would be turning those

12 over anytime soon.

13         THE COURT:  Even assuming that they're aware of

14 them or have them.

15         MS. HANOVER:  I'm assuming they're aware because

16 the agents were discussing them.

17         THE COURT:  Okay.  All right.  Mr. Cole?

18         MR. COLE:  Yes.  There is a -- we will be turning

19 over -- some of the additional discovery will be some Wells

20 Fargo bank account records for a Wells Fargo bank account, so

21 Ms. Hanover and the other defense counsel will get those.

22 Again, they're not voluminous.  We'll turn those over.  And I

23 don't know what other money transmitting businesses she may

24 be referring to, but I can discuss that with her off line as

25 well --

1          THE COURT:  Please.

2          MR. COLE:  -- and if there are records in our

3    possession, I'm sure we'll turn those over.

4          THE COURT:  Okay.  Very good.

5          MS. HANOVER:  And additionally I was wondering if

6    the government would be turning over actual telephone company

7    records of phone calls being made from the various telephones

8    that are involved in this.

9          MR. COLE:  We will look at the -- yes, there's

10   subscriber information that will be provided for various

11   phone numbers as well as toll records; to the extent we have

12   them available, that could be provided as well.  So we will

13   be looking at that, and that will go over in the ordinary

14   course for sure, your Honor.

15         THE COURT:  Okay.  Ms. Hanover, anything further?

16         MS. HANOVER:  Off the top of my head, that's what I

17   had, your Honor.  Thank you.

18         THE COURT:  Okay.  Thank you.  All right.

19         MR. SHERIF:  Your Honor, I have one more issue with

20   regards to discovery.

21         THE COURT:  Please.

22         MR. SHERIF:  Your Honor, the issue is that my

23   client needs to get ahold of and read the verbatims that have

24   been provided; however, they're subject to the protective

25   order, and Nellie Klein at MCC could not assure me that

 1    somehow they were not going to get into the hands of others

 2    at MCC.  Obviously he doesn't have any kind of reasonable

 3    privacy there, so I was wondering how --

 4            THE COURT:  Well, that's not really a

 5    discovery-related matter vis-a-vis the government.  We can

 6    work on that if necessary; if that's going to be an issue,

 7    then I can work with MCC personnel to address any issue that

 8    you've just raised.

 9            MR. SHERIF:  Fair enough.  Thank you.

10            THE COURT:  Yes.  Okay.  Then moving on next to the

11    next issue.  Mr. Cole, over and above discovery, what -- any

12    additional issues that you have relative to the protective

13    order that's been signed?  The case is has been declared

14    complex.  Any other matters that need to be addressed at this

15    time?

16            MR. COLE:  No, your Honor, just that -- that one

17    issue.  I know we filed a motion about the Speedy Trial Act

18    and excluding time until our next -- whenever our next

19    hearing is going to be.  But has your Honor already addressed

20    that?  We had filed that, and I don't think we've had a

21    hearing on that unless your court handled it on the papers.

22            THE COURT:  On the issue of what now?  The

23    protective order's been --

24            MR. COLE:  The protective order's all squared away;

25    there's no issue.

1              THE COURT:  You're talking about complexity,

2    declaration of complexity?

3              MR. COLE:  Yeah.  We filed a joint motion --

4              THE COURT:  I know.  Mr. Sherif never filed any

5    opposition.  He was given a -- I assume -- I assume that

6    the -- I had suggested earlier that counsel enter into a

7    stipulation setting forth the grounds for a declaration of

8    complexity or, if there were no agreement on that, then we'd

9    set the matter for hearing.  Counsel was given a date for

10   filing any opposition.  I believe your position is at this

11   point, Mr. Sherif, you don't oppose a declaration of

12   complexity.

13             MR. SHERIF:  Well, your Honor, my position may

14   change, but I've talked to counsel and have let him know

15   that -- I didn't want to shoot in the dark; I wanted to get

16   the discovery and see after reviewing it if it was in fact

17   complex or not.  I have the discovery now, and given two,

18   three weeks, I think I can make a determination on that issue

19   together with my client of course.

20             THE COURT:  Okay.  I'm happy to rule at any time on

21   this issue, but if you'd like to have more time such that you

22   could enter into an agreement, into a stipulation, that would

23   be even better.  So if you're asking for additional time, we

24   can certainly address that at the next hearing date.  I know

25   you've filed no opposition up to this point.

1          MR. SHERIF:  That's correct.

2          THE COURT:  All right.  We'll just trail that

3    matter then.  Obviously any time that's been -- during which

4    motions have been filed by any defendant tolls the Speedy

5    Trial Act, and that will certainly happen until the next

6    motion hearing because of the pendency of motions.

7    Anything -- anything further from the government as we

8    continue to monitor the case, Mr. Cole?

9          MR. COLE:  No, thank you, your Honor.

10         THE COURT:  Okay.  Mr. Sherif, anything further we

11   need to address at this point?

12         MR. SHERIF:  No, your Honor.

13         THE COURT:  Mr. Geller?

14         MR. GELLER:  Yeah, I want to address concerns I

15   have based on Mr. Moalin's incarceration at CCA and time

16   constraints that I've already experienced, problems in regard

17   to that with review of the discovery.  So I don't know if the

18   Court wants me to address that at this time or not.

19         THE COURT:  Let's not address it right now.  I

20   think that might be more appropriately addressed in a request

21   that you might file, an application you might file as to

22   exactly what your needs are and how often you need to have

23   access to Mr. Moalin and what's being provided, and then

24   perhaps I can work with you on that and involve MCC.  I don't

25   know that the government has any standing to address that

1   issue, Mr. Geller.

2           MR. GELLER:  Well, I'm not sure that the government

3   doesn't because -- I don't know if it was in this case or in

4   another case where I was led to believe that the government

5   does have some power to try and move people, and one of the

6   things -- I know that we're dealing with budgetary

7   constraints, and I was going to ask the Court for further

8   time to submit a budget because -- maybe I should address

9   that at this point because we're talking about discovery that

10  hasn't yet been disseminated, and we don't know how much more

11  -- we have a pretty good idea from what was stated here on

12  the record, but we don't have -- we don't have an idea of

13  exactly when, although we don't -- I know at this point that

14  he's saying that he's going to turn over more discovery after

15  the deadline that's been previously set to submit a budget,

16  so I'm going to ask for an extension with respect to the

17  submission of a budget based on the fact that there's a lot

18  of unknown material.

19          THE COURT:  You're joining about three or four

20  different issues here, aren't you?  Aren't you talking about

21  discovery, you're talking about submission of a budget, which

22  is something that you're going to be getting into very

23  shortly with Ms. Rutledge, you're talking about -- you're

24  talking about placement of your client; you got a lot of

25  moving parts here.  So aside from this issue that you've --

1    let me ask you this:  Have you talked to Mr. Cole?  I mean to

2    the extent you think the government has ability to move

3    people around, have you talked to Mr. Cole?

4            MR. GELLER:  I brought it up, and I've also, based

5    upon the Court's suggestion, spoken with -- I left a message

6    with Nellie Klein and she's left a message with me and she

7    said she was working on it, and so I think that that's -- you

8    know, I don't know if -- maybe we can just ask Mr. Cole if he

9    has any power over that.

10           THE COURT:  Well, have you asked him that when

11   you've been discussing it?

12           MR. GELLER:  We discussed it, and he said he was

13   going to look into that.

14           THE COURT:  Okay.  I think he should.  I don't want

15   to take up any court time on this issue, but I think what you

16   bring up is a salient issue; I mean if you're not getting

17   access to your client, then that's a -- you know, that's a

18   circumstance that we need to work on.

19           MR. GELLER:  Yeah.  And I'm not, so I think --

20           THE COURT:  Talk to Mr. Cole.  I have some concern

21   about how limited Mr. Cole's ability to influence BOP on the

22   placement of these gentlemen might be, but I'm certainly

23   available to discuss any of these issues informally if we

24   need to --

25           MR. GELLER:  Thank you, your Honor.

```
1              THE COURT:  -- address them and to make sure that
2     you're having sufficient access to your client.
3              MR. GELLER:  Yes.  Thank you.
4              THE COURT:  All right.  Thank you.  Mr. Troiano,
5     anything else?
6              MR. TROIANO:  No, your Honor.
7              THE COURT:  Okay.  Ms. Hanover, anything else?
8              MS. HANOVER:  No, your Honor.
9              THE COURT:  Okay.  I do want to set the next
10    hearing date so that we can continue to monitor the
11    voluminous discovery in this case, discuss any further
12    concerns that anyone might have.  I do encourage you in the
13    meantime, however, obviously to be working on this issue that
14    you've raised, Mr. Geller, because I think it's important,
15    and then if circumstances need to be addressed, then they
16    will be, but I want to give you an opportunity to work with
17    Mr. Cole and work with Nellie Klein further.  Okay.
18             MR. GELLER:  Thank you.
19             THE COURT:  Okay.  Very good.  All right.  What's
20    your suggestion -- what's your recommendation as to the
21    setting of the next hearing date, Mr. Cole?
22             MR. COLE:  We're recommending -- I talked to at
23    least Mr. Troiano and Mr. Geller about this in connection
24    with the motion concerning the Speedy Trial, and we were
25    proposing a status hearing in late April or early May.
```

1          THE COURT:  Okay.  Mr. Sherif?

2          MR. SHERIF:  Your Honor, I think that's too far

3    away.  I think perhaps we should just set like a 60-day

4    status hearing and see where we are.

5          THE COURT:  Okay.  Mr. Geller, 60 days?

6          MR. GELLER:  Well, I share Mr. Cole's belief, but

7    I'll submit that.

8          THE COURT:  Okay.  Mr. Troiano?

9          MR. TROIANO:  I agree with what Mr. Cole suggests

10   from my understanding of the complexity issues that it should

11   be dealt with on a hearing-by-hearing basis, and I think that

12   that would give us a bit of time to digest the case and know

13   where we stand, and then the next hearing after that would

14   have more meaning to it.

15         THE COURT:  Ms. Hanover?

16         MS. HANOVER:  Your Honor, that's fine.  Any date

17   the Court sets I'm fine with.

18         THE COURT:  Okay.  Let me take a look here at the

19   calendar.  We'll set this for a Thursday.  We're basically

20   toward the end of January at this point.  We'll set something

21   for early April.  April 7, Thursday, April 7, 9 a.m., your

22   next status hearing.  All motions are continued -- all

23   pending motions are continued to that date.  As a result time

24   is excludable under the Speedy Trial Act between today and

25   April 7.

1              I'm going to ask counsel to remain to meet with
2    Ms. Rutledge, if you would, please.  I am fully expecting by
3    that next hearing date you would have received your response
4    that you need, Mr. Cole, to release the summaries of the
5    additional intercepts over and above the 126 that you've
6    designated as material and have been -- those which have been
7    translated.  And also, furthermore, that if the answer is
8    yes, you may -- you are authorized to release those
9    summaries, that they will have been released sufficiently in
10   advance of the next hearing date of April 9 such that if
11   there are any issues with respect to those summaries, we can
12   address those as well.  So I do want to make a good bit of
13   headway with respect to that particular issue.  I'm fully
14   expecting that the Wells Fargo records will have been either
15   provided or made available by that time.  And you've
16   indicated that the five or six boxes from Shidaal Express
17   have already been made available, is that correct, for
18   inspection?
19             MR. COLE:  Yes.  We let counsel know pretty much
20   right when the case was indicted they could arrange an
21   appointment to inspect those at their pleasure.
22             THE COURT:  Okay.  Very good.  Okay.  Those are the
23   areas I think we really need to concentrate on.  And feel
24   free to contact chambers if we need to set up an in camera.
25   I know you'll have your statements by that time, Mr. Troiano,

1    or the government will have provided any statements to which

2    you're not privy to me for in camera inspection.  But I'm

3    expecting that the statements of defendants themselves in

4    connection with this case with the -- any interviews or

5    statements to authorities will have been provided.  But as I

6    started to say, if anything -- if there's a need to address

7    any of the matters particularly of the type you mention, Mr.

8    Geller, don't hesitate to contact chambers after you've

9    talked to Mr. Cole, and we'll certainly be able to meet on

10   short notice to address those types of issues.

11          MR. GELLER:  Very well, because what I plan to do

12   is speak with Mr. Cole this morning, and if we don't have

13   something -- I should point out, and I will, that it's taken

14   me maybe six phone calls and six weeks to play telephone tag

15   with Nellie Klein and accomplish nothing, and also I

16   attempted the same thing with the marshal's service, with the

17   warden at CCA, and I'm getting nowhere, and I'm getting very

18   frustrated.

19          THE COURT:  Okay.  But I would just ask one thing.

20   If we are going to need to meet in an in camera setting on a

21   chambers conference a short notice, that before you do that,

22   that you put something in writing, some kind of an

23   application where you tell me exactly what your experience

24   has been, exactly what you feel would be sufficient for your

25   client's needs so that if I get involved, I know what I'm

1   dealing with, okay?

2          MR. GELLER:  Very well.  Thank you, your Honor.

3          THE COURT:  I can talk to Nellie Klein, and I can

4   indicate that you feel these are the needs for you and your

5   client, this is what needs to be done, and it will just

6   facilitate I think the communication.

7          MR. GELLER:  Well, one of the things I think that I

8   should point out -- and it's very brief -- is that she

9   indicated to me -- Ms. Klein indicated to me that she needed

10  to speak with the warden's office to see if their internal

11  procedures would allow him to be at the MCC inasmuch as

12  there's a co-defendant that's at the MCC, and I don't know --

13  I don't believe -- I don't know if the co-defendant is in

14  special housing or not, and the special housing -- she said

15  that she felt that he wasn't going -- in need of special

16  housing but there are rules and regulations -- there's just a

17  lot of red tape.  So I can give the Court a rough idea, but

18  I'm not sure on paper I'll be able to tell the Court a lot

19  more about it.

20         THE COURT:  Well, all I'm saying is that whatever

21  requests you have should ultimately be made in the form of an

22  application; I'd appreciate it being made in writing so that

23  I know exactly what I'm dealing with, what the issues are so

24  that they can be properly addressed with Nellie Klein.  This

25  would all be after you've had a chance to talk to Mr. Cole to

1    the extent you feel he may have some ability here to optimize

2    or, if not optimize, improve your situation with respect to

3    access.

4                   MR. GELLER:  Very well.  Are we going to on the

5    record address the budgetary concerns --

6                   THE COURT:  No.

7                   MR. GELLER:  -- because one of the things -- I

8    don't know if the Court would be getting involved in this

9    either, but I think the Court should, with respect to the

10   deadline we have to submit the first budget --

11                  THE COURT:  That's not a concern that needs to be

12   addressed on the record at this point --

13                  MR. GELLER:  Very well, your Honor.

14                  THE COURT:  -- really.  I think you'll understand

15   why.  Okay.  Very good.  Okay then.  We will see you next on

16   April 9 if not -- is it April 9 or April 7?  April 7.  Thank

17   you.  April 7 at 9 a.m.  And if counsel could remain behind

18   for discussions with Ms. Rutledge.  Thank you.

19          (The proceedings were concluded.)

20

21

22

23

24

25

Certificate of Reporter

I hereby certify that I am a duly appointed, qualified, and acting Official Court Reporter for the United States District Court; that the foregoing is a true and correct transcript of the proceedings had in the mentioned cause on the date or dates listed on the title page of the transcript; and that the format used herein complies with the rules and requirements of the United States Judicial Conference.

Dated February 25, 2014 at San Diego, California.

/s/ Debra M. Henson  (electronic)
Debra M. Henson
Official Court Reporter