1                    United States District Court

2                   Southern District of California

3

4    UNITED STATES OF AMERICA,        )
                                      )
5                    Plaintiff,       )
                                      )
6       vs.                           ) Case No. 10-CR-4246 JM
                                      )
7    BASAALY SAEED MOALIN,            ) Wednesday, December 12, 2012
     MOHAMAD MOHAMAD MOHAMUD          ) Telephonic Status Hearing
8    ISSA DOREH,                      )
     AHMED NASIR TAALIL MOHAMUD,      )
9                                     )
                     Defendants.      )
10   _____ )

11

12              Before the Honorable Jeffrey T. Miller
                    United States District Judge

13

14

15

16

17

18

19

20

21   Official Court Reporter: Debra M. Henson, CSR, RPR
                              U.S. Courthouse
22                            221 W. Broadway, Suite 5190
                              San Diego, CA  92101
23                            (619) 238-4538

24

25              Record produced by stenographic reporter

```
 1   Appearances

 2   For the Government:        Laura E. Duffy
                                UNITED STATES ATTORNEY
 3                              William P. Cole
                                Caroline P. Han
 4                              ASSISTANT U.S. ATTORNEYS
                                Steven Ward, Trial Attorney
 5                              U.S. DEPARTMENT OF JUSTICE
                                880 Front Street, Suite 6293
 6                              San Diego, CA  92101

 7   For the Defendants:
     (Mr. Moalin)              Joshua L. Dratel, Esq.
 8                              Alice Fontier, Esq.
                                OFFICE OF JOSHUA L. DRATEL
 9                              2 Wall Street, Third Floor
                                New York, NY  10005
10
     (Mr. M. Mohamud)          Linda Moreno, Esq.
11                              LINDA MORENO, P.A.
                                P.O. Box 10985
12                              Tampa, FL  33679

13   (Mr. Doreh)               Ahmed Ghappour, Esq.
                                LAW OFFICES OF AHMED GHAPPOUR
14                              P.O. Box 20367
                                Seattle, WA  98102
15
     (Mr. A. Mohamud)          Thomas A. Durkin, Esq.
16                              DURKIN & ROBERTS
                                2446 N. Clark Street
17                              Chicago, IL  60614

18

19

20

21

22

23

24

25
```

1          San Diego, California - Wednesday, December 12, 2012

2          (The following telephonic proceedings were in chambers.

3    Defendants' presence was waived.)

4          THE CLERK:  Matter number 1 on calendar,

5    10-CR-4246, USA versus Basaaly Saeed, Mohamad Mohamad

6    Mohamud, Issa Doreh, Ahmed Nasir Taalil Mohamud, for a status

7    conference.

8          THE COURT:  Good morning, counsel.

9          (Counsel responded.)

10         THE COURT:  Okay.  May I have the appearances,

11   please, on the record.  As Gaby just indicated, each time you

12   speak, we would appreciate it if you could state your name so

13   that the record is absolutely clear.

14         MR. COLE:  William Cole for the United States.

15   Also entering an appearance for Caroline Han and Steve Ward

16   for the United States.

17         THE COURT:  Thank you.

18         MR. DRATEL:  Joshua Dratel for Mr. Moalin.  Good

19   afternoon, your Honor -- or good morning.

20         THE COURT:  Good morning.

21         MS. MORENO:   Linda Moreno on behalf of

22   Mr. Mohamud.

23         THE COURT:  Okay.  Thank you.

24         MR. GHAPPOUR:  Ahmed Ghappour on behalf of Mr. Issa

25   Doreh.

1          THE COURT:  Thank you.

2          MR. DURKIN:  Tom Durkin on behalf of Ahmed Nasir

3     Taalil Mohamud.

4          THE COURT:  Thank you.  Okay.  I think that would

5     be everyone.  Thank you for all being available for this

6     status.  I don't plan on discussing anything other than

7     scheduling and incidental matters.  I assume that each of the

8     defense attorneys are willing to waive their client's

9     presence on the record; is that correct, counsel?

10         MS. MORENO:  On behalf of Mr. Mohamud, yes, your

11    Honor, so waived.

12         MR. DRATEL:  For Mr. Moalin, yes, your Honor.

13         MR. GHAPPOUR:  As for Mr. Doreh as well.

14         MR. DURKIN:  As for Nasir Taalil Mohamud as well.

15         THE COURT:  And -- okay.  Mr. Ghappour, I don't

16    know that I heard you.

17         MR. GHAPPOUR:  Yes, on behalf of Mr. Doreh as well.

18         THE COURT:  Okay.  Thanks very much.  Of course we

19    have a trial date of January 28, we have the dates leading up

20    to that.  Just to review that, our date set for motions in

21    limine to be heard would be January 10 at 9 a.m. with motions

22    to be filed by December 20, no later than December 20, and

23    oppositions no later than December 27.  If there's a

24    statement of nonopposition, that is, if a particular party's

25    filed a motion to which there is no opposition, then please

1  have -- please state your nonopposition so that no time is

2  spent working up something that doesn't need to be worked up.

3  And, finally, the reply is due by January 3, if there is any

4  reply to be filed with respect to a motion in limine.  There

5  are no other motions pending at this point.

6         I am interested, if not concerned, about the pace

7  of the preparation of transcripts following the depositions

8  that were taken in Djibouti.  I would like to know when those

9  transcripts would be prepared and ready to be submitted to

10  the Court to work out, to rule upon any issues and/or

11  objections that were raised; I think that's the first order

12  of business I'd like to address.  So, Mr. Cole, let me start

13  with you, sir.  What are you -- what are your thoughts

14  concerning preparation of deposition transcripts and the

15  like?

16         MR. COLE:  Well, your Honor, we sent the recordings

17  to the defense counsel, and our -- our view is that they were

18  going to take care of making the transcripts.  These are

19  their witnesses for their case, and so we sent those to them.

20  We offered to agree on spellings if there was -- because the

21  court reporter's going to have a struggle with Somali

22  words -- with spellings; we can all agree on a set of

23  spellings for the transcripts.  But we sort of just turned

24  that over to the defense.

25         THE COURT:  Okay.  You haven't been monitoring that

1   at all I assume then, Mr. Cole; you're just leaving this up

2   to the defense.  Is that correct?

3            MR. COLE:  Well, we sent them the disks and haven't

4   heard back -- well, let them know that we assumed that they'd

5   be taking care of the transcripts and hadn't heard anything

6   otherwise.  So I guess that's where it stands.

7            MR. DRATEL:  Your Honor, this is Mr. Dratel.  I

8   don't know if Ms. Fontier has joined --

9            MS. MORENO:  No, no.

10           MR. DRATEL:  -- the conference.  No?  Okay.  Well,

11  we got the -- obviously -- I mean there were two versions of

12  the videos, one of which was complete, one of which was not

13  complete because of a malfunction on one of the cameras for

14  part of a witness.  So when we got the complete -- we got the

15  complete one I think two or three days ago, and Ms. Fontier's

16  sent that out already to a transcriber.  We were told it

17  would be about a three to five -- three- to five-day process

18  to get them transcribed.  So it's conceivable by the end of

19  this week we'll have them and I think certainly by the

20  beginning of next week, and then I think what we should do --

21  I agree with the Court that what we should do is set a

22  schedule for presenting to the Court each side -- essentially

23  a transcript that identifies each of the objections that the

24  parties wish to make.  Some of them, just in terms of what

25  happened during the depositions, some of the objections may

1  have been obviated by subsequent questioning.  So, for

2  example, if there was a foundation objection, there were

3  attempts to cure those kinds of objections; they may no

4  longer be viable, and it's up to each party I guess to

5  determine that.  But the point being is that just looking at

6  the transcript doesn't necessarily tell you where the

7  objections are.  I think it's incumbent upon each of the

8  parties to alert the Court as to which they are still

9  interposing and then to provide a basis for the objection and

10  for the other party, to the extent they feel necessary, to

11  provide a basis for opposing the objection for the Court.

12  Some of that could be done in a -- some of them are -- some

13  of these depositions -- some of the objections are repetitive

14  not so much with respect to -- sometimes with each witness,

15  sometimes with a series of witnesses, so some of them could

16  be handled in -- in a basket as opposed to each separate

17  objection I think.  I think that's a way to look at it.  I

18  don't know if the government agrees with that, but that's the

19  way I've been viewing this.

20          THE COURT:  Well, okay.  And I assume that the

21  other defense attorneys on the line agree with you, Mr.

22  Dratel.  I'm not hearing anything to the contrary.  Let me --

23  let me indicate what my past practice has been when it comes

24  to reviewing deposition testimony that will be coming in.  I

25  realize that these are videotaped depositions, and so

1    ultimately the -- those parts of the deposition testimony

2    that will come in need to be synced up with the video

3    portions of the corresponding video of a deponent.

4           Mr. Cole, will there -- I know these are not your

5    witnesses and all, but it may be that you're going to be

6    wanting to play some portions of these depositions, and is

7    there an agreed-upon system for displaying what will be

8    played before the jury?  For example, do you have -- I don't

9    know if you've even discussed this, but do you have something

10   akin to a Sanctions software program?

11          MR. COLE:  We will -- your Honor, we will have a

12   Sanction-based presentation system in the courtroom, and so

13   certainly the equipment will be there.  However, we were not

14   planning on syncing all the depositions.  I don't know --

15   since these are in English, I don't know if the defense would

16   have to have a scrolling transcript to play them.  I don't

17   know if the defense has thought about that or just -- plans

18   just to play excerpts or -- just to play parts of them

19   without a scrolling transcript or if they want to have either

20   a scrolling or hard copy transcript with the video when it

21   plays.  We -- I don't know what their intention is in that

22   regard.

23          To the extent that we present -- to the extent that

24   we present our own cross-examination I guess, or parts of our

25   cross-examination, we'll take responsibility for that.  I

1   guess we need to work with the defense and talk that through.

2   We don't -- we don't plan on syncing the entire -- the

3   entirety of all 16 hours of depositions just because from a

4   workload standpoint, that would just be an incredible amount

5   of work to sync the transcripts of that -- to that extent.

6          THE COURT:  What I was thinking of -- what I was

7   thinking of would be to sync those portions of the transcript

8   that will be ultimately played -- I realize you have 16 hours

9   of depositions, but let's say -- let's say only, ultimately,

10  you know, a quarter of all of that will be played jointly by

11  both sides, so let's say there's four hours ultimately so

12  that the four hours or, if it's any larger period of time,

13  can be identified after objections are ruled upon.  The

14  parties know what deposition testimony will be introduced by

15  either side, and then you can have the -- you can have the

16  rolling transcript in your Sanctions-based program presenting

17  that for the jury.  And I was assuming that the parties would

18  want to have the corresponding video of the deponent so that

19  the jury could see the deponent actually testifying for

20  the --

21          MR. COLE:  Yes, I was -- yes, your Honor.  I was

22  assuming that that in fact would be -- the primary evidence

23  would be, of course, in English would be the video, the video

24  and audio; the jury would hear that.  And then if a party --

25  if a party desired to have the demonstrative, the scrolling

1    transcript just as demonstrative evidence to help the jury,

2    that they would prepare that and have that ready to go.  We

3    certainly will do that for anything we want to present.  I

4    just -- my preference would be though that the United States

5    not take responsibility for -- for preparing transcripts or

6    seeking transcripts for something the defense might want to

7    present.  They're welcome to use our projector and courtroom

8    presentation, you know, equipment they can plug their laptop

9    into, but I think each side should decide -- video of the

10   audio is the evidence, and if a certain side wants to prepare

11   a demonstrative to go along with it, either scrolling or not,

12   I just would request that both sides be responsible for their

13   own.

14             THE COURT:  Well, that's -- sure, ultimately that

15   is what ultimately should happen; the defense shouldn't be

16   responsible for anything the government is doing, and the

17   government shouldn't be, quote, unquote, responsible for

18   anything the defense is doing.  I just want to make sure that

19   whatever ultimately is going to be presented be presented

20   seamlessly, that is, after the objections have been ruled

21   upon, and with whatever type of presentation one particular

22   side wants to utilize so that we don't have any breakdown in

23   that part of it and that we don't have any loss of court

24   time, jury time, that we can just keep rolling along, so to

25   speak.

1          MR. COLE:  Yes, your Honor.

2          MR. DRATEL:  Your Honor?

3          THE COURT:  Yes?

4          MR. DRATEL:  This is Mr. Dratel again.  Couple

5    things.  One is we were not anticipating a synced

6    presentation because the video is pretty clear and the

7    translation is there right on the video, so -- and when we've

8    done these -- when I've done these before, it has not been

9    with a -- with a synced presentation.  It's not -- and these

10   are not like depositions in the context of a civil case.  I

11   think that both parties approached it as direct and cross as

12   you would find at a trial, so I don't know that we're going

13   to be whittling it down so dramatically other than what the

14   objections are to the extent that they're sustained.

15          The other is that -- I agree with Mr. Cole that

16   it's a -- to do the syncing is an extraordinary task here,

17   extraordinarily expensive in a situation where the trip to

18   Djibouti was extraordinarily expensive to begin with, and I

19   just don't know that it's going to be done.  But, you know,

20   we were planning to rely on the video just as we have in all

21   the other cases in which I've used, you know, Rule 16

22   depositions, so I don't think that that's going to be an

23   impediment to the jury getting the best evidence or being

24   able to absorb it.

25          THE COURT:  Mr. Dratel, let me interrupt for just a

1    moment.

2            MR. DRATEL:  Yes.

3            THE COURT:  What you just described to me at the

4    beginning of your last statement is fine as far as I'm

5    concerned.

6            MR. DRATEL:  Okay.

7            THE COURT:  You're going to have the video, and

8    you're going to have the translated portion of the language

9    spoken side by side as the --

10           MR. DRATEL:  No, no, it's not side by side, your

11   Honor.  It's on the video.  We had a translator there.  So in

12   other words, just like we'd be in court, a question is asked,

13   it is translated, the witness answers, it's translated back

14   to the party.

15           THE COURT:  That's fine as well.  That's -- I have

16   know no problem with that type of presentation.  I think that

17   would be perfectly appropriate.

18           MR. DRATEL:  Thank you.

19           THE COURT:  And if the government wants to use

20   something that's a little more sophisticated, then they're

21   certainly able to do so.

22           MR. COLE:  And we will -- just to confirm so the

23   defense does know -- we will have a setup there so all

24   they'll need to do is have what they want to play on their

25   laptop and that they can plug in.  So they don't have to

1   worry about bringing a second set of projectors or -- or

2   anything like that.

3          MR. DRATEL:  We appreciate that.

4          THE COURT:  Okay.  In terms of objections, working

5   out any issues that need to be worked out for the

6   depositions, the way I have done it in the past is for the

7   parties to submit a deposition transcript to me and with each

8   party submitting a list of objected-to testimony.  So you'd

9   have basically two columns.  In the first column you'd have

10  the page and line numbers of the objected-to testimony, and

11  in the second column, you would have the objection or

12  objections to that particular excerpt of testimony.  And at

13  the same time, I think that if you could color code the

14  testimony that is in issue, that would be appreciated as

15  well.

16         The way I've done it in the past, I have

17  basically -- I'm working with one transcript and three

18  different color codes.  You might use green, for example, for

19  that testimony that both sides agree should be -- should be

20  read to the jury and which will be read to the jury.  I would

21  appreciate it if you can reduce that down.  I don't know that

22  it's -- you may want more than four hours, but you may not

23  want 16; you know what I'm saying?

24         MR. COLE:  Correct.

25         THE COURT:  So where it can be efficiently reduced,

1    then it should be reduced.  And what both sides are proposing

2    or not objecting to which is going to be read can be

3    highlighted in green, and then pick your respective colors

4    for any other deposition testimony which is going to be

5    advanced by one side with the other side objecting to that

6    deposition testimony.  That more or less assists me in going

7    through the transcripts and correlating the written words

8    with the lists of objections that you're going to be

9    submitting to me basically on separate -- in separate

10   pleadings.  I think that's a pretty good -- that's worked

11   well in the past.  I'm open to any other suggestions the

12   parties would have, but that would be my initial

13   recommendation.

14           MR. COLE:  So, your Honor -- this is William Cole.

15   Just to make sure I understand, I think this actually could

16   be really efficient if I'm tracking.  Basically we submit to

17   you -- because we cooperated in advance in marking up -- you

18   basically get one transcript that incorporates everybody's

19   position.  You have -- you have -- we all have -- instead of

20   getting two sets, you're getting one set that's color-coded

21   with both our positions.

22           THE COURT:  Yes, exactly.

23           MR. COLE:  Okay.

24           THE COURT:  Yes.  I just need one set of

25   transcripts with three different color codes.

1              MR. COLE:  Okay.

2              THE COURT:  And, once again, you know, highlighted

3    in green or whatever other color you want, but in any event,

4    highlighted in green that's going to be played before the

5    jury without objection; then just for example, what's

6    highlighted in orange is what is proposed by the -- by the

7    government which may be objected to by the defense;

8    highlighted in blue is what's going to be -- what's proposed

9    by the defense which is objected to by the government.  So I

10   can just -- I can just go right through the deposition

11   transcripts and be making my rulings on the -- right next to

12   the -- you know, on the pleadings, on my copies of the same

13   objection pleadings that have been filed.

14             MR. COLE:  Okay.

15             THE COURT:  Okay?  And I think it would be

16   important to do that before the beginning of the trial so

17   that everybody is aware of what may or may not come in for

18   purposes of making your own opening statements.

19             MR. DRATEL:  Certainly, your Honor.

20             THE COURT:  So that's what I would suggest.  If

21   that's agreeable, then let's -- let's agree that that is the

22   system that we will use.

23             I am -- I would like to talk about timing a little

24   bit here, when I might expect to get these transcripts.  Mr.

25   Dratel, you indicated that the tapes are going to be received

 1   back by defense counsel next week, so obviously we're looking

 2   at the week of the 17th.  And you're going to need a little

 3   time to figure out what you want to -- what you want to play,

 4   and the government's going to need to know what it's going to

 5   play.  How much time would you like to more or less decide

 6   what testimony is going to be proffered in totality?

 7           MR. DRATEL:  Well, I think that we will need --

 8   given the fact that we will have to review the transcripts,

 9   go through it, make a decision for each -- obviously each

10   defendant to weigh in on it, each counsel, then for the

11   government to do the same thing, and to then confer with the

12   government and try to determine which areas we agree on; and

13   I think that -- it's more than just exchanging pieces because

14   there may be some negotiation there and some ways that we can

15   trade off some things because that's usually how it's done --

16   I think we'd need a little bit of time for that.  So looking

17   at it that way, I would -- it's perhaps a little ambitious,

18   but I think we should try to shoot for that first week of

19   January so that by the time we appear before you on the 10th,

20   you have what we've produced.

21           THE COURT:  Well, that would be optimum.  I was

22   looking at the date of Thursday, January 10.  And if we can

23   not only address the motions in limine at that date but also

24   get into the deposition testimony and resolve objections to

25   the deposition testimony, that would -- that would be very,

1   very good.

2          MR. DRATEL:  So we'll shoot for that, your Honor.

3          MR. COLE:  Does that mean -- does that mean

4   shooting for giving you that on the 10th or -- I just want to

5   make sure I know what we're shooting for.  I think there's no

6   problem -- I foresee us being able to get it all done in an

7   efficient way and to you by the 10th.  Getting it to you much

8   before the 10th may be difficult only because we're preparing

9   the motion in limines and responses and replies and it's over

10  the Christmas -- it's over the break --

11         MR. DRATEL:  Yes.

12         MR. COLE:  -- and so -- not that all of us are

13  planning on taking a lot of break probably because of the

14  trial coming up, but if we had this to give to you on the

15  10th, is that -- that's still 18 days before trial -- would

16  that be sufficient, your Honor?

17         THE COURT:  Yes, it would be.

18         MR. COLE:  Okay.

19         THE COURT:  It would be.

20         MR. COLE:  All right.

21         THE COURT:  As soon as we get it resolved, the

22  better.  And if there was going to be agreement that you

23  could get everything to me by the -- well, before the 10th so

24  that we could address these things on the 10th, all the

25  better, but certainly we have time between the 10th and the

1    28th, the start date for the trial, so --

2              MR. DRATEL:  And we'll try.

3              MR. COLE:  Okay.

4              THE COURT:  Yeah, let's -- why don't you get

5    everything to me by the 10th, and then on the 10th we can

6    schedule a further date or a further approach to getting

7    resolution on the objections to deposition testimony, okay?

8              MR. COLE:  Yes.

9              THE COURT:  All right.  We'll discuss that on the

10   10th then; that will be one of the things we'll address on

11   January 10.  Okay.  Anything else with respect to the

12   preparation of transcripts or how deposition testimony will

13   be presented that we haven't already discussed?

14             MR. DURKIN:  Judge, this is Durkin.  I just had one

15   question that came to my mind in terms of bringing in

16   laptops.  I'm not familiar with your courthouse procedures.

17   Do we need an order to bring in a laptop or can you bring it

18   in without --

19             THE COURT:  Well, you'll need an initial --

20   Mr. Durkin, both sides will need an initial order that will

21   be good for the entire duration of the trial.  So anything --

22   yeah, just a down-and-dirty order listing whatever equipment

23   you want to be able to use during the course of the trial

24   will be fine.  Give it to me, I'll sign off on it, and that

25   will serve for the entirety of the case.

1          MR. DURKIN:  Good.  Thank you.

2          THE COURT:  Okay.

3          MR. COLE:  Your Honor, on the topic of -- and I

4    don't think it would be really necessary to be addressed now,

5    but on the topic of -- since we're talking about transcripts

6    and whatnot -- the United States will be either using some

7    transcripts of the foreign language audio calls -- and

8    there'll be a lot of transcripts, and there will be English

9    translations -- not just transcripts but English

10   translations.  And so we right now anticipate using a

11   courtroom presentation system to scroll those transcripts,

12   but also we'll be requesting to provide binders to the jurors

13   if there are jurors who prefer to read it on a piece of paper

14   instead of trying to look at a screen.  Some jurors have

15   difficulty following a screen because of their eyesight or

16   otherwise.

17          THE COURT:  Yes.

18          MR. COLE:  And so that's how we plan to deal with

19   the English translations of the audio calls right now is

20   individual juror binders, and they either will look at that

21   or they'll look at a screen.

22          THE COURT:  Well, I've done that -- I've done that

23   in the past; I've allowed the binders or the English version

24   transcripts in the past.  You're correct, some people look at

25   the screen, other people use the binders, but of course the

1    jury is told that the translations, the paper translations,

2    will be collected from them right after the presentation of

3    the testimony and will not be available for them the during

4    deliberations.

5            MR. COLE:  Okay.  On that last point we may --

6    because these are -- because the evidence -- because these

7    are foreign language rather than English -- I know if it's

8    English, the transcripts is just a demonstrative, but the --

9    when they're a foreign language and they're translated into

10   English, I believe the transcript is the evidence.  And I

11   know the Court doesn't have to send them back, but I also

12   know under Ninth Circuit law the Court has -- definitely has

13   the discretion to send them back.  So we may -- we may brief

14   that for the Court to consider, you know, closer to trial,

15   either with the in limines or the trial memo.

16           THE COURT:  Well, anything the -- anything the

17   parties can agree upon obviously I'm going to consider

18   favorably.  When you're saying that with a foreign language,

19   the transcript is actually the evidence, I don't know that

20   I'd agree with that entirely.  I think the translation is the

21   evidence; the transcript is something that can assist --

22           MR. COLE:  Okay.  Right.

23           THE COURT:  -- in following the translation, so I

24   don't know that it has any different characteristics than an

25   English -- transcript of the English being spoken.  But we

1   can -- if that becomes a concern, we can certainly address

2   that at the appropriate time.  And I know -- I know the Court

3   has discretion in this area, and I also know that there are

4   some instructions that need to be provided to the jury

5   depending upon what, if anything, is going to go in with

6   them.

7            MR. COLE:  Okay.

8            THE COURT:  Okay?  All right.  Good.  All right.

9   So anything else on -- anything else on, first of all, on the

10  depositions?  That was the initial topic we were discussing.

11  Anything else on the depositions that we need to address at

12  this point?  Apparently -- I'm not hearing any further

13  concerns.  This may not be the last word, I'm aware of that,

14  and of course I'm aware that rulings need to be made.

15           With respect to the translations of foreign

16  language testimony, I'm assuming that the parties are working

17  together to resolve any questions about translation.  Mr.

18  Cole, you want to start off on that one?

19           MR. COLE:  I think there's a lot of work to be done

20  there.  I think the parties -- that's the intention of all

21  the parties, but I don't think I can say that a lot of

22  progress has been made.  They have -- the defense has

23  provided us with one transcript.  I know they're working on

24  some others.  And when I say one transcript, they provided us

25  with a complete transcript of one audio call.  I think the

1   lion's share of the work of seeing if there's any

2   disagreements about our transcripts is still sort of

3   outstanding.  We're ready to work through that with the

4   defense whenever they desire.

5          THE COURT:  Well, that needs to be resolved and

6   just as soon as possible.  I'm assuming that there won't be

7   significant issues with that, but if there are issues that do

8   develop, then what -- what are you contemplating by way of a

9   method to resolve those issues?  And also what do you

10  anticipate your timing would be?

11         MR. COLE:  Well, we -- you know, I don't want to --

12  the defense has had a lot going with these depositions, so

13  I'm not trying to put this on them or complain because I know

14  they've been juggling a lot of things, but we've been --

15  we've been trying to move this issue along.  We've given them

16  the transcripts and, you know, it had -- it's had transcripts

17  for quite a while.  We've been asking to engage on that

18  topic.  I think they've just been -- I think the depositions

19  took a lot of wind out of their sails, just is a lot of work

20  for them, and so I think they -- we're hoping now that

21  everyone's back that we will start engaging more.

22         We just don't have -- we want to resolve it all as

23  much as we can and limit any dispute over the transcripts

24  down to the very least amount possible, but we just

25  haven't -- we haven't heard back other than the one

 1    transcript they gave us that does differ from ours.  We're

 2    hoping to resolve it all with the defense amicably with just

 3    stipulation to transcripts to the greatest extent possible.

 4    If we narrow it down to things we can't stipulate on or we

 5    can't agree on, I believe we just have to -- everyone's just

 6    going to have to bring in their witnesses, their linguists,

 7    and the jury will have to decide who they want to believe

 8    because I don't know that there is a way -- I don't know that

 9    there is a way to resolve it absent an agreement without both

10    sides bringing in their linguists as experts to testify to

11    the meaning of the calls.  But if there is another way, we're

12    open to hearing about that.

13              THE COURT:  Mr. Dratel?

14              MR. DRATEL:  Well --

15              THE COURT:  I'm asking you to speak because you

16    seem to have taken the laboring oar, so I think -- you've

17    taken a step forward in volunteering on behalf of the --

18              MR. DRATEL:  Not a problem, your Honor.  We are --

19    Mr. Cole is correct.  Obviously we've invested a tremendous

20    amount of time in the depositions, and what we are trying to

21    do is -- we send out transcripts to our interpreters and we

22    get them back and we look for differences and we try to

23    determine whether they're material, and then we -- we're in

24    the process of doing that.  We have a bunch of transcripts

25    that I'm hoping will be ready to send to the government as

1   soon as we can all agree on what -- and part of it is having

2   four different defendants, and so rather than do it

3   piecemeal, we try to do it by consensus so that we each can

4   agree which are the ones that we're going to present to the

5   government as material differences that require some

6   negotiate or decision, and we are still in the process of

7   doing that, although we keep getting them on a rolling basis.

8   So hopefully we'll be able to do that quickly.

9           Ms. Fontier is also probably closer to the ground

10  on that, and I think also someone from Mr. Durkin's office as

11  well who's not on the call right now but has also been

12  handling that on a more hands-on basis.  So -- but we will

13  endeavor to do that.  I understand the issue, and -- I mean I

14  understand the Court's concern about getting that resolved as

15  quickly as possible so that everything's in order when we get

16  rolling for the trial itself and for the Court to make

17  decisions, if the Court has to make decisions, or whether

18  we're going to have competing translator -- I mean I don't

19  know if this Court has decisions to make in terms of what's

20  right or wrong, that's really a question for interpreters,

21  and we may have, as Mr. Cole said, competing interpreters on

22  the witness stand, and we're trying to reduce that to the

23  minimum possible.

24          THE COURT:  Well, it certainly is an issue I think

25  that needs to be addressed just as quickly as possible.  I

1  know that the defense has had what the government has

2  identified as pertinent intercepts, conversations, for well

3  over a year, probably closer to two years, and -- and so the

4  defense has been aware of what the government deems as

5  important, and it's probably pretty obvious too, going

6  through some of these intercepts, as to which are pertinent,

7  to use the term the government used in the past, and which

8  are not.  So it really does behoove the defense to -- to get

9  this process done just as quickly as possible so at least you

10 know what you're dealing with, you know what the translations

11 are going to be and whether you're going to need the Court to

12 intervene, which may not be the appropriate way to do it, as

13 you both have pointed out, or whether you're going to gird

14 your loins and be calling your individual linguists.  That's

15 something you need to know.  I hope that doesn't derail the

16 trial at this particular point in time, but I certainly -- my

17 level of concern is certainly pretty high right now.

18          MR. COLE:  Yes.

19          MR. DRATEL:  And, your Honor -- this is Mr. Dratel

20 again -- I don't think it's going to derail the trial; I

21 don't mean to suggest that at all.  Also just in terms of

22 while we've had the conversations for a period of time, we

23 have gotten verbatims over time.  So, in other words, you

24 know, the government's verbatim versions have not been with

25 us quite as long as -- not nearly as long as the

1    conversations themselves.  Also, our linguists have had dual

2    responsibility, one of which is trying to find calls that the

3    government does not think are pertinent that may be relevant

4    for us to introduce, and we need to build those from scratch

5    and at the same time also review the government's verbatim.

6    And then, as the Court knows and as we've told the Court, you

7    know, finding a stable of qualified translators in this

8    particular instance has been very difficult, so we are

9    working with the people who are available, and that -- well,

10   we have quite a bit of work load, but we're trying to do it

11   as fast as we can.

12          We understand the need to get this resolved, and I

13   know from prior experience that many times these things can

14   be resolved, and we can try to whittle it down to as few

15   disagreements as possible, if any.  The goal is obviously not

16   to have any, but I can't promise one way or another because

17   I'm not the linguist.

18          THE COURT:  Sure, I understand that.  But, you

19   know, you raise an interesting point, Mr. Dratel.  You're

20   having your experts go through some of the conversations to

21   see if you can build your own inventory of conversations that

22   you need to have translated, so to that extent I assume that

23   you're going to be in a position to identify for the

24   government which conversations those might be so that they

25   can agree to a particular translation -- they may object on

1   materiality, but at least they can agree as to the accuracy

2   of what's being proposed.  Is that what you were

3   contemplating here?

4             MR. DRATEL:  Oh, absolutely, your Honor --

5             THE COURT:  Okay.

6             MR. DRATEL:  -- because we don't want to -- we

7   don't want to have a situation where all of a sudden we're

8   presenting a transcript and the government has to go back and

9   look at it, get somebody to review whether or not, you know,

10  it's accurate and whether they agree to the translation.

11            THE COURT:  Right.  Mr. Cole, do you -- of all of

12  the hundreds and hundreds of intercepts that have been

13  provided to the defense, I know the government sees only a

14  fraction of those as material.  But beyond that, have you

15  identified for yourselves those conversations, a discrete

16  number of conversations you will actually be utilizing during

17  the course of the trial, and if so --

18            MR. COLE:  Yes.

19            THE COURT:  -- have you provided that list to the

20  defense?

21            MR. COLE:  We have in this way -- and I'm going to

22  ask Ms. Han -- Ms. Han, are you still on the line?  Maybe

23  she's not on the line.

24            MS. HAN:  Yes.

25            MR. COLE:  Oh, she is.  She may know the actual

1   number.  What we did was we turned over -- I want to say --

2   they've had verbatims from us for a long time, but we turned

3   over kind of a quote, unquote, final set of verbatims to them

4   that had minor tweaks -- spelling corrections or, you know,

5   formatting, typographical issues generally -- we turned that

6   set over -- Ms. Han, do you remember when that went over?

7              MS. HAN:  Think it was October.

8              MR. COLE:  October?  And so that set -- that set

9   that we turned -- the reason I bring that set up is because

10  that set is -- we don't -- that set in addition is our

11  case-in-chief phone calls, and we're hoping to cut those down

12  even more, so --

13             THE COURT:  Okay.

14             MR. COLE:  -- they have a set that is our

15  case-in-chief calls.  It's even slightly overinclusive.

16  We're going to make a final cut over the next week or two --

17  when I say final, I mean of course things can always change

18  because of witness testimony or events that happen during

19  trial -- but essentially they'll have -- it will be very

20  clear to everybody the only calls that we're, at least as we

21  head into trial, planning to play in our case-in-chief.

22             THE COURT:  How many case-in-chief calls do you

23  think you have?

24             MR. COLE:  Ms. Han, do you recall the number right

25  now?

1              MS. HAN:  Your Honor, I believe that the number is

2    112 that we whittled the pertinent calls down to, from

3    approximately I think the 130 range down to 112.

4              MR. COLE:  And when we say play the calls, we're

5    not going to play whole calls of course, and we're going to

6    whittle it down below 112.  So that is the outside, the kind

7    of approximate outside number, but we're hoping to get it

8    below a hundred as we continue to look at the calls.  And

9    we're playing just clips from the calls.  They got the whole

10   transcript, but of course not -- we're not going to subject

11   everybody, including the jurors, to 100 complete audio calls.

12             THE COURT:  Yeah.  And you say -- you say the

13   verbatim transcripts for those case-in-chief calls will be --

14   have already been provided to the defense, Mr. Cole?

15             MR. COLE:  Yes.

16             THE COURT:  Okay.  Very good.  Well, that's

17   significant headway.  And from what I'm hearing, the defense

18   is going to provide to the government verbatim transcripts of

19   any calls it may deem pertinent as it's building some kind of

20   an inventory for its defense; is that correct, Mr. Dratel?

21             MR. DRATEL:  Yes, your Honor.

22             THE COURT:  Okay.  Well, good.  All right.

23             MR. DRATEL:  And also, your Honor, just so there's

24   no confusion, the government may be playing some clips; we

25   may be looking to put other parts of it in under Rule 106 or

1    other basis, you know, for these particular calls.

2          THE COURT:  Sure, I understand.

3          MR. DRATEL:  But we know what -- we know what parts

4    they want to put in, so we'll be prepared to do that.

5          THE COURT:  Okay.  Very, very good.  And I assume

6    that you have -- well, if you want to -- if you want to get

7    other parts of the conversation in under Rule 106, I assume

8    you already have -- those other parts were included in the

9    verbatim translations; am I correct in that assumption?

10          MR. COLE:  Let me tell you, your Honor, what we did

11    is when we turned over our verbatim translations, those

12    verbatim translations are sometimes of an entire call if it

13    was a short phone call.  Sometimes those are only

14    translations of the parts -- of parts of the call because the

15    phone call might go on for a very long period of time, and

16    we're conserving translation resources and we only translated

17    chunks of the call into a written transcript.

18          That said, even within the verbatim portion that we

19    have provided them -- let's say we provided them a part of a

20    phone call.  We will only be playing a clip from that part

21    typically, and so if you look at the total volume of

22    transcripts we provided to them as the case-in-chief

23    transcripts, they're mostly partial verbatims, and even of

24    those partials, we're not planning on playing all of it.

25          THE COURT:  Okay.  Well, I -- yes, I understand

 1   that you're -- in some cases you may be wanting to play a

 2   clip of a part or a part of a clip, but --

 3           MR. COLE:  Right, right.

 4           THE COURT:  -- in any event, it's a small piece of

 5   what has already been provided in the form of a verbatim

 6   translation to the other side.  But to the extent that what

 7   the defense may want to play, either the clip of the part or

 8   the part of the clip that wasn't played, which may not be

 9   translated, then I think that needs to be -- from what I'm

10   hearing, the defense is going to get a translation of that

11   just as soon as possible and over to the government so that

12   you know whether or not you have an issue that needs to be

13   resolved there.  I think that's what I'm hearing, okay?

14           MR. COLE:  Yes.

15           MR. DRATEL:  And right, your Honor.  And some of

16   these transcripts, by the way, that we're building are parts

17   of the calls that the government is going to introduce but

18   not the whole call, and we may want another part of those --

19   of those calls.

20           THE COURT:  Okay.  Well, obviously there's work

21   that needs to be done in this whole area of translations --

22   well, depositions and then translations of calls that you

23   need to address, but --

24           MR. COLE:  Yes.

25           THE COURT:  -- I'm glad to hear what I've heard

1   this morning, that things really do seem to be on track.   I

2   know both sides are cooperating very nicely, and that

3   certainly took place for the Djibouti depositions to go

4   forward, and I appreciate the cooperation that you're

5   extending to one another to this point as well.

6        Jencks.   Mr. Cole, Mr. Dratel, we should probably

7   raise the subject of Jencks as soon as possible.   You know,

8   Jencks should be going over, it should be going over with --

9   in advance of trial obviously, and so I'd be interested in

10  your thoughts there.   Mr. Cole, what are you thinking?

11       MR. COLE:   Yes.   We will provide our Jencks in

12  advance of trial, and we have already produced a lot of

13  Jencks -- well, I shouldn't say a lot because there really

14  isn't that -- this is -- as you probably already heard from

15  our prior discussion or figured out from the discussion we

16  just had, this is a bit of an unusual trial because

17  90 percent of the volume of the time of the trial's going to

18  be recordings, and -- which is interesting, not usually the

19  case, but really the bulk of the evidence is going to be a

20  lot of either recorded audio calls or recorded deposition.

21       But that said, we have been producing Jencks to the

22  extent we have it, and we will be continuing to produce

23  Jencks well in advance of trial.   We should have -- we should

24  have Jencks, lingering Jencks -- unless we find new things,

25  we should have lingering -- any lingering Jencks to the

1    defense certainly by the time of the motion in limine hearing

2    and probably much before that, by the end of the year.

3              THE COURT:  Okay.  Mr. Dratel, any thoughts there?

4              MR. DRATEL:  So if I'm right, that the government

5    expects to produce the Jencks by the end of the year or at

6    least by the 10th of January; is that what I'm hearing?

7              MR. COLE:  Yes.

8              MR. DRATEL:  Okay.  Okay.

9              THE COURT:  All right.  What I'll do is this then.

10   I think you have an agreement that Jencks is to be produced

11   as soon as practicable, clearly understanding there's a lot

12   of work that remains to be done, but in any event no later

13   than Thursday, January 10.  I'll take your agreement, what

14   seemed to be a general agreement, and adopt it as an order of

15   the Court.  So that would be the order, Mr. Cole, that Jencks

16   is -- lingering Jencks, as you put it, is to be produced no

17   later than Thursday, January 10 unless otherwise ordered by

18   the Court.  Is that acceptable, counsel?

19             MR. COLE:  Yes.  And let me just, your Honor -- let

20   me just ask Mr. Ward and Ms. Han to chime in if they -- if

21   I'm missing something on that score that they want to bring

22   to the Court's attention.  Is that date acceptable from their

23   standpoint?

24             MS. HAN:  Yes, your Honor.

25             MR. WARD:  This is Mr. Ward, your Honor.  That's --

 1   that's a good date for us.

 2            THE COURT:  Okay.  Very good.  Well, I think I've

 3   pretty much exhausted the primary areas I wanted to address,

 4   and, Mr. Cole, anything further before we wrap things up for

 5   today?

 6            MR. COLE:  No.  I think you really hit all the very

 7   important things that are time-consuming and we really need

 8   to focus on, so I don't have anything else.

 9            THE COURT:  Mr. Dratel, anything else on behalf of

10   the defense community?

11            MR. DRATEL:  No, your Honor, but if anybody --

12            MS. MORENO:  Yes.

13            MR. DRATEL:  -- else has --

14            MS. MORENO:  Yes.

15            MR. DRATEL:  -- they should chime in.

16            MS. MORENO:  Yes.  Hello, this is Linda Moreno on

17   behalf of Mr. Mohamud.

18            THE COURT:  Yes.  Hello.  I'm not hearing you, Ms.

19   Moreno.

20            MS. MORENO:  Okay.  I can hear you now.  Thank you,

21   your Honor.  Just one scheduling question, your Honor.  Does

22   the Court sit on Friday in trial or will we have the Fridays

23   off during this trial?

24            THE COURT:  Well, good question.  I typically hold

25   my criminal calendars -- I have my criminal calendars on

1    Fridays, but they're not every Friday.  Generally speaking --

2    and you'll be given a schedule in advance -- but generally

3    speaking, I have my criminal calendars on the first and third

4    Fridays of the month.  If there is a fifth Friday on a month,

5    then I'll hold a criminal calendar on the fifth Friday of a

6    month as well.

7            Typically I do overflow calendars, that is, any

8    overflow items that need to be addressed or special set

9    matters, on a Monday.  But what I think I'd probably end up

10   doing is forgoing that option, that is, the Monday overflow,

11   and then just limiting my calendars to every other Friday

12   beginning with the first Friday of a month.  So it would be

13   the first and third and any fifth Friday of the month, so

14   your second and fourth Fridays of a month would be open.

15           Now, that said, I know that you're not anticipating

16   this case to be excessively lengthy.  We're looking at

17   February.  Obviously we're going to start on the 28th,

18   Monday, the 28th, with the trial, with preliminaries and then

19   getting jury selection underway, so the first Friday would be

20   February 1st.  I would have a calendar on the 1st, I would

21   have a calendar on the 15th.

22           I think everybody is probably anticipating that the

23   case would be to the jury by the end of February, but if not,

24   then my next calendar would be on Friday, March 1st, which

25   would be a day for deliberations if the jury has the case,

 1   but if the jury doesn't have the case, we would be dark for

 2   the trial because we wouldn't be done with the evidence.

 3            MS. MORENO:  Thank you, your Honor.

 4            THE COURT:  What's your estimate?  What's your --

 5   anybody have any thoughts on any refined estimates for the

 6   length of trial?

 7            MS. MORENO:  Well, your Honor, after -- again, this

 8   is Linda Moreno -- including now in the consideration of an

 9   estimate, taking into account the depositions and the

10   recordings that Mr. Cole has indicated will be 90 percent of

11   trial, I do believe that we'll be working most of the month

12   of February if not the entire month.

13            THE COURT:  I think initially --

14            MR. COLE:  I think -- I'm sorry.

15            THE COURT:  Go ahead, Mr. Cole, please.

16            MR. COLE:  I guess you never know.  I'll be

17   surprised if that's the case just particularly because of the

18   depositions; I actually think the depositions make this all

19   shorter in a way.  They are what they are.  Soup to nuts, I

20   think it was 16 hours.  That would be two days or two and a

21   half to three days of court at most for all those witnesses.

22   Our recordings -- I don't know because I don't know what the

23   defense case will be.  I certainly know that our -- the

24   government still believes that its case-in-chief will be --

25   if we start on the 28th, we don't see how our case-in-chief

1  would last more than two weeks, and I think it will be done

2  more like in a week and a half, our case-in-chief, but two

3  weeks at the outside if cross-examination, you know, takes up

4  more time.

5          THE COURT:  Okay.  Well, I think your last estimate

6  was about two weeks for the government's case, perhaps a week

7  for the defense case; I think you were looking at three

8  weeks.  I can't recall whether that included jury selection

9  or not.  We'll probably take a couple of -- the better part

10  of a day -- well, I think it will take at least a full day

11  for jury selection, so we may well go into the second day

12  just in wrapping up -- wrapping up the jury and handling some

13  other preliminary matters.

14          MS. MORENO:  Your Honor, if I may with respect to

15  jury selection, which was my second issue I was going to

16  raise with the Court, that -- I'm going to be sending Mr.

17  Cole a proposed draft of a short questionnaire that I will be

18  requesting and filing on the 20th along with the motions in

19  limine.  The questionnaire may also be helpful in shortening

20  the selection process.  But the Court has been referring to

21  the December 20 date strictly as a motion in limine, and I

22  wanted to alert the Court that it was my intent to file a

23  request for a short questionnaire.

24          THE COURT:  I think that's perfectly appropriate.

25  If in fact you're -- any additional filings -- I was going to

1   take care of a number of matters when we meet on the 10th of

2   January, including jury instructions and other preliminary

3   administrative matters, but if you're desiring to submit a

4   proposed jury written questionnaire, then you may certainly

5   do so, and there's no reason why you could not file it when

6   you're filing your motions in limine, that being in no later

7   than December 20.

8            I will tell you that I've used questionnaires just

9   a few times in the past, and, you know, there are arguments

10  for and arguments against the use of questionnaires, we don't

11  need to go into that right now, but any proposed

12  questionnaire I would suggest should be filed no later than

13  December 20.  And make it as brief as possible; your chances

14  of it being utilized are probably better.  The logistics of

15  getting proposed questionnaires to jurors, responded to,

16  collated, copies made, all of that is something that

17  typically the Court does, and there's a tremendous amount of

18  work involved in that behind-the-scenes effort.  So if we're

19  going to use one, which I'm not -- I'm not wedded to at this

20  point, but if we're going to use one, making it shorter

21  certainly enhances the chances of it being used.  Anything

22  else?

23            MS. MORENO:  Well, certainly, your Honor.  That

24  would be my intent.

25            THE COURT:  Anything else, Ms. Moreno?

 1              MS. MORENO:  Not with respect to that, no, your

 2    Honor.

 3              THE COURT:  Okay.  Mr. Durkin, anything else from

 4    you, sir?

 5              MR. DURKIN:  No, Judge.

 6              THE COURT:  All right.  Mr. Ghappour?

 7              MR. GHAPPOUR:  Actually, Judge, I was wondering

 8    about -- with respect to other motions such as a bill of

 9    particulars, would that also be due with the in-limine

10    motions to be heard on the same day?

11              THE COURT:  Well, that's -- those are pretrial

12    motions.  A bill of particulars is a pretrial motion; it's

13    not a motion in limine.  And we should -- we should have been

14    beyond that point at this time.  I don't know -- I don't know

15    what you could put in a bill of particulars at this point

16    that would provide further information about the case for

17    you.

18              MR. GHAPPOUR:  Well --

19              THE COURT:  I wasn't -- it wasn't my intention to

20    address that at this point.  I would suggest -- and I've said

21    this, tried to emphasize it in the past -- that if you have

22    a -- if you have a motion, you're considering a motion that

23    is not a motion in limine, that you deal with it as a

24    pretrial motion and secure a hearing date for that, working

25    through chambers so that a briefing schedule can be set up.

1   I'm not against using the schedule you have now for something

2   like a bill of particulars -- I mean that's not a

3   particularly complex motion, but I'm concerned about opening

4   up general motion practice at this point, Mr. Ghappour.

5          MR. GHAPPOUR:  Well, your Honor, it's just there

6   was an outstanding bill of particulars that wasn't ruled.  In

7   addition, the indictment was superseded, and if you recall, I

8   actually did file a bill of particulars within the week after

9   the superseded.  And my understanding was that we were going

10  to hear them later --

11         THE COURT:  Well --

12         MR. GHAPPOUR:  -- and that's the last --

13         THE COURT:  -- that's fair.  It's my understanding

14  that there was nothing outstanding at this point, but if

15  there is an outstanding motion that's been fully briefed,

16  then we will -- we will address it on January 10, the date

17  set for motions in limine.  I just don't want to derail the

18  trial date at this point.  And if you're satisfied with the

19  state of the pleadings on that, then we can address it on the

20  10th of January, but if you want to supplement what you've

21  already filed, Mr. Ghappour --

22         MR. GHAPPOUR:  I was going to ask you because it

23  was superseded.

24         THE COURT:  Well, okay then.  Why don't you get any

25  supplemental motion papers in by the 20th of December; Mr.

1  Cole, any opposition no later than December 27.

2          MR. COLE:  All right.

3          THE COURT:  Mr. Ghappour, any reply no later than

4  January 3.  We'll use the same briefing schedule we have for

5  motions in limine, and then we'll look at it on January 10.

6          MR. GHAPPOUR:  Thank you.

7          THE COURT:  Okay.  Was there anything else,

8  Mr. Ghappour?

9          MR. GHAPPOUR:  No, that was all.  Thank you.

10         THE COURT:  Well, thank you for bringing that up.

11 I was -- that was lost on me if there was an outstanding

12 motion that still hadn't been ruled upon.  Okay.  I think

13 we've heard from everyone then.

14         MS. FONTIER:  Sorry.  Your Honor, this is Alice

15 Fontier.  I apologize for not being on the beginning of the

16 call.  I don't have anything to add to what I've heard, but

17 if there were any particular questions that you had wanted me

18 to address, I just wanted to alert you that I am here now if

19 there's anything that I can offer.

20         THE COURT:  No, I don't think there's anything

21 specific to you, Ms. Fontier.  Mr. Dratel has been actively

22 advancing the concerns and I think speaking on behalf of the

23 entire defense community for matters of general concern.  So

24 I have no further questions at this point for you.  But, once

25 again, I want to thank everybody for your availability and

1  your continuing cooperation here.  I think the next we'll be

2  seeing of you will be on January 10.

3          Please, if issues -- if any concerns or issues

4  arise for any of you that in any way jeopardize the schedule

5  we have at this point, including the trial date, please do

6  not hesitate to contact us just as soon as possible so that

7  we can arrange a telephonic conference, all right?

8          MR. DURKIN:  Thank you, Judge.

9          MR. DRATEL:  Will do, your Honor.

10          MS. FONTIER:  Thank you, your Honor.

11          THE COURT:  Thanks again, counsel.

12      (The proceedings were concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>Certificate of Reporter</u>

I hereby certify that I am a duly appointed, qualified, and acting Official Court Reporter for the United States District Court; that the foregoing is a true and correct transcript of the proceedings had in the mentioned cause on the date or dates listed on the title page of the transcript; and that the format used herein complies with the rules and requirements of the United States Judicial Conference.

Dated February 26, 2014 at San Diego, California.

                              /s/ Debra M. Henson  (electronic)
                              Debra M. Henson
                              Official Court Reporter